UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIVE STAR BANK,<br><br>                           *Plaintiff*,<br>           v.<br><br>KATHERINE MOTT, ROBERT HARRIS; KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC d/b/a THE WINTERGARDEN BY MONROES; 11 WEXFORD GLEN, LLC; RCC MONROES LLC; NAF REMODELING LLC; MONROES AT RIDGEMONT LLC; CRESCENT BEACH AT THE LAKE LLC; and MOTT MANAGEMENT LLC;<br><br>                           *Defendants.* | CASE NO. 6:24-cv-6153-FPG<br><br>CIVIL ACTION |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF FIVE STAR BANK'S MOTION FOR LIMITED EXPEDITED DISCOVERY

**BARCLAY DAMON LLP**
David G. Burch, Jr.
Benjamin Zakarin
Sarah A. O'Brien
Office and Post Office Address
200 Delaware Avenue, Suite 1200
Buffalo, New York 14202
Telephone (716) 856-5500
dburch@barclaydamon.com
bzakarin@barclaydamon.com
sobrien@barclaydamon.com
*Attorneys for Plaintiff*

27949654.1

**INTRODUCTION**

Defendant Katherine Mott ("Defendant Mott") has used bank accounts held in the name of multiple, active businesses she controls, including accounts held at Plaintiff Five Star Bank ("Plaintiff" or "Five Star") and in the names of the Mott-controlled entity Defendants KRM Events, LLC; Katherine's on Monroe, LLC; the Divinity Estate and Chapel, LLC; KNC Elegance, LLC d/b/a The Wintergarden by Monroes; 11 Wexford Glen, LLC; RCC Monroes LLC; NAF Remodeling LLC; Monroes at Ridgemont LLC, Crescent Beach at the Lake LLC; and Mott Management LLC (collectively, the "Entity Defendants") (collectively, with defendants Mott and Harris, "Defendants") to defraud Five Star out of more than $18 million dollars through their check-kiting scheme.

The ease of moving funds between banks and non-bank financial companies makes obtaining information related to the trail of the Defendants' stolen funds urgent. In order to trace the funds, it is essential that Plaintiff be permitted to obtain limited expedited discovery through the six (6) proposed Rule 45 subpoenas submitted as Exhibit A to the accompanying Declaration of David G. Burch, Esq. ("Burch Decl."). Because Plaintiff would be highly prejudiced in the event it is denied this discovery—discovery which is both narrowly-tailored and reasonable under the circumstances—and because no prejudice would result to Defendants if Plaintiff is permitted to serve the proposed subpoenas on an expedited basis, Plaintiff respectfully requests an order permitting expedited discovery pursuant to Rule 26(d).

**BACKGROUND**

Nearly immediately after Defendant Mott first opened up accounts at Five Star in late 2022, she began "kiting" checks between Defendants' various deposit accounts held at Five Star and accounts held at other financial institutions, including Kinecta Federal Credit Union ("Kinecta

1

27949654.1

FCU"). In a typical kiting transaction, Mott would write a check on the Kinecta FCU account for which insufficient funds existed and deposit that check into an account controlled by an Entity Defendant held at Five Star. By taking advantage of the delay inherent in bank reconciliation of deposits (and the widespread practice of honoring checks on the basis of uncollected balances), Mott and the Entity Defendants were able to temporarily inflate the cash balance in the Entity Defendants' accounts at Five Star to create the appearance of additional cash in those accounts despite insufficient funds to honor the check in the originating accounts at Kinecta FCU. As a result, transfers and checks written from the Entity Defendants' Five Star accounts that otherwise would have been refused or returned were made and honored by Five Star, and Five Star has suffered nearly $19 million in damages as a result.

Most recently, between February 23, 2024 and at present, Defendant Mott deposited or caused to be deposited over 65 checks in an aggregate amount exceeding $62 million into the various accounts held in the name of the Entity Defendants held at Five Star. Mott deposited each of those checks with Five Star despite knowing that the check amounts exceeded the balance of the accounts from which they would be drawn. Using the artificially-inflated account balances, Mott issued checks drawn on the Entity Defendants' Five Star accounts and directed funds transfers out of those accounts totaling over $20.4 million, despite knowing the checks she previously deposited with Five Star would ultimately bounce for insufficient funds. Ultimately, as a direct result of Defendant Mott's knowingly fraudulent conduct, Mott overdrew the Entity Defendants' accounts at Five Star by over $20 million. (*See* ECF No. 3-1, Declaration of Kevin Quinn, affirmed on March 11, 2024). After contractually-permitted offsets, Defendants' accounts collectively still carry a balance of -$18,979,005.79 that must be cured as a matter of contract and equity. That balance is presently due and owing under the Deposit Account Agreement.

## **LEGAL STANDARD**

District Courts are "authorized to depart from normal discovery procedures and fashion discovery by order to meet particular needs in particular cases…" *FTC v. Campbell Capital LLC*, No. 18-CV-1163-LJV-MJR, 2018 US Dist LEXIS 186728, at *11-12 (W.D.N.Y. Oct. 24, 2018). In weighing an application for expedited discovery, courts in this circuit apply a "flexible standard of reasonableness and good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005); *See,also N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 367, 368 n.7 (E.D.N.Y. 2013).[1]  Generally, this requires the movant to prove that "the requests are reasonable under the circumstances." *Id.* at 367.  Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Milk Studios, LLC v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 38710, *4-5 (S.D.N.Y. Mar. 25, 2015).

In making this assessment, the relevant factors include the need for expedited discovery, the breadth of the discovery sought in terms of inconvenience to the third party to be subpoenaed, the potential injury to the plaintiffs if such discovery is denied, the plaintiffs' interests in pursuing cognizable claims, and the interests of justice. *Catlin v Global*, 2014 US Dist LEXIS 112656, at *4 (WDNY Aug. 13, 2014)  (*citing North Atlantic Operating Company, Inc. v. Evergreen Distribs.*, 293 F.R.D. 363, 367 (E.D.N.Y. 2013).  Finally, requests for leave to issue to a subpoena to a third-party prior to the required FRCP 26(f) conference are subject to the same

---

[1] Previously, courts in this circuit applied a more rigid four-part test derived from *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) before adopting the more flexible "good cause" test. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). Each of those four parts, "(1) irreparable injury; (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted," are also generally considered in the analysis, but no longer form a strict, four-part test. *See, e.g., N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 367, 368 n.7 (E.D.N.Y. 2013) (noting the split and the trend in favor of the reasonableness test).

"reasonableness" and good cause test described above concerning expedited discovery. *See N. Atl. Operating Co. v Evergreen Distribs., LLC,* 293 FRD 363, 373 (EDNY 2013).

## ARGUMENT

### I.     The Facts and Circumstances Strongly Favor Expedited Discovery.

Plaintiff respectfully requests that the Court grant the instant motion because, as set forth below, good cause exists and the narrowly-tailored subpoenas to other financial institutions that Plaintiff seeks to serve are eminently reasonable under these extraordinary circumstances.

As this Court knows, Plaintiff is up against the clock in its efforts to recover nearly $19 million dollars it appears Defendants blatantly stole. Plaintiff's Complaint, as well as the declarations previously filed with the Court establish a *prima facie* case for fraud by way of the Defendants' sophisticated check-kiting scheme. (ECF No.1 at ¶¶ 20-28; 30-38). Check-kiting is "an exemplar of bank fraud" and there is no question that the conduct in which Plaintiff alleges Defendants have engaged—writing and depositing checks from two separate accounts with insufficient funds to inflate each account's balance and permit payments otherwise unsupported by the account—constitutes check kiting. *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Ltd.,* 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008). The documents Plaintiff seeks by way of expedited discovery—account statements and copies of cancelled checks from Community Bank, Wells Fargo, Kinecta FCU, Summit Federal Credit Union, Evans Bank and Canandaigua Bank and Trust for accounts currently or recently held in the name or for the benefit of Defendant Mott or any of the Defendant Entities—directly relate to the most urgent issue at hand: discovering where the approximately $20 million stolen from Five Star went. The aforementioned plainly falls within the scope of discovery articulated in Rule 26(b) and Plaintiff's request to serve subpoenas by way of expedited discovery and is more than reasonable under the circumstances.

Defendants owe Plaintiff an extraordinary sum—at least $18.9 million. The risk of asset dissipation by Defendants make expedited discovery appropriate here. Plaintiff has a need to obtain the information sought as soon as possible so that it can understand the Defendants' financial condition and the disposition of the nearly $19 million fraudulently obtained from Plaintiff. Moreover, given Defendants' use of multiple accounts in multiple financial institutions to perpetrate their check-kiting scheme, there is risk of Defendants dissipating or concealing assets through undisclosed bank accounts that would be subject to liability for any judgment against Defendants. It is well-settled within the Second Circuit that expedited discovery is appropriate in cases, such as this one, where dissipation of assets is probable. *See, e.g., See JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278, 282-83 (S.D.N.Y. 2009) (granting expedited discovery to "determine the location of any missing [] Collateral"); *see also Compass-Charlotte 1031, LLC v Prime Capital Ventures, LLC*, No. 1:24-CV-55 (MAD/CFH), 2024 US Dist LEXIS 12276, at *29 (N.D.N.Y. Jan. 24, 2024) (granting expedited discovery to "help avoid irreparable injury in the loss or disappearance of funds,"); *see further FTC v. Campbell Capital LLC*, 2018 U.S. Dist. LEXIS 186728 at *11 (W.D.N.Y. Oct. 24, 2018) ("immediate access [to defendants' records] is warranted in this case because Defendants might otherwise destroy evidence and dissipate assets.").

## II.     The Proposed Subpoenas are Narrowly-Tailored and Are Not Burdensome.

The non-party subpoenas Plaintiff seeks leave to serve are narrowly-tailored and will not create a substantial burden for the subject institutions. Certainly, any financial institution possesses the ability to easily identify the record owners and/or authorized signatories on accounts held at their banks and the process of searching for any accounts in which Defendants have an interest will therefore be minimally time-consuming. The undue burden here will instead fall on Plaintiff

5

if denied access to this essential and highly relevant information. *See Ghonda v. Time Warner Cable, Inc.*, 2017 U.S. Dist. LEXIS 11769, *25 (E.D.N.Y. Jan. 27, 2017).

Plaintiff has significantly limited the number and scope of the proposed subpoenas. Plaintiff proposes to serve subpoenas on six (6) financial institutions: Community Bank, Wells Fargo, Kinecta FCU, Summit Federal Credit Union, Evans Bank and Canandaigua Bank and Trust. Each of these financial institutions are known to currently hold or recently have held accounts in the name of one or more of the Defendants. Moreover, the subpoenas only seek account statements for the very narrow time period of July 1, 2023 through the present (except for the proposed subpoena to Evans Bank, which seeks statements from January 1, 2022 through December 2022 because Evans Bank closed Defendants' accounts in 2022). These statements are absolutely necessary for Plaintiff's ongoing investigation into Defendants' misconduct and most importantly, the disposition of the nearly $19 million wrongfully obtained from, and presently owed to, Plaintiff. Accordingly, the proposed subpoenas are far removed from the type of "blanket request" for "any and all documents" routinely denied in this circuit. *See, e.g, Henry v. Morgan's Hotel Grp., Inc.*, 2016 U.S. Dist. LEXIS 8406 (S.D.N.Y. Jan. 25, 2016). Finally, Plaintiff is not able to obtain this information from any alternative sources—these institutions constitute the only non-interested parties with the ability to search for accounts belonging to or for the benefit of defendants.

### III. Plaintiff Will Be Highly Prejudiced if Denied the Discovery Sought.

Plaintiff will be prejudiced without the ability to promptly obtain the limited information it seeks because of the very real possibility that Defendants will dissipate or otherwise squander assets to frustrate Plaintiff's ability to ultimately collect a multi-million dollar judgment. Absent this discovery, Plaintiff will be unable to adequately investigate the urgent issue of how and where

Defendants have used (or concealed) nearly $19 million belonging to Plaintiff. Forcing Plaintiff to wait for the parties to hold a Rule 26(f) conference while the Defendants retain exclusive control of Plaintiff's funds—and the information necessary to trace such funds—would be extremely prejudicial. *See Reinhardt v. City of Buffalo*, 2021 U.S. Dist. LEXIS 106638, *7-8 (W.D.N.Y. June 4, 2021).

### IV. Defendants Will Not be Prejudiced by Expedited Discovery Production.

By contrast, Defendants will suffer no prejudice in the event Plaintiff is permitted to serve the proposed subpoenas on an expedited basis. Any potential confidentiality or privacy concerns raised by Plaintiff may be mitigated through a variety of means, such as redacting certain information or entry of an appropriate, stipulated Confidentiality Order. *See, e.g., Snider v. Lugli*, 2011 U.S. Dist. LEXIS 127855, *13 (E.D.N.Y. Nov. 4, 2011). After having utilized the subject bank accounts to execute a multi-million dollar fraud against Plaintiff, Defendants simply cannot provide a credible argument about why the subpoenas would prejudice them—especially since undisputed evidence shows that Defendants improperly utilized accounts at, at a minimum, Kinecta Federal Credit Union, Community Bank and Evans Bank.

### V. The Remaining Factors Favor Expedited Discovery.

The remaining considerations all militate in favor of granting Plaintiff's motion and permitting Plaintiff to promptly serve the proposed subpoenas on Community Bank, Wells Fargo, Kinecta FCU, Summit Federal Credit Union, Evans Bank and Canandaigua Bank and Trust. As noted above, Plaintiff has already incurred a loss of at least $18.9 million as a direct result of Defendants' alleged fraudulent scheme. Without being able to access this essential information about Defendants' bank accounts and the status of the approximately $19 million stolen from Plaintiff, the probability that these losses will be unrecoverable rises. Moreover, denying

Plaintiff's motion would almost certainly allow Defendants to continue to conceal and dissipate the wrongfully-obtained funds. Accordingly, denying Plaintiff's request for expedited discovery would be contrary to the interests of justice.

## CONCLUSION

As set forth above and as alleged in Plaintiff's Complaint, Plaintiff has been the victim of a nearly $20 million fraud perpetrated by and through the Defendants.  The odds of recovering or even successfully tracing these funds grows more remote each day that Plaintiff is left blind to the extent of Defendants' web of accounts and misconduct. Because there will be no prejudice to Defendants if the proposed subpoenas are served prior to a Rule 26(f) conference, and because Plaintiff will be heavily prejudiced without those reasonable subpoenas, Plaintiff respectfully requests that the Court enter an Order granting Plaintiff leave to issue subpoenas substantially in the form of the proposed subpoenas attached as Exhibit A to the accompanying Declaration of David G. Burch, Jr., without further delay and for such further, additional relief that the Court may deem just and proper.

**Dated:**   April 3, 2024

                                                                      **BARCLAY DAMON LLP**

By:  */s/ David G. Burch, Jr.*
      David G. Burch, Jr.
      Benjamin Zakarin
      Sarah A. O'Brien
*Attorneys for Plaintiff*
Office and Post Office Address
125 East Jefferson Street
Syracuse, New York 13202-2078
Telephone (315) 425-2716
dburch@barclaydamon.com
bzakarin@barclaydamon.com
sobrien@barclaydamon.com

## CERTIFICATE OF SERVICE

  I hereby certify that, on April 3, 2024, I served the foregoing document on all counsel of record via the Court's ECF system.

*/s/ David Burch, Jr.*
David G. Burch, Jr.

27949654.1