UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FIVE STAR BANK,

                            Plaintiff,

      -vs-

KATHERINE MOTT-FORMICOLA,
ROBERT HARRIS, KRM EVENTS LLC,
KATHERINE'S ON MONROE LLC, THE
DIVINITY ESTATE AND CHAPEL LLC,
KNC ELEGANCE LLC d/b/a THE
WINTERGARDEN BY MONROES,
11 WEXFORD GLEN LLC, RCC MONROES
LLC, NAF REMODELING, LLC, MONROES
AT RIDGEMONT LLC, CRESCENT BEACH
AT THE LAKE LLC, MOTT MANAGEMENT
LLC, KRISTINA BOURNE, TAYLOR
PAGANO, TIMOTHY LAROCCA,

                         Defendants.

_____

No. 24-cv-6153-FPG


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


RESPECTFULLY SUBMITTED:

David Rothenberg, Esq.
Michael Rothenberg, Esq.
ROTHENBERG LAW
*Attorneys for Defendant Katherine Mott-*
    *Formicola and all Entity Defendants*
45 Exchange Boulevard, Suite 800
Rochester, New York 14614

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL BACKGROUND................................................................................ 2

III.    FACTUAL ALLEGATIONS ................................................................................... 3

IV.     APPLICABLE LEGAL STANDARD ......................................................................... 5

V.      ARGUMENT ................................................................................................... 6

        A.      THE COURT MUST DISMISS COUNT II, ALLEGING VIOLATION OF 18 U.S.C § 1962,
                BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECOND CIRCUIT
                PRECEDENT. ........................................................................................ 6

                i.      *Pattern of Racketeering Activity – Continuity* ........................................ 7

                        a.      Closed-Ended Continuity ................................................. 7

                        b.      Open-Ended Continuity. ................................................. 9

        B.      THE COURT MUST DISMISS COUNT VIII FOR VIOLATION OF 18 U.S.C. § 1962(D). . 13

        C.      THE COURT SHOULD DISMISS THE STATE LAW CLAIMS ....................................... 15

VI.     CONCLUSION.................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*4 K & D Corp. v. Concierge Auctions, LLC,*
   2 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................ 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 5

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
   667 F. Supp. 3d 83 (S.D.N.Y. 2023) ........................................................................ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 5, 15

*Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*,
   No. 22-CV-987, 2023 WL 112092, at *3 (N.D.N.Y. Jan. 5, 2023) ............................ 5

*Castellano v. Bd. of Trustees*, 937 F.2d 752 (2d Cir. 1991) ...................................... 15

*Chester Park View, LLC, v. Schlesinger*,
   No. 23-CV-5432 (CS), 2024 WL 2785140, at *5 (S.D.N.Y. May 29, 2024) ............ 6

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
   187 F.3d 229 (2d Cir. 1999) .......................................................................... 7, 9, 14

*Connolly v. Havens*, 763 F. Supp. 6 (S.D.N.Y. 1991) ................................................ 15

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014) ...................................................................................... 5

*D.R.S. Trading Company, Inc. v. Fisher*,
   No. 01 Civ. 8028, 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002) ................... 10

*Demaree v. Castro*,
   No. 22-CV-8772, 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023) ........................ 6

*Dreamco Dev. Corp. v. Empire State Dev. Corp.*,
   No. 15-CV-901-FPG-HKS, 2017 WL 4230501 (W.D.N.Y. Sept. 25, 2017) ......... 8, 9

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) .......................................................................... 6, 7, 15

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) ............................................................... 6

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463 (2d Cir. 1995) ............. 7, 11

*Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603 (2d Cir. 2019) ........... *passim*

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ............................................................. 7, 9, 12

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ....................................... 14

*Highmore Fin. Co. I, LLC v. Greig Companies, Inc.*,
 No. 21 CIV. 11021 (AT), 2023 WL 4865722, at *6 (S.D.N.Y. July 31, 2023) .................. 8, 12

*In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55 (S.D.N.Y. 2021) ...................... 13

*Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118 (2d Cir. 2006) ................................................ 16

*Laverpool v. N.Y.C. Transit Auth.*, 760 F. Supp. 1046 (E.D.N.Y. 1991) ..................................... 15

*MinedMap, Inc. v. Northway Mining, LLC*,
 No. 21-1480-CV, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022) .......................................... 9

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5 (2d Cir. 1983) ............................................................. 6

*One World, LLC v. Onoufriadis*,
 No. 21-374-CV, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) .............................. 9, 11, 12

*Ozbakir v. Scotti*, 764 F. Supp. 2d 556 (W.D.N.Y. 2011) .............................................................. 8

*Paul Hobbs Imports Inc. v. Verity Wines LLC*,
 No. 21 CIV. 10597 (JPC), 2023 WL 374120, at *13 (S.D.N.Y. Jan. 24, 2023) ...................... 14

*Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72 (S.D.N.Y. 1995) ............................................ 9

*Santana v. Adler*, No. 117CV06147ATSDA,
 2018 WL 2172699, at *3 (S.D.N.Y. Mar. 26, 2018) ................................................................... 5

*Sky Medical Supply Inc. v. SCS Support Claims Service Inc.*,
 17 F. Supp. 3d 207 (E.D.N.Y. 2014) ............................................................................................ 6

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ................................... 7

*Thai Airways Intl. v. United Aviation Leasing B.V.*,
 842 F.Supp. 1567 (S.D.N.Y.1994) ............................................................................................. 10

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
 303 F. Supp. 2d 432 (S.D.N.Y. 2004) ........................................................................................ 15

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) ................................................................. 9

*Westchester Cnty. Indep. Party v. Astorino*,
 137 F. Supp. 3d 586 (S.D.N.Y. 2015) .......................................................................................... 7

*Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ....................................................... 6

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011)........................................................ 5

## OTHER AUTHORITIES

18 U.S.C. § 1962......................................................................................................... 2, 6, 13, 14

18 U.S.C. § 1964(C) ....................................................................................................................... 1

28 U.S.C. § 1367(C)(3) ................................................................................................................ 15

31 C.F.R. § § 1010.540 ................................................................................................................. 12

31 C.F.R. § 1010.540 .................................................................................................................... 13

31 C.F.R. § 1010.540(B)(5) .......................................................................................................... 13

RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE ................................. 1, 5

SECTION 314(B) OF THE USA PATRIOT ACT ....................................................................... 12

Defendant Katherine Mott and the Defendant Entities[1] submit this memorandum of law in support of their motion to dismiss plaintiff's Amended Complaint. ECF No. 51.

## I.    INTRODUCTION

The Court should dismiss this lawsuit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons:

*First*, plaintiff has failed to state a plausible civil RICO claim pursuant to 18 U.S.C. § 1964(c). The Amended Complaint alleges a single-victim civil RICO claim that allegedly lasted at most 16 months, and which, according to plaintiff's own allegations, ceased prior to commencement of this lawsuit. Accordingly, plaintiff fails to plead the element of continuity which is necessary to establish a pattern of racketeering. More specifically, plaintiff fails to establish either that: (i) the duration of the predicate acts exceeded two years for purposes of closed-ended continuity; or (ii) there is a threat of continued criminal activity for purposes of open-ended continuity. The Court should thus dismiss Count II pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

*Second*, the court should dismiss plaintiff's RICO conspiracy claim because it is derivative of plaintiff's defective RICO claim.

*Lastly*, because plaintiff's sole basis for federal jurisdiction is its deficient RICO claim, dismissal of that claim leaves no federal claim pending in this lawsuit. Accordingly, the Court should decline to exercise supplemental jurisdiction over plaintiff's eight state law causes of action and dismiss the Amended Complaint in its entirety.

---

[1] The term "Defendant Entities" collectively refers to: The KRM Events LLC, Katherine's on Monroe LLC, The Divinity Estate and Chapel LLC, KNC Elegance LLC d/b/a The Wintergarden By Monroes, 11 Wexford Glen LLC, RCC Monroes LLC, NAF Remodeling, LLC, Monroes at Ridgemont LLC, Crescent Beach At the Lake LLC, and Mott Management LLC.

## II.     PROCEDURAL BACKGROUND

Plaintiff commenced this action on March 11, 2024. ECF No. 1. The initial complaint asserted five causes of action, denominated by plaintiff as follows: (1) fraud; (2) a violation of 18 U.S.C. § 1962 ("RICO"); (3) breach of contract; (4) collection on debt; and (5) indemnification. *Id*. Each claim was asserted against all of the twelve defendants. ECF No. 1.

Plaintiff simultaneously moved for appointment of a receiver, ECF Nos. 2, 3, to which defendant Mott objected, arguing that the Court lacked subject matter jurisdiction because plaintiff sought to invoke federal question jurisdiction based solely on its legally insufficient civil RICO claim. ECF No. 25.

On April 4, 2024, the Court granted plaintiff's motion for the appointment of a receiver. ECF No. 36. In so doing, the Court made clear that "[t]he appointment of a receiver is preliminary to a resolution on the merits and is intended to maintain the status quo to prevent further harm to Plaintiff while these thorny issues on the merits are considered and resolved." ECF No. 36, p. 10.

On April 8, 2024, the Court appointed Mr. Mark R. Kercher, CPA, as Receiver. ECF No. 39. In its Order, the Court directed that the Receiver have "exclusive dominion and control over all of the financial affairs, including all cash, assets, books and records of the Entity Defendants." ECF No. 39 ¶ 1.

On May 8, 2024, Plaintiff filed its Amended Complaint, adding three individual defendants and asserting claims for fraud (Count I), civil RICO (Count II), breach of contract (Count III), unjust enrichment (Count IV), conversion (Count V), collection on debt (Count VI), indemnification (Count VII), RICO conspiracy (Count VIII), aiding & abetting fraud (Count IX), and money had and received (Count X). ECF No. 51.

Also on May 8, 2024, plaintiff filed an Amended RICO Case Statement. ECF No. 52. Consistent with its initial RICO Case Statement, ECF No. 32, plaintiff continues to assert that it was the sole victim of the alleged check kiting scheme:

> (d)    List the alleged victims and state how each victim was allegedly injured.
>
> •   **Five Star Bank has been damaged in the amount of $18,979,005.79.**

ECF No. 52 ¶ (d). Plaintiff has never identified any other victims of the alleged scheme.

## III.    FACTUAL ALLEGATIONS

In its Amended Complaint, plaintiff alleges it had a 16-month banking relationship with the defendant that began on November 29, 2022, when defendant Mott opened seven checking accounts in the names of the entity defendants. ECF No. 51 ¶ 28(a). Then, from February 10, 2023, to January 11, 2024, defendant Mott and others opened additional accounts. *Id.* ¶ 28(b)–(o).

According to the Amended Complaint, "[t]he Entity Defendants' Five Star account records are replete with examples of 'check kiting,' and occurred nearly on a weekly basis from December 2022 through February 2024." ECF No. 51 ¶ 38; *see also* ECF No. 52 ¶ (b) (alleging that the check kiting scheme "beg[an] sometime in or around December 2022.").

More specifically, plaintiff claims that "Defendant Mott . . . present[ed] in person at the Five Star branch, nearly on a daily basis, and instruct[ed] the Five Star teller working to issue her cashier's and/or counter checks for large sums." ECF No. 51 ¶ 40. Thus, although plaintiff initially pled that the alleged scheme began 17 days before commencement of the instant lawsuit, ECF No. 1 ¶ 34, it now alleges that the scheme involved defendant Mott making personal appearances at the Bank "nearly on a daily basis" over the course of 16 months.

In addition, "[b]etween February 22, 2024 and March 5, 2024, Defendant Mott deposited or caused to be deposited approximately 68 checks in an aggregate amount exceeding $62 million

into the various accounts held in the name of the Entity Defendants held at Five Star." ECF No. 51 ¶ 45; *see also id*. ¶¶ 46-51. Then, "[o]n March 5, 2024, the 21 checks deposited on February 29, 2024 were charged back by Kinecta FCU. Because no additional deposits had been made, these charge backs resulted in significant negative balances on the impacted accounts at Five Star (approximately $20.7 million)." ECF No. 51 ¶¶ 52, 54.

After claiming to have discovered the negative balances on or about March 5, 2024, plaintiff had "multiple daily calls with Defendant Mott," ECF No. 51 ¶¶ 55-57, and ultimately "offset [a] small portion of its substantial losses with other funds held or controlled by Mott as permitted under the operative Deposit Account Agreement." ECF No. 51 ¶ 58. The Bank claims it "has suffered losses of at least $18.9 million . . . ." ECF No. 51 ¶ 60.

In addition, the Amended Complaint alleges that Five Star took "steps to restrict [Mott's] ability to write further checks against the accounts affiliated with Entity Defendants . . . ." ECF No. 51 ¶ 61. Notwithstanding that plaintiff admits in its Amended Complaint that the so-called check kiting scheme ceased when plaintiff restricted defendants' access to the accounts and ability to write checks from the accounts, *id*., plaintiff makes entirely speculative and conclusory allegations that, if it were not for the account restrictions, its commencement of this lawsuit, and the appointment of the Receiver, the scheme would have continued at *other* institutions. ECF No. 51 ¶ 62. In sum and substance, the Bank alleges that the so-called scheme would have continued if it had not stopped, which, of course, could be said about any scheme that came to a conclusion.

Finally, throughout its amended complaint, plaintiff relies on either factually unsupported or conclusory allegations regarding alleged check kiting at other institutions, including allegations made on information and belief. ECF No. 51 ¶¶ 29, 33 to 37.

## IV.    APPLICABLE LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). However, the Court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

There is a particularly important principle that the Court must consider in a case like ours, where federal jurisdiction is based on a civil RICO claim: "it is well-settled that a civil claim pursuant to RICO 'is an unusually potent weapon - the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Burgdorf v. Betsy Ross Nursing & Rehab. Ctr. Inc.*, No. 22-CV-987, 2023 WL 112092, at *3 (N.D.N.Y. Jan. 5, 2023); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (holding that courts must particularly scrutinize RICO claims premised on mail or wire fraud because of the ease by which a plaintiff may mold a pattern of RICO claims from facts that do not actually support the claims); *Santana v. Adler*, No. 117CV06147ATSDA, 2018 WL 2172699, at *3 (S.D.N.Y. Mar. 26, 2018) ("Alleged RICO violations must be reviewed with an appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's

fees in federal court simply because they are cast in terms of RICO violations."). "Especially 'in cases involving fraud, plaintiffs asserting RICO frequently miss the mark and have their cases dismissed at the outset.'" *Chester Park View, LLC, v. Schlesinger*, No. 23-CV-5432 (CS), 2024 WL 2785140, at *5 (S.D.N.Y. May 29, 2024) (citing *Demaree v. Castro*, No. 22-CV-8772, 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023)); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 309 (S.D.N.Y. 2009) ("Civil RICO should not be used to transform a garden variety fraud or breach of contract case into a vehicle for treble damages.").

## V.   ARGUMENT

### A.   THE COURT MUST DISMISS COUNT II, ALLEGING VIOLATION OF 18 U.S.C § 1962, BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER SECOND CIRCUIT PRECEDENT.

Plaintiff's Amended Complaint fails to plead a plausible RICO claim because plaintiff has not adequately established that defendants engaged in a *pattern* of racketeering activity. A civil RICO claim requires three essential elements: (a) a violation of 18 U.S.C §1962; (b) injury to Plaintiff's property or business; (c) causation of the injury by the violation. *See Sky Medical Supply Inc. v. SCS Support Claims Service Inc*., 17 F. Supp. 3d 207 (E.D.N.Y. 2014). And, to state a violation of 18 U.S.C §1962, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley Inc*., 719 F.2d 5, 17 (2d Cir. 1983)). In addition, for purposes of a RICO claim, "all allegations of fraudulent predicate acts [ ] are [also] subject to the heightened pleading requirements of [Rule] 9(b)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004).

### i.    *Pattern of Racketeering Activity – Continuity*

A "pattern of racketeering activity" must consist of at least two predicate acts, "the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activities must "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To meet this "continuity" requirement, a "plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Capital*, 385 F.3d at 180 (quoting *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). Here, plaintiffs have alleged neither a closed-ended nor an open-ended pattern of racketeering activity.

### a.    *Closed-Ended Continuity*

Plaintiff has failed to allege closed-ended continuity. "To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Cofacredit*, 187 F.3d at 242 (quoting *H.J. Inc.*, 492 U.S. at 242). "[C]losed-ended continuity is primarily a temporal concept." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008)). "Since the Supreme Court decided *H.J. Inc.*, [the Second Circuit has] never found predicate acts spanning less than two years to be sufficient to constitute closed-ended continuity." *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019).

Here, plaintiff's allegations fall far short of establishing the substantial period of time required to constitute closed-ended continuity. The Amended Complaint alleges that the plaintiff's

relationship with defendant Mott and her entities began, at the earliest, in November of 2022 – namely, 16 months before this lawsuit was commenced, which relationship itself existed for less than the two-year minimum required to establish closed-ended continuity. What is more, plaintiff has confirmed that this 16-month banking relationship lasted at most through March 5, 2024, when plaintiff took "steps to restrict [defendant Mott's] ability to write further checks against the accounts affiliated with Entity Defendants . . . ." ECF No. 51 ¶ 61. Thus, even without considering other factors, the alleged scheme cannot support a finding of closed-ended continuity. *See Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011) (holding that alleged wire and mail fraud scheme from April 2004 to January 2006 did not establish closed- or open-ended continuity); *Dreamco Dev. Corp. v. Empire State Dev. Corp.*, No. 15-CV-901-FPG-HKS, 2017 WL 4230501, at *3 (W.D.N.Y. Sept. 25, 2017) (holding that a series of predicate acts spanning nearly four months was "insufficient to meet the temporal requirement of closed-ended continuity").

In addition, courts may also consider "[o]ther factors, such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes [that] are also relevant in determining whether closed-ended continuity exists." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 135 (S.D.N.Y. 2023). A review of plaintiff's allegations, however, further confirms a lack of closed-ended continuity. Plaintiff alleges at most a single scheme of check kiting involving plaintiff and Kinecta Federal Credit Union, of which plaintiff was the only victim. *See* ECF No. 52 ¶ (d). Thus, "[p]laintiff does not allege a 'complex, multi-faceted conspiracy to defraud executed by numerous [parties]' such that the Court could find an exception to the Second Circuit's well-established two-year requirement." *Highmore Fin. Co. I, LLC v. Greig Companies, Inc.*, No. 21 CIV. 11021 (AT), 2023 WL 4865722, at *6 (S.D.N.Y. July 31, 2023) (citations omitted). *See also Grace Int'l*, 797 F.

App'x at 605-606 (twenty-nine month long scheme involving few victims and few perpetrators, with limited goal of defrauding the plaintiff, did not support finding of closed-ended continuity); *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 78 (S.D.N.Y. 1995) (one scheme with single goal of seizing control of plaintiff's business, even though using several different tactics, did not support finding of closed-ended continuity); *One World, LLC v. Onoufriadis*, No. 21-374-CV, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) (alleged scheme involving discrete number of predicate acts and single victim did not justify departing from two-year benchmark for closed-ended continuity). Indeed, the alleged scheme in plaintiff's Amended Complaint is "more akin to garden variety breach of contract and tort claims than a large-scale civil RICO claim," which does not suffice for closed-end continuity. *MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480-CV, 2022 WL 570082, at *2 (2d Cir. Feb. 25, 2022).

*b.*     *Open-Ended Continuity.*

Plaintiff also fails to allege open-ended continuity in the Amended Complaint. As the Second Circuit recently explained:

> There are two ways to show open-ended continuity – (1) "where the acts of the defendant or the enterprise [are] inherently unlawful, such as murder or obstruction of justice, and [are] in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement," *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995), or (2) "where the enterprise primarily conducts a legitimate business" but there is "some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity," *Cofacredit*, 187 F.3d at 243 (citing *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. 2893). The allegation of a scheme that was inherently terminable does not plausibly imply a threat of continued racketeering activity.

*Grace*, 797 F. App'x at 606; *see also Dreamco*, 2017 WL 4230501, at *3 ("To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond

- 9 -

the period during which the predicate acts were performed.") (citations omitted). Clearly, plaintiff has not alleged the first type of open-ended continuity, "which primarily targets organized crime." *Grace*, 797 F. App'x at 606.

Here, plaintiff's Amended Complaint itself proves that there is no threat of continuing criminal activity beyond the period during which the predicate acts were performed because plaintiff stopped the alleged scheme before it filed this lawsuit. More particularly, plaintiff confirms in its Amended Complaint that the Bank took "steps to restrict [defendant Mott's] ability to write further checks against the accounts [with Five Star] affiliated with Entity Defendants . . . ." ECF No. 51 ¶ 61. This allegation alone establishes there is no threat of continuing criminal activity: defendants' banking relationship with the plaintiff terminated when the plaintiff stopped permitting defendant to conduct banking activities with the plaintiff. *See, e.g., D.R.S. Trading Company, Inc. v. Fisher*, No. 01 Civ. 8028, 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002) ("[T]here is no open-ended continuity because there is no likelihood that the fraud against [plaintiff] will continue since [plaintiff] has terminated its relationship with defendants."); *Thai Airways Intl. v. United Aviation Leasing B.V.*, 842 F.Supp. 1567, 1572–73 (S.D.N.Y.1994) ("Any continuing concealment or transfer of the security deposits would not cause any additional harm . . . and would not enlarge the scope of the isolated alleged fraud."). Thus, the Amended Complaint confirms that the scheme, in fact, terminated such that there is no threat of continued criminal activity to establish open-ended continuity. Accordingly, because the Bank has stopped defendant Mott from writing checks, the alleged check-kiting scheme was inherently terminable.

To avoid the consequences of having terminated defendants' ability to conduct banking activities, plaintiff makes the conclusory allegation that its "business relationship [with the defendants] . . . has not yet terminated because of [defendants'] ongoing obligation to bring their

negative account balances to zero pursuant to the Deposit Account Agreement(s)." ECF No. 52, ¶ 67. However, plaintiff's admission that defendants cannot write checks confirms, at most, that there is debtor/creditor relationship between the bank and the defendants, as opposed to an ongoing banking relationship. In other words, all that remains of the alleged "business relationship" are claims by plaintiff that it is owed money, based in contract or tort.

Notwithstanding plaintiff's admission that the scheme underlying its RICO claim ceased when plaintiff restricted defendants' ability to write checks from its accounts, plaintiff parrots the elements of continuity by alleging that the scheme was the regular way of doing business and that it would have continued "but for" the bank's ability to stop it, its commencement of this lawsuit, and the appointment of the Receiver. But these are nothing more than speculative and conclusory allegations intended to support a claim of "open-ended" continuity where none exists. *See, e.g., GICC Capital Corp.*, 67 F.3d at 466 (rejecting claim that defendant would have continued scheme had plaintiff not commenced litigation on the grounds it was "entirely speculative"); *see also Grace*, 797 F. App'x at 606 ("The allegation of a scheme that was inherently terminable does not plausibly imply a threat of continued racketeering activity.").

Plaintiff's conjecture about how defendant Mott and her entities might have conducted themselves in the future – offered without proof in support – has no probative value.[2] Unsupported speculation and conclusions like these do not pass muster under *Iqbal* and its progeny. *See One World, LLC v. Onoufriadis*, No. 21-374-CV, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) ("In addressing the sufficiency of a complaint . . . we are not required to credit allegations that are speculative or conclusory."); *MinedMap*, 2022 WL 570082, at *2 (in the context of open-ended

---

[2] The mere fact that the Receiver now has "exclusive dominion and control over all of the financial affairs, including all cash, assets, books and records of the Entity Defendants," ECF No. 39 ¶ 1, further belies plaintiff's "but for" speculation.

continuity, the Second Circuit held that "MinedMap's allegations are largely conclusory and do not allege with the requisite particularity how the fraud scheme would continue into the future"); *Highmore*, 2023 WL 4865722, at *7 ("Further, Plaintiff does not plead a 'future with a threat of repetition,' *H.J. Inc.*, 492 U.S. a 241, because the alleged scheme terminated when TGC 'maxed out the available supplier credit financing' and Plaintiff 'stopped funding TGC.' [] After TGC's source of funding ended, 'the enterprise c[ould] no longer sustain itself and the scheme cease[d] to exist.'") (citing *One World*, 2021 WL 184400, at *10). Therefore, with no future threat of fraudulent activity, "it is impossible to infer any threat of ongoing criminal conduct." *Id.*

Moreover, the Court should disregard plaintiff's conclusory and unsupported allegations based on information it derived from its improper (and perhaps unlawful) use of Section 314(b) of the USA Patriot Act. In this regard, the declaration of Michael Jozwiak, previously filed in support of plaintiff's receiver motion, characterizes supposed communications between plaintiff and other financial institutions pursuant to Section 314(b) of the USA Patriot Act. *See* ECF No. 31 ¶ 20. However, in considering this motion to dismiss, the Court should disregard such communications – not only because they are generalizations and conclusions without any factual support – but also because it appears that plaintiff misused Section 314(b) for improper purposes. Section 314(b), codified as 31 C.F.R. § § 1010.540, allows financial institutions to share information with other financial institutions only in very limited circumstances. Specifically, information shared between financial institutions shall not be used for any purpose other than:

A)      Identifying and, where appropriate, reporting money laundering or terrorist activities;

B)      Determining whether to establish or maintain an account or to engage in a transaction; or

C)      Assisting the financial institution in complying with any requirement to this chapter.

- *12* -

31 C.F.R. § 1010.540(b)(4)(i)(A) – (C). Financial institutions who engage in information sharing must maintain the security and confidentiality of any information shared. See 31 C.F.R. § 1010.540(b)(4)(ii). Indeed, the provision provides a safe harbor from liability where information is shared for one of the proper purposes listed above. *See* 31 C.F.R. § 1010.540(b)(5). But use of shared information in connection with a financial institution's lawsuit, business purposes, and/or to aid in pre-judgment collection efforts, is not a permissible use of such information.[3] For this reason, the Court should not consider plaintiff's attempt to recast generalizations, speculation, and conclusions as factual allegations. Rather, these allegations are conclusory characterizations and without underlying factual support.

### B.   THE COURT MUST DISMISS COUNT VIII FOR VIOLATION OF 18 U.S.C. § 1962(D).

The Court should also dismiss plaintiff's eighth claim, which attempts to charge a violation of the RICO conspiracy statute, 18 U.S.C. § 1962(d). First, "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 124-25 (S.D.N.Y. 2021). Because plaintiff did not plead a plausible RICO claim, it cannot possibly plead an actionable RICO conspiracy.

Second, apart from identifying and aggregating "cashier's checks" written to the newly named defendants and Robert Harris, there are no factual allegations in the Amended Complaint

---

[3] *See also* Baldwin, Greg, Esq., "INFORMATION SHARING" UNDER SECTIONS 314(a) AND (b) OF THE USA PATRIOT ACT, https://www.hklaw.com/-/media/files/insights/publications/2008/01/information-sharing-under-sections-314a-and-b-of-t/files/information-sharing-under-sections-314a-and-b-of-t/fileattachment/50251.pdf ("Thus, section 314(b) may not be used by financial institutions to exchange information about other suspected criminal activity, or for general business purposes such as credit or lending decisions, locating defaulting borrowers or their assets, and so on. The only information that may be exchanged is information relating to identifying and reporting money laundering or terrorist activity.").

that would support a "plausible" conclusion that any of the defendants named in Count VIII conspired to violate § 1962(a). "To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit*, 187 F.3d at 244 (internal quotation marks and citation omitted). And "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (dismissing RICO conspiracy where the plaintiff did "not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts").

Here, the Amended Complaint does not contain any allegation of an agreement to commit predicate acts involving the alleged check kiting scheme. Nor, for that matter, is there any allegation that the defendants knew about the scheme, let alone had a meeting of the minds to participate in it; nor that the defendants had knowledge that any of the checks identified in the Amended Complaint were derived from unlawful activity. Rather, the only factual support underpinning the conspiracy claim is that certain individual defendants received "cashier's checks." Beyond identifying and aggregating these checks, however, the remainder of plaintiff's allegations are a combination of pure speculation and a boilerplate recitation of the elements.

Indeed, as it concerns the necessity of alleging an agreement to commit predicate acts, "courts ordinarily dismiss complaints that contain only conclusory, boilerplate allegations as to the existence of the relevant agreement." *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21 CIV. 10597 (JPC), 2023 WL 374120, at *13 (S.D.N.Y. Jan. 24, 2023) (citing *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) (dismissing a RICO conspiracy count when "[o]ther than one conclusory allegation that the defendants 'agreed' to commit the

violations, the plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations" (citation omitted)); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453 (S.D.N.Y. 2004) ("Conclusory allegations that 'all of the defendants conspired among themselves to further the scheme to defraud' and 'knowingly and willingly participated in the conspiracy' are insufficient.")).

Thus, plaintiff's identification and aggregation of cashier's checks – used to support its "on information and belief" and conclusory allegations – do not "raise [plaintiff's] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, Count VIII is inadequately pled, and should be dismissed. *See Connolly v. Havens*, 763 F. Supp. 6, 14 (S.D.N.Y. 1991) (dismissing RICO conspiracy claim where plaintiffs "merely made conclusory allegations, parroting the language of the RICO statute . . . ."); *Laverpool v. N.Y.C. Transit Auth.*, 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991) (dismissing RICO conspiracy because "[i]t is not clear from the face of the pleading how, or even if, each defendant participated in the alleged conspiracy to violate RICO").

## C.   THE COURT SHOULD DISMISS THE STATE LAW CLAIMS

Pursuant to 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over state law claims is within a federal court's discretion if it has "dismissed all claims over which it has original jurisdiction." However, the Second Circuit has counseled against exercising supplemental jurisdiction in such a situation: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital*, 385 F.3d at 183 (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)). Indeed, "the traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state-law claims where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118,

122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see Grace Int'l Assembly of God v. Festa*, No. 17-CV-7090, 2019 WL 1369000, at *9 (E.D.N.Y. Mar. 26, 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."), *aff'd*, 797 F. App'x 603 (2d Cir. 2019) (summary order).

Here, because the plaintiff's civil RICO claim should be dismissed – the only claim over which this Court has original jurisdiction – the Court should decline to exercise supplemental jurisdiction over plaintiff's eight state law claims, and should also dismiss those claims.

## VI.     CONCLUSION

Accordingly, defendant Katherine Mott and the Defendant Entities respectfully request that the Court grant this motion, dismiss this lawsuit in its entirety, and grant such other relief as may be just, proper, and equitable.


Dated: June 14, 2024
      Rochester, NY

                                      *s/ David Rothenberg*
                                      David Rothenberg, Esq.
                                      Michael Rothenberg, Esq.
                                      ROTHENBERG LAW
                                      *Attorneys for Defendant Katherine Mott-*
                                          *Formicola and all Entity Defendants*
                                      45 Exchange Boulevard, Suite 800
                                      Rochester, New York 14614
                                      Tel:  (585) 232-1946
                                      Fax:  (585) 232-4746
                                      Email:  david@rothenberglawyers.com
                                      Email:  michael@rothenberglawyers.com

To:    David G. Burch, Jr., Esq.
       Benjamin Zakarin, Esq.
       BARCLAY DAMON LLP
       *Attorneys for Plaintiff*
       125 East Jefferson Street
       Syracuse, New York 13202-2078

       Matthew R. Lembke, Esq.
       CERULLI MASSARE & LEMBKE
       *Attorney for Robert Harris*
       45 Exchange Blvd., Suite 925
       Rochester, NY 14614

       Mark A. Foti, Esq.
       THE FOTI LAW FIRM, PC
       *Attorneys for Defendant Kristina Bourne*
       16 W. Main St., Suite 100
       Rochester, NY  14614

       JOHN F. SPERANZA, ESQ.
       *Attorney for Defendant Taylor Pagano*
       28 East Main Street, Suite 1800
       Rochester, NY 14614

       Jeffrey F. Allen, Esq.
       BOND SCHOENECK & KING, PLLC
       *Attorneys for Defendant Taylor Pagano*
       350 Linden Oaks
       Rochester, NY 14625

       David C. Pilato , Esq.
       Michael T. DiPrima, Esq. (of counsel)
       PILATO LAW, PLLC
       *Attorneys for Defendant Timothy LaRocca*
       30 West Broad Street, Suite 100
       Rochester, NY 14614