## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIVE STAR BANK,<br><br>           *Plaintiff*,<br>  v.<br><br>KATHERINE MOTT, ROBERT HARRIS; KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC d/b/a THE WINTERGARDEN BY MONROES; 11 WEXFORD GLEN, LLC; RCC MONROES LLC; NAF REMODELING LLC; MONROES AT RIDGEMONT LLC; CRESCENT BEACH AT THE LAKE LLC; MOTT MANAGEMENT LLC; KRISTINA BOURNE; TAYLOR PAGANO; TIMOTHY LAROCCA,<br><br>          *Defendants.* | CASE NO. 6:24-cv-6153-FPG<br><br>CIVIL ACTION |

## PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS FILED BY DEFENDANTS BOURNE, PAGANO, HARRIS AND LAROCCA

**BARCLAY DAMON LLP**
David G. Burch, Jr.
Sarah A. O'Brien
Benjamin R. Zakarin
*Attorneys for Plaintiff Five Star Bank*
One HSBC Plaza, 2000
100 Chestnut Street
Rochester, New York 14604
Telephone (315) 425 2716
dburch@barclaydamon.com
sobrien@barclaydamon.com
bzakarin@barclaydamon.com

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 3

POINT I. FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR VIOLATION OF THE RICO CONSPIRACY STATUTE .................................................................................................. 3

    Defendant Bourne .......................................................................................................... 4

    Defendant Pagano ......................................................................................................... 5

    Defendant Harris ........................................................................................................... 5

    Defendant LaRocca ...................................................................................................... 6

POINT II. FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR AIDING AND ABETTING FRAUD ........................................................................................................................ 9

POINT III. FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR MONEY HAD AND RECEIVED ................................................................................................................................... 13

CONCLUSION ............................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                    **Page(s)**

*Allied Ir. Banks, P.L.C. v. Bank of Am., N.A*,
   2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. 2006) ................................................................10, 12

*Allstate Ins. Co. v. Valley Physical Med. & Rehab, PC*,
   2009 U.S. Dist. LEXIS 91291 (E.D.N.Y. 2009) ..................................................................4, 8

*Amalgamated Nat'l Health Fund v. Hickey Freeman Tailored Clothing, Inc.*,
   2024 U.S. Dist. LEXIS 56439 (S.D.N.Y. 2024) ........................................................10, 11, 13

*Arista Records v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) ....................................................................................................10

*Bank of Am., N.A. v. Fischer*,
   927 F. Supp. 2d 15 (E.D.N.Y. 2013) ........................................................................................7

*Catzin v. Thank You & Good Luck Corp.*,
   899 F.3d 77 (2d Cir 2018) ......................................................................................................14

*Chubb & Son Inc. v. Kelleher*,
   2010 U.S. Dist. LEXIS 141842 (E.D.N.Y. Oct. 22, 2010) ...................................................4, 6

*City of New York v. Chavez*,
   944 F. Supp. 2d 260 (S.D.N.Y. 2013) ......................................................................................3

*Cromer v. Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................................................................12

*Dellefave v. Access Temps., Inc.*,
   37 F App'x 23 (2d Cir 2002) ..................................................................................................13

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC*,
   2002 U.S. Dist. LEXIS 24023 (S.D.N.Y. 2002) ................................................................10, 12

*DiVittorio,*
   822 F.2d 1242, 1247 (2d Cir. 1987) .......................................................................................10

*EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*,
   2024 U.S. Dist. LEXIS 49346 (S.D.N.Y. 2024) ......................................................................9

*Environmental Servs. v. Recycle Green Servs.*,
   7 F. Supp. 3d 260 (E.D.N.Y. 2014) .........................................................................................4

*Hintergerger v. Catholic Health Sys.*,
   2012 US Dist. LEXIS 37066 (W.D.N.Y. 2012) .....................................................................13


*JP Morgan Chase Bank v. Winnick*,
    406 F. Supp. 2d 247 (S.D.N.Y.2005)..................................................................................10

*Lippe v. Bairnco Corp.*,
    249 F. Supp. 2d 357 (S.D.N.Y. 2003)....................................................................................7

*Martin Hilti Family v. Knoedler Gallery*,
    LLC, 386 F. Supp. 3d 319 (S.D.N.Y 2019)............................................................................3

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir 2004)....................................................................................................13

**Statutes**

18 U.S.C. § 1962(d) ........................................................................................................................3

RICO ..................................................................................................................................... *passim*

**Other Authorities**

Federal Rule 9(b) ................................................................................................................. *passim*

Federal Rule 12(b)(6)..................................................................................................................1, 9

**INTRODUCTION**

Plaintiff Five Star Bank ("Plaintiff" or "Five Star") respectfully submits this Memorandum of Law in opposition to the motions to dismiss filed by Defendants Kristina Bourne, Taylor Pagano, Robert Harris[1] and Timothy LaRocca (collectively referred to as the "Asset Holder Defendants" or "Moving Defendants") made pursuant to Federal Rule 12(b)(6).

The Asset Holder Defendants' motions ignore the well-pled facts that indisputably tie them to Mott's check-kiting scheme, namely that each one had an intimate relationship with Mott and her businesses, and that each one received exorbitant sums of money—totaling over $7.5 million in the aggregate—over the span of twelve to fourteen months. The Asset Holder Defendants each resort to arguing that they did not have knowledge that they were being paid by Mott with stolen funds and attempt to rationalize the excessive payments by asserting that they were for legitimate "business expenses." Putting aside that these assertions are inherently un-credible and self-serving, they are sharply disputed factual issues that must be fleshed out during discovery.

The Asset Holder Defendants, all of whom "join in" or otherwise incorporate the arguments furnished by one another in their respective motions, assert that Five Star's claims for Conspiracy to Commit RICO Violation (Count VIII) and Aiding & Abetting Fraud (Count IX) fail to meet the heightened pleading requirements under Federal Rule 9(b). Understanding that they have no leg to stand on in challenging the claim for Money Had and Received (Count X), the Asset

---

[1] This memorandum of law addresses Defendant Harris' motion to dismiss Five Star's claims for Conspiracy to Commit RICO Violation (Count VIII), Aiding & Abetting Fraud (Count IX) and Money Had and Received (Count X). Five Star's claims against Defendant Harris for Fraud (Count I) and RICO (Count II) are addressed in Five Star's Opposition to Defendant Mott and the Entity Defendants' motion to dismiss. Five Star expressly incorporates by reference all arguments in its memorandum of law in Opposition to Defendant Mott and the Entity Defendants' motion to dismiss.

Holder Defendants argue, in utterly conclusory fashion, that the Court should decline to exercise supplemental jurisdiction over this claim.

As this Court well knows, at the pleading stage, the allegations in the Amended Complaint must be accepted as true, and Five Star is afforded the benefit of every possible favorable inference. Five Star met its pleading duties here.

Five Star alleges that Bourne, Pagano, Harris and LaRocca all knowingly participated in Mott's illegal check-kiting scheme. The Amended Complaint lays out their roles as close business and personal confidants of Mott. Specifically, Five Star alleges that Bourne, an office manager at one of Mott's restaurants, Pagano, an event coordinator at another one of Mott's establishments, Harris, Mott's husband and co-owner of the businesses, and LaRocca, a chef at one of Mott's restaurants, were uniquely positioned to recognize that Mott's businesses were not generating the level of revenue or incurring the level of expenses required to justify the $7.5 million in payments made to them as "legitimate business expenses." While at this pleading stage, Five Star does not have the burden of proving its claims, the Amended Complaint reflects facts sufficient to establish the Asset Holder Defendants' knowledge of the scheme.

Five Star details with sufficient particularity the numerous instances where each Asset Holder Defendant received and deposited substantial sums of money—ranging from approximately $428,000 to $3.7 million over fourteen months—from Mott and her entities. The criminal enterprise here was extensive. With limited investigation conducted to date, Five Star attaches as Exhibits to the Amended Complaint over 400 kited checks, totaling over $7.5 million, that were written to the Asset Holder Defendants from December 2022 through February 2024. Each check identifies the "who, what and where" necessary to satisfy the particularity requirement in Federal Rule 9(b), including: *who* the check was issued by; to *whom* the check was issued to;

*what* the dollar amount of the check was; *where* the check written from; as well as the check, routing and account numbers.

The Amended Complaint also lays out the Asset Holder Defendants roles as mules, a common device deployed in criminal enterprises, including how Mott was able to extract funds from Five Star by obligating the Asset Holder Defendants to incur substantial sums on their own credit cards and then issuing kited checks to each as "reimbursement."

Based on the aforementioned factual allegations in the Amended Complaint, the Court can reasonably infer that the Asset Holder Defendants each had actual knowledge of, and agreed to participate in, the check-kiting scheme by accepting such unusually large individual and cumulative sums money over a short period of time. Any additional details related to the Asset Holder Defendants' knowledge and intent is peculiarly within their own knowledge, and Five Star should be entitled to discovery on these issues.

## ARGUMENT

### POINT I

### FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR VIOLATION OF THE RICO CONSPIRACY STATUTE

To establish a conspiracy to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d), a plaintiff must prove: "(1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner although not necessarily by the commission of any RICO predicate acts himself." *Martin Hilti Family v. Knoedler Gallery*, LLC, 386 F. Supp. 3d 319, 340 (S.D.N.Y 2019); *City of New York v. Chavez*, 944 F. Supp. 2d 260, 268-69 (S.D.N.Y. 2013) ("To establish a violation of §

1962(d), a plaintiff must show that the defendant agreed with at least one other entity to commit a substantive RICO offense.")

Significantly, it is not necessary to find that each defendant knew all the details or the full extent of the conspiracy, including the identity and role of every other conspirator. *Environmental Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 275 (E.D.N.Y. 2014) ("All that is necessary to prove this element of the RICO conspiracy, against a particular defendant, is to prove that he or she agreed with one or more co-conspirators to participate in the conspiracy. Moreover, it is not necessary for the conspiratorial agreement to be express, so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved.") *citing Chubb & Son Inc. v. Kelleher*, 2010 U.S. Dist. LEXIS 141842, at *4 (E.D.N.Y. Oct. 22, 2010).

It is well settled that "a conspirator need not be fully informed about his co-conspirators specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside the scope of the illegal agreement." *Allstate Ins. Co. v. Valley Physical Med. & Rehab, PC*, 2009 U.S. Dist. LEXIS 91291 at *21 (E.D.N.Y. 2009).

Here, Five Star has plausibly alleged a RICO conspiracy between the Defendants. Five Star alleges that Defendants Harris, Bourne, Pagano and LaRocca agreed to join, and knowingly participated in, the corrupt enterprise by making an agreement to receive the proceeds of the Moving Defendants' check-kiting scheme. ECF No. 51, ¶ 88, 176. The Amended Complaint alleges with significant particularity each Asset Holder Defendants' specific and unique connection to Mott and her businesses, details their agreement to participate in the corrupt enterprise, and explains that Defendant Mott utilized these individuals as "mules" to extract funds obtained via the illegal check-kiting scheme.

*Defendant Bourne*

With regard to Defendant Bourne, Five Star alleges that Defendant Bourne, an office manager at Monroe's Restaurant, one of the businesses owned and operated by Defendant Mott and/or the Entity Defendants, received over $3.7 million from Defendant Mott and/or the Entity Defendants between December 2022 and February 2024. ECF No. 51, ¶¶ 89, 97. Five Star details the specific amounts Defendant Bourne received, identifies the specific dates upon which these checks were issued, and identifies who issued these checks (*i.e.,* the various Entity Defendants). *Id.* at ¶ 97; ECF No. 51-C. Five Star also alleges that Defendant Bourne knew that these funds were illegally obtained and thus participated in the Corrupt Enterprise. *Id.* at ¶ 101.

*Defendant Pagano*

With regard to Defendant Pagano, an event coordinator at the Wintergarden by Monroe's and a manager at Monroe's Restaurant, both of which are establishments owned and operated by Defendant Mott and/or the Entity Defendants, received over $1.7 million from Defendant Mott and/or the Entity Defendants between December 2022 and February 2024. ECF No. 51, ¶¶ 90, 98. Five Star details the specific amounts Defendant Pagano received, identifies the specific dates upon which these checks were issued, and identifies who issued these checks (*i.e.,* the various Entity Defendants). *Id.* at ¶ 98; ECF No. 51-D. Five Star also alleges that Defendant Pagano knew that these funds were illegally obtained and thus participated in the Corrupt Enterprise. *Id.* at ¶ 101.

*Defendant Harris*

With regard to Defendant Harris, Mott's husband, received over $1.5 million from Defendant Mott and/or the Entity Defendants between December 2022 and February 2024. ECF No. 51, ¶¶ 91, 99. Five Star details the specific amounts Defendant Harris received, identifies the specific dates upon which these checks were issued, and identifies who issued these checks (*i.e.,*

the various Entity Defendants). *Id.* at ¶ 99; ECF No. 51-E. Five Star also alleges that Defendant Harris knew that these funds were illegally obtained and thus participated in the Corrupt Enterprise. *Id.* at ¶ 101.

*Defendant LaRocca*

With regard to Defendant LaRocca, who was previously employed as an executive chef at the Wintergarden by Monroe's, an establishment owned and operated by Defendant Mott and the Entity Defendants, received over $420,000.00 from Defendant Mott and/or the Entity Defendants between December 2022 and February 2024. ECF No. 51, ¶¶ 92, 100. Five Star details the specific amounts Defendant Bourne received, identifies the specific dates upon which these checks were issued, and identifies who issued these checks (*i.e.,* the various Entity Defendants). *Id.* at ¶ 97; ECF No. 51-C. Five Star also alleges that Defendant Bourne knew that these funds were illegally obtained and thus participated in the Corrupt Enterprise. *Id.* at ¶ 101.

As set forth above, Five Star does not need to allege—much less *prove*—that the conspiratorial agreement entered into by Bourne, Pagano, Harris and LaRocca was express, so long as the existence of the agreement can "plausibly be inferred" from the allegations in the Amended Complaint. *Chubb*, 2010 U.S. Dist. LEXIS 141842, at *4. At this stage, the allegations against the Asset Holder Defendants *must* be accepted as true, and Five Star is afforded the benefit of every possible favorable inference resulting therefrom. Here, it can certainly be inferred that Defendants Bourne, Pagano, Harris and LaRocca agreed to participate in the check-kiting scheme by accepting such unusually large individual and cumulative sums money over a short period of time. It strains credulity for the Defendants to argue that Bourne, Pagano, Harris and LaRocca were ignorant as to the scheme or that the checks they were receiving—***checks that oftentimes exceeded hundreds of thousands of dollars in a <u>single month</u>*** (ECF No. 51, ¶¶ 97-100)—were

derived from legitimate business activity. The sheer amounts of these expenses—approximately $3.7 million in the case of Bourne, $1.7 million in the case of Pagano, $1.5 million in the case of Harris, and $428,000 in the case of LaRocca over the span of approximately fourteen months—allows the Court to draw an inference that these individuals had knowledge of and agreed to participate in Mott's illegal scheme. *See Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003) ("Because fraudulent intent is rarely susceptible to direct proof, plaintiffs often seek to prove intent to defraud circumstantially by proof of certain objective facts -- "badges of fraud" -- that give rise to an inference of intent to defraud.") (internal citations omitted).

Even assuming the truth of the explanation proffered by the Asset Holder Defendants that the checks written to them were "reimbursements" for legitimate business expenses (which of course is not the proper standard on a motion to dismiss), the fact remains that Mott was able to pay these "business expenses" using kited funds because she utilized Defendant Harris, Bourne, Pagano and LaRocca as conduits to extract stolen funds from Five Star. As their story goes, Harris, Bourne, Pagano and LaRocca would pay these "business expenses" using their personal credit cards, and Mott would "reimburse" them with kited checks from Five Star. Obviously, this practice is illegal, *see See Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 30, n. 8 (E.D.N.Y. 2013) (the "act of check kiting is an exemplar of bank fraud"), and the Asset Holder Defendants' feigned ignorance that the "reimbursements" were made using stolen funds would require the Court to completely disregard the applicable standard on a motion to dismiss and instead accept the Asset Holder Defendants' version of events as true. This is entirely improper.

As set forth above, Five Star sufficiently pleads facts to support that the Asset Holder Defendants all agreed to accept, and did actually accept, these illegally obtained funds and therefore participated in the corrupt enterprise. ECF No. 51, ¶¶ 87-103. Under the case law, these

facts, which must be accepted as true, are enough at the pleading stage to state a claim for RICO conspiracy. *Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 91291 at *21 ("a conspirator need not be fully informed about his co-conspirators specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside the scope of the illegal agreement.").

In *Allstate,* plaintiff brought claims for fraud, civil RICO, RICO conspiracy and unjust enrichment / restitution alleging that defendants' engaged in a scheme to evade New York's law prohibiting non-physicians from sharing ownership in medical service corporations in order to facilitate fraudulent no-fault billing. The Court, in denying the defendants' motion to dismiss, held that the plaintiff's allegations were sufficient to state a claim for RICO conspiracy because the plaintiff alleged that "defendants each agreed to participate in a conspiracy to commit the RICO violation by agreeing to conduct the affairs of Valley and Elite by means of a pattern of racketeering activity…" *Allstate Ins. Co.*, 2009 U.S. Dist. LEXIS 91291at *21-22.

Here, like in *Allstate,* Plaintiff alleges that each Asset Holder Defendant separately and individually agreed to participate in the conspiracy. Each of the checks the Entity Defendants issued to the Asset Holder Defendants, over 400 in total, were deposited by each Asset Holder Defendant into an account over which they exercised at least partial control. *See* ECF No. No. 51-3, 51-4, 51-5, and 51-6. Given that each of the Asset Holders had a close connection to Mott (Harris is married to Mott, and Bourne, Pagano and LaRocca, all were employed by Mott and/or one of her businesses in management titled positions), it can be inferred that the Asset Holder Defendants understood that Mott's businesses were not generating that level of revenue or racking up those levels of expenses. It necessarily follows that all, if not the overwhelming majority, of the significant sums Mott paid to Bourne, Pagano, Harris and LaRocca ($3.7 million, $1.7 million,

$1.5 million and $428,000 respectively) were wrongfully obtained directly through illegal or improper means.

The Amended Complaint also alleges that Five Star, through counsel, demanded that the Asset Holder Defendants return the illegally obtained funds or, alternatively, provide an explanation of the valid business purpose(s) for which these payments were made. ECF No. 51, ¶ 102. The Asset Holder Defendants have neither returned any funds nor provided a legitimate explanation for why Defendant Mott and the Entity Defendants made these payments to each of them, which only further evinces the existence of the Asset Holder Defendants' agreement to participate in the Corrupt Enterprise.

Based on the foregoing, Five Star has sufficiently stated a claim for RICO Conspiracy against Bourne, Pagano, Harris and LaRocca.

## POINT II

### FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR AIDING AND ABETTING FRAUD

Defendants Bourne, Pagano, Harris and LaRocca all argue that Five Star's claim for aiding and abetting fraud must be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim and because Five Star has not met the heightened pleading requirements for fraud under Federal Rule 9(b). As set forth below, Plaintiff has pled claims for aiding and abetting fraud with sufficient particularity. The existence of any additional facts related to these claims are peculiarly within the Asset Holder Defendants' knowledge, and Five Star is not required to state these at the pleading stage.

To establish liability for aiding and abetting fraud, a plaintiff must prove: (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *EIG Energy Fund XIV, L.P. v. Keppel*

*Offshore & Marine Ltd.,* 2024 U.S. Dist. LEXIS 49346, at *30 (S.D.N.Y. 2024) citing *JP Morgan Chase Bank v. Winnick,* 406 F. Supp. 2d 247, 252 (S.D.N.Y.2005).

While aiding and abetting fraud claims are subject to Rule 9(b)'s particularity requirement, "when the facts underlying the fraud are peculiarly within [the] opposing party's knowledge, a complaint may be based upon information and belief." *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A*, 2006 U.S. Dist. LEXIS 4270, at *16-17 (S.D.N.Y. 2006) (denying motion to dismiss aiding and abetting fraud claim) *citing DiVittorio,* 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Diamond State Ins. Co. v. Worldwide Weather Trading LLC,* 2002 U.S. Dist. LEXIS 24023 at *15-16 (S.D.N.Y. 2002) ("…the time, place, speaker, content of the alleged misrepresentations and each defendant's alleged participation have been stated. Further details that may be peculiarly within the opposing party's knowledge do not need to be pleaded at the complaint stage."); *See also Amalgamated Nat'l Health Fund v. Hickey Freeman Tailored Clothing, Inc.,* 2024 U.S. Dist. LEXIS 56439, at *5-6 (S.D.N.Y. 2024) ("despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge"). Indeed, "the *Twombly* plausibility standard does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records v. Doe 3,* 604 F.3d 110 (2d Cir. 2010).

The specific details concerning conversations that Mott may have had with the Asset Holder Defendants about the particulars of the check-kiting scheme are exactly the type of information that is "peculiarly within the opposing party's knowledge." *Amalgamated,* 2024 U.S. Dist. LEXIS 56439, at *5-6. In *Amalgamated,* plaintiff alleged, upon information and belief, that

defendant Peck, whom plaintiff alleged made fraudulent statements, was defendant Granovsky's agent. Defendants asserted that pleading such allegations upon information and belief was insufficient to satisfy the heightened pleading requirements of Federal Rule 9(b). As an initial matter, the court held that Rule 9(b)'s particularity requirement did not apply to allegations concerning the agency relationship and only applied to establishing the fraud itself. *Amalgamated,* 2024 U.S. Dist. LEXIS 56439, at *5-6. The court went on however, to state that even assuming that plaintiff was required to plead with particularity, the plaintiff met this standard for two reasons: "First, whether Mr. Peck was Mr. Granovsky's agent is clearly a fact 'peculiarly within the opposing party's knowledge[ . . .]' Second, Plaintiffs have 'adduce[d] specific facts supporting' their allegation," including Mr. Granovsky's title of chief executive officer, that he had operational control of the company, and that he communicated with Mr. Peck frequently. *Id.* The court held that those allegations were sufficient to raise an inference that Mr. Peck made the fraudulent statements as Mr. Granovsky's agent. That is precisely the situation in the present case, except that here, instead of alleging an agency relationship, Plaintiff alleges the existence of a conspiratorial relationship.

Here, like in *Amalgamated,* there is no dispute that an underlying fraud, *i.e.,* Mott's check-kiting scheme, existed, so the first element is met. As to the second element, Five Star adequately alleges, with sufficient particularity, that Bourne, Pagano, Harris and LaRocca all had actual knowledge of Mott's scheme. *See* ECF. No. 51. Actual knowledge is directly inferable from the fact that each individual had a close relationship with Mott and the Entity Defendants (Bourne, Pagano and LaRocca were all employed by Mott and/or one of her businesses and Harris is married to Mott); that each individual received exorbitant checks (over 400 total checks amounting to over $7.5 million in kited funds) in a relatively short period of time, that the individuals each deposited

these checks into accounts of which they exercised control (ECF No. 51-3, 51-4, 51-5, 51-6) and that the individuals, as Mott's close confidants and employees, recognized that Mott's businesses were not generating the levels of revenue or expenses to justify payment of over $7.5 million to the Asset Holder Defendants in legitimate business expenses.

With regard to the third element, substantial assistance exists where a defendant "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed." *Allied Ir. Banks, P.L.C.*, 2006 U.S. Dist. LEXIS 4270 at *34-35; *Cromer v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). Plaintiff has alleged sufficient facts demonstrating that each of the Asset Holder Defendants substantially assisted Mott in effectuating her check-kiting scheme as they were each the conduits that allowed her to pull the stolen funds out of Five Star and subsequently conceal them.

Five Star has not had the benefit of discovery and has not been privy to any of the information obtained throughout the course of the criminal investigation into Ms. Mott's conduct. Despite this, Five Star has been able to obtain evidence, in the form of the kited checks issued to the Asset Holder Defendants attached to the Amended Complaint, that directly tie Bourne, Pagano, Harris and LaRocca to Mott's check-kiting scheme. These checks and the corresponding allegations satisfy the "who, what, where, when" particularity requirements of Rule 9(b). Further details concerning the Asset Holder Defendants' knowledge, including specific conversations with Mott concerning the scope of their involvement in the enterprise, are peculiarly within their own knowledge, and Five Star is thus not required to plead them at this stage. *Diamond State Ins. Co.*, 2002 U.S. Dist. LEXIS 24023 at *15-16 ("…the time, place, speaker, content of the alleged misrepresentations and each defendant's alleged participation have been stated. Further details that

may be peculiarly within the opposing party's knowledge do not need to be pleaded at the complaint stage."); *Amalgamated,* 2024 U.S. Dist. LEXIS 56439, at *5-6.

## POINT III

### FIVE STAR HAS ADEQUATELY PLED A CLAIM FOR MONEY HAD AND RECEIVED

The Asset Holder Defendants do not, and cannot, substantively challenge Five Star's claim for money had and received. Instead, they each argue, in conclusory fashion, that the Court should decline to exercise supplemental jurisdiction over the money had and received claim because it is a state law cause of action.

As fully set forth in Plaintiff's Opposition to Defendant Mott and the Entity Defendants' motion to dismiss, which is expressly incorporated herein by reference, Plaintiff has properly pled its federal RICO and Conspiracy claims, so there is no reason for the Court to dismiss the state law claims.

In the event this Court determines that Plaintiff has failed to state a plausible RICO or Conspiracy claim, Five Star submits that this Court should exercise its discretion in retaining supplemental jurisdiction over the money had and received claim because the "principles of judicial economy, convenience to parties and witnesses, and fairness all weigh in favor of retaining jurisdiction." *Hintergerger v. Catholic Health Sys.*, 2012 US Dist. LEXIS 37066 (W.D.N.Y. 2012); *see also Dellefave v. Access Temps., Inc.*, 37 F App'x 23 (2d Cir 2002) (holding that district court did not abuse its discretion in exercising supplemental jurisdiction because the state claims did not involve novel or unsettled questions of law, and judicial economy was served because the court had the case for over a year and resolved several motions); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir 2004) (finding exercise of supplemental jurisdiction was proper because

significant judicial resources were expended, findings of fact were made, and "it would have stood judicial economy on its head not to processed with the state claims after our remand.").

The Moving Defendants have failed to articulate how judicial economy, convenience, fairness, or comity might be served by requiring the parties to expend additional time and money re-litigating the same issues in state court. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir 2018). Although this case is at the motion to dismiss stage, significant resources have already been expended by both parties, the court and the court-appointed Receiver in connection with this action. This court has decided numerous substantive motions, including the Plaintiff's motion to appoint a Receiver (ECF No. 3), Plaintiff's motion to serve expedited discovery (ECF No. 34), (and the related motions to expedited the hearings on those motions) as well as Defendants' motion to compel compliance with the Receiver order (ECF No. 50), the Receiver's motion for approval to retain counsel (ECF No. 39), and now, the various motions to dismiss the Amended Complaint filed by Defendants (ECF Nos. 69, 74, 75, 78, 80). The facts forming the basis of this case are complex, and this Court has already expended significant resources becoming familiar with them. As evidenced by the Receiver's Report (ECF No. 61), the Receiver has also spent significant time and money reviewing Defendants' finances and obtaining custody of the same. Moreover, Plaintiff is certainly likely to succeed on the merits of its money had and received claim on summary judgment, as Defendants have no viable defenses.

Based on the foregoing, principles of judicial economy, convenience to parties and witnesses, and fairness all weigh in favor of this Court exercising its discretion to retain jurisdiction over the state law claims, even in the absence of the federal RICO or conspiracy claims.

## CONCLUSION

For all the reasons set forth herein, it is respectfully requested that the Court deny the Moving Defendants' motion to dismiss in its entirety, and grant such other and further relief it deems just and proper.

**Dated:** August 12, 2024

                                                Respectfully submitted,
                                                **BARCLAY DAMON LLP**

                                     By: */s/ David G. Burch, Jr.*
                                            David G. Burch, Jr. Esq.
                                            Sarah A. O'Brien, Esq.
                                            Benjamin R. Zakarin, Esq.
                                            One HSBC Plaza
                                            100 Chestnut Street
                                            Rochester, New York 14604
                                            (585) 295-4400
                                            dburch@barclaydamon.com
                                            sobrien@barclaydamon.com
                                            bzakarin@barclaydamon.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on August 12, 2024, I served the foregoing document on all counsel of record via the Court's ECF system.

<div align="right">

*/s/ David G. Burch, Jr.*
David G. Burch, Jr.

</div>