UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FIVE STAR BANK,

                                                 Plaintiff,

    -vs-

KATHERINE MOTT-FORMICOLA,
ROBERT HARRIS, KRM EVENTS LLC,
KATHERINE'S ON MONROE LLC, THE
DIVINITY ESTATE AND CHAPEL LLC,
KNC ELEGANCE LLC d/b/a THE
WINTERGARDEN BY MONROES,
11 WEXFORD GLEN LLC, RCC MONROES
LLC, NAF REMODELING, LLC, MONROES
AT RIDGEMONT LLC, CRESCENT BEACH
AT THE LAKE LLC, MOTT MANAGEMENT
LLC, KRISTINA BOURNE, TAYLOR
PAGANO, TIMOTHY LAROCCA,

                                              Defendants.

No. 24-cv-6153-FPG

---

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS

Defendant Katherine Mott and the Defendant Entities[1] submit this reply memorandum of law in further support of their motion to dismiss plaintiff's Amended Complaint. ECF No. 69.

**I.**     **Plaintiff's allegations regarding conduct at other financial institutions lack the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure such that plaintiff has not satisfied closed-ended continuity.**

Notwithstanding its sixteen-month banking relationship with the defendants, plaintiff nevertheless argues throughout its opposition that it has satisfied closed-ended continuity because, as plaintiff contends, "[d]efendants were engaged in the check-kiting scheme as early as 2019."

---

[1] The term "Defendant Entities" collectively refers to: The KRM Events LLC, Katherine's on Monroe LLC, The Divinity Estate and Chapel LLC, KNC Elegance LLC d/b/a The Wintergarden By Monroes, 11 Wexford Glen LLC, RCC Monroes LLC, NAF Remodeling, LLC, Monroes at Ridgemont LLC, Crescent Beach At the Lake LLC, and Mott Management LLC.

ECF No. 91 at 7. However, in support of that argument, plaintiff relies on four conclusory paragraphs in the Amended Complaint concerning supposed conduct at other financial institutions, *id*. (*citing* ECF No. 51 ¶¶ 34-37), none of which was pleaded with any factual basis, let alone with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, the Amended Complaint does not plead closed-ended continuity because it does not allege any predicate act outside of plaintiff's sixteen-month banking relationship with the defendants.

"To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). And "[t]he relevant period [for measuring closed-ended continuity] . . . is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Importantly, "all allegations of fraudulent predicate acts [ ] are subject to the heightened pleading requirements of [Rule] 9(b)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004); *see also Lorber v. Winston*, 962 F. Supp. 2d 419, 439 (E.D.N.Y. 2013) (allegations of predicate acts, including bank fraud in violation of 18 U.S.C. § 1344, must comply with Rule 9(b)).

As it concerns this pleading requirement, the Second Circuit has held that, "[i]n the RICO context, Rule 9(b) calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (citations omitted); *see also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("To satisfy this [Rule

2

9(b)] requirement, a complaint must specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."); *Spoto v. Herkimer Co. Trust*, 2000 WL 533293, at *6 (N.D.N.Y. April 27, 2000) (dismissing RICO mail fraud claim because plaintiff failed to delineate "the who, what, why, where, and when" of the alleged misrepresentation).

A review of the four paragraphs on which plaintiff relies to support its closed-ended continuity argument confirms that plaintiff has not pled underlying predicate acts of bank fraud[2] with the requisite particularity to satisfy Second Circuit precedent. Two of the paragraphs conclude that there was "check-kiting and check fraud activity" and "check-kiting," but do not allege a single fact in support. Specifically, paragraph 34 alleges that "Evans Bank closed accounts . . . in late 2022 for check-kiting and check fraud activity in 2022," but the Amended Complaint does not support that conclusion with facts. ECF No. 51 ¶ 34. Likewise, paragraph 35 alleges that "Lyons National Bank closed accounts . . . in late 2022 due to suspected check-kiting," but again fails to substantiate that allegation with any facts. *Id*. ¶ 35. Conclusions like these – i.e., that there was "check fraud activity" or "check-kiting" – do not satisfy Rule 9(b) and cannot serve as predicate acts for purposes of determining closed-ended continuity. *See, e.g., Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) ("Describing a predicate fraud only as 'fraudulent accounting' or 'fraudulent Escrow accounting statement' or 'complaint . . . containing numerous false statements and instances of perjury' or 'fraudulent statement of purchase of mortgage', as the plaintiff does, is insufficient. These are the kind of conclusory allegations that Rule 9(b) is meant to dissuade.").

---

[2] Plaintiff's Amended RICO Statement confirms that its RICO claim is premised on alleged violations of 18 U.S.C. § 1344 (bank fraud). *See* ECF No. 52 ¶ (e)(1).

The two other paragraphs cited by plaintiff contain even less for purposes of Rule 9(b). Paragraph 36 states only that Canandaigua Bank and Trust "also closed accounts" in 2022; and paragraph 37 alleges that "Tompkins Community Bank also involuntarily closed accounts affiliated with Defendant Mott in 2019 due to inappropriate transaction history." ECF No. 51 ¶¶ 36, 37. Even under a liberal reading of the Amended Complaint, these allegations fall short of the requirements of established precedent. *See Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 571–72 (W.D.N.Y. 2011) ("Merely to allege, then, that defendants 'employed the same scheme' with respect to these other properties falls far short of compliance with that pleading standard.").[3]

Owing to a complete lack of supporting allegations, let alone specific allegations to comport with Rule 9(b), the Amended Complaint fails to satisfy closed-ended continuity: the only predicate acts of bank fraud allegedly occurred during the sixteen-month banking relationship that in November 2022 and ended in March 2024. In sum, plaintiff alleges at most a single scheme of check kiting involving plaintiff and Kinecta Federal Credit Union, of which plaintiff admits it was the only victim, *see* ECF No. 52 ¶ (d), and which took place over sixteen months, far less than the two-year minimum required to establish closed-ended continuity. Plaintiff's conclusory and vague allegations concerning conduct at other financial institutions do not overcome this pleading deficiency, and the Court should dismiss plaintiff's RICO claim.[4]

---

[3] Plaintiff's argument that it did not improperly (and perhaps unlawfully) use Section 314(b) of the USA Patriot Act to gather information to support this lawsuit is without support. *See* ECF No. 91 at 9-10. Although plaintiff takes issue with the article cited by defendants, plaintiff both: (i) ignores the plain language of the statute, which delineates a limited list of permissible uses of shared information, *see* 31 C.F.R. § 1010.540(b)(4)(i)(A) – (C); and (ii) offers no contrasting authority that would support its use of Section 314(b) to prosecute a civil lawsuit.

[4] In footnote 3 of its opposition, plaintiff requests (for a second time) permission to serve limited discovery. ECF No. 91 at 10. The Court should reject this request. The Court *already* denied plaintiff's earlier motion to serve expedited discovery on other financial institutions. ECF No. 47. Now plaintiff claims that it needs the same discovery but for a different reason: to try to state a

**II.     Plaintiff's opposition ignores applicable law holding that a scheme that is inherently terminable cannot satisfy open-ended continuity.**

Plaintiff also argues that it satisfied open-ended continuity – past criminal conduct coupled with a threat of future criminal conduct – because, according to plaintiff, the Amended Complaint alleges that check-kiting was part of defendants' regular way of conducting business. ECF No. 91 at 13-18.[5] However, in making this argument, plaintiff ignores precedent establishing that an inherently terminable scheme cannot support open-ended continuity. In their motion to dismiss, defendants argued that the "Amended Complaint itself proves that there is no threat of continuing criminal activity [for open-ended continuity] . . . because plaintiff stopped the alleged scheme before it filed this lawsuit." ECF No. 69-2 at 10. Plaintiff does not challenge this argument.

Indeed, and irrespective of whether a party pleads that a scheme was the regular way of doing business, an inherently terminable scheme cannot satisfy open-ended continuity. *See, e.g., D.R.S. Trading Company, Inc. v. Fisher*, No. 01 Civ. 8028, 2002 WL 1482764, at *5 (S.D.N.Y. July 10, 2002); *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019) ("The allegation of a scheme that was inherently terminable does not plausibly imply a threat of continued racketeering activity."). Here, plaintiff's own allegations demonstrate that the scheme,

---

RICO claim. However, plaintiff cites no authority that would afford a party that cannot plead a claim an opportunity to conduct limited discovery to try to state that very claim. This is particularly true with respect to civil RICO claims, which are "particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

[5] Plaintiff also argues that it is not required to allege a threat of future criminal conduct. *See* ECF No. 91 at 16. However, to establish the element of a "pattern of racketeering activity" a "plaintiff in a RICO action must [] allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap.*, 385 F.3d at 180 (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). Thus, contrary to plaintiff's argument, pleading open-ended continuity requires establishing a threat of future criminal conduct, which is why an inherently terminable scheme cannot support open-ended continuity. *See, e.g., D.R.S. Trading*, 2002 WL 1482764, at *5.

5

in fact, terminated when plaintiff stopped defendant Mott from writing checks, such that there is no threat of continued criminal activity to establish open-ended continuity.

In support of open-ended continuity, plaintiff also argues that "Defendant Mott would have continued the pattern of rapidly writing checks in and out of Five Star and other financial institutions but for the filing of this lawsuit and the appointment of the Receiver." ECF No. 91 at 17. Putting aside plaintiff's conjecture, this argument is directly contradicted by the Amended Complaint, which alleges that plaintiff stopped the alleged scheme *before* it filed this lawsuit, and long before the Court appointed a Receiver.[6] *See* ECF No. 51 ¶ 61 (alleging that plaintiff took "steps to restrict [defendant Mott's] ability to write further checks against the accounts [with Five Star] affiliated with Entity Defendants . . . ."). There is thus no basis to infer a threat of continued criminal activity, because plaintiff stopped defendants' ability to conduct banking activities *before* filing this lawsuit, such that the scheme was inherently terminable.[7] Plaintiff has failed to plead open-ended continuity, and the Court should dismiss plaintiff's RICO claim.

### III. The Court should dismiss plaintiff's RICO conspiracy claim because the Amended Complaint contains nothing more than boilerplate allegations of conspiracy.

Plaintiff's opposition confirms that the Amended Complaint's only non-conclusory allegations against the Asset Holder Defendants are that they worked at companies owned by defendant Mott and received cashier's checks from defendant Mott and/or the Entity Defendants

---

[6] In arguing that it satisfied open-ended continuity, plaintiff improperly relies on the Receiver's Report dated June 5, 2024, which contains information outside the four corners of the Amended Complaint. ECF No. 91 at 15-16.

[7] Plaintiff also relies on the same conclusory paragraphs concerning conduct at other financial institutions in support of its open-ended continuity argument. However, plaintiff clearly overstates its allegations when it argues that "Defendant Mott *continued to kite checks* after her accounts were closed *at not one, not two, not three, but four other financial institutions*." ECF No. 91 p. 17 (emphasis added). As detailed above, the Amended Complaint lacks any factual allegations to support this statement concerning conduct at other financial institutions.

between December 2022 and February 2024. *See* ECF No. 91 at 20 (citing ECF No. 51 ¶¶ 89-92, 97-100). Plaintiff's opposition to the motion to dismiss cannot overcome the fact that the Amended Complaint does not contain any non-conclusory allegation supporting several essential elements of a RICO conspiracy claim. The Amended Complaint contains no allegation of any agreement to commit predicate acts involving the alleged check-kiting scheme. The Amended Complaint fails to allege that any defendants even knew about the alleged check-kiting scheme. Furthermore, there is no allegation of any meeting of the minds to participate in such scheme. Nor does the Amended Complaint allege that defendants had knowledge that any of the checks identified in the Amended Complaint were derived from unlawful activity. To the contrary, the only factual support for the conspiracy claim is that certain individual defendants received cashier's checks; the remainder of plaintiff's allegations are a combination of pure speculation and a boilerplate recitation of the elements, which is insufficient to establish a conspiracy claim. *See, e.g., Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21 CIV. 10597 (JPC), 2023 WL 374120, at *13 (S.D.N.Y. Jan. 24, 2023) (dismissing a RICO conspiracy count when "[o]ther than one conclusory allegation that the defendants 'agreed' to commit the violations, the plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations") (citation omitted)). These allegations are insufficient as a matter of law to state a claim for RICO conspiracy, and the Court should dismiss the claim.

**IV.     There is no basis to deviate from the general rule that state claims should be dismissed when no federal claim remains, particularly at a pre-answer stage of litigation.**

As argued in defendants' motion to dismiss, the general rule in this Circuit is, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital*, 385 F.3d at 183 (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)). In arguing that the general rule ought not to apply,

7

plaintiff contends only that "significant resources have already been expended by both parties, the court and the court-appointed Receiver in connection with this action." ECF No. 91 at 23.

This argument fails, however, because plaintiff ignores the following relevant facts: no defendant has answered and, thus, no affirmative defenses or counterclaims have yet been pleaded; no discovery has been conducted, not even mandatory disclosures under Rule 26(a); no scheduling order has issued; and, the only motion that required the Court's substantive attention was the motion to appoint a receiver. In short, this case remains at a very preliminary stage.

If this Court's resources are to be conserved and not unnecessarily expended, the better alternative is dismissal of state court claims over which this Court has no independent jurisdiction. Thus, because the plaintiff's civil RICO claim should be dismissed – the only claim over which this Court has original jurisdiction – the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, and also should dismiss those claims.

WHEREFORE, defendant Katherine Mott and the Defendant Entities respectfully request that the Court enter an order granting this motion, dismissing this lawsuit in its entirety, and granting such other relief as may be just, proper, and equitable.

Dated: August 30, 2024
       Rochester, NY

                *s/ David Rothenberg*
                David Rothenberg, Esq.
                Michael Rothenberg, Esq.
                ROTHENBERG LAW
                *Attorneys for Defendant Katherine Mott-*
                 *Formicola and all Entity Defendants*
                45 Exchange Boulevard, Suite 800
                Rochester, New York 14614
                Tel:  (585) 232-1946
                Fax:  (585) 232-4746
                Email:  david@rothenberglawyers.com
                Email:  michael@rothenberglawyers.com

To:    David G. Burch, Jr., Esq.
Sarah A. O'Brien, Esq.
Benjamin Zakarin, Esq.
BARCLAY DAMON LLP
*Attorneys for Plaintiff*
125 East Jefferson Street
Syracuse, New York 13202-2078

Matthew R. Lembke, Esq.
CERULLI MASSARE & LEMBKE
*Attorney for Robert Harris*
45 Exchange Blvd., Suite 925
Rochester, NY 14614

Mark A. Foti, Esq.
THE FOTI LAW FIRM, PC
*Attorneys for Defendant Kristina Bourne*
16 W. Main St., Suite 100
Rochester, NY 14614

John F. Speranza, Esq.
*Attorney for Defendant Taylor Pagano*
28 East Main Street, Suite 1800
Rochester, NY 14614

Jeffrey F. Allen, Esq.
BOND SCHOENECK & KING, PLLC
*Attorneys for Defendant Taylor Pagano*
350 Linden Oaks
Rochester, NY 14625

David C. Pilato , Esq.
Michael T. DiPrima, Esq. (of counsel)
PILATO LAW, PLLC
*Attorneys for Defendant Timothy LaRocca*
30 West Broad Street, Suite 100
Rochester, NY 14614