IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

FIVE STAR BANK,

                 *Plaintiff*,

v.

KATHERINE MOTT-FORMICOLA, ROBERT HARRIS; KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC d/b/a THE WINTERGARDEN BY MONROES; 11 WEXFORD GLEN, LLC; RCC MONROES LLC; NAF REMODELING LLC; MONROES AT RIDGEMONT LLC; CRESCENT BEACH AT THE LAKE LLC; MOTT MANAGEMENT LLC; KRISTINA BOURNE; TAYLOR PAGANO; TIMOTHY LAROCCA,

                 *Defendants.*

---

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BOURNE'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Case No. 24-cv-06153

Dated: September 2, 2024

                                            Mark A. Foti, Esq.
                                            The Foti Law Firm, P.C.
                                            *Attorneys for Defendant Kristina Bourne*
                                            16 W Main Street, Suite 100
                                            Rochester, NY 14614
                                            (585) 461-1999

Defendant Kristina Bourne, by and through counsel, Mark A. Foti, Esq., provides the following memorandum in reply to the Plaintiff's Omnibus Memorandum of Law in Opposition to the Motions to Dismiss Filed by Defendants Bourne, Pagano, Harris and Larocca (Dkt. # 92).

**TABLE OF CONTENTS**

I.   Introduction ............................................................................................................. 2

II.  Discussion ................................................................................................................ 3

III. Conclusion ............................................................................................................... 7

### I. INTRODUCTION

Plaintiff filed an Amended Complaint (Dkt. # 51), introducing claims of fraud against multiple employees of Defendant Katherine Mott, based on nothing more than conjecture. The Amended Complaint advances inflammatory, conclusory allegations against multiple employees, including Kristina Bourne, devoid of any particularity or supportive allegations consistent with an allegation of fraud.

Each of the employee defendants, referred to by the Plaintiff as the "Asset Holder Defendants," appropriately moved to dismiss the amended complaint.

Plaintiff Five Star filed a consolidated response to the employee defendants (Dkt. # 92), and in the face of potential dismissal, the Plaintiff primarily offered a recap of the

allegations, including an overview of the paltry facts that the Plaintiff inexplicably uses to tie the employees to the scheme the Plaintiff has alleged against Defendant Mott.

The consolidation of a response to multiple defendants does not amount to a whole that is greater than the sum of its parts. The allegations against each defendant are wholly insufficient, and specifically those against Ms. Bourne, contained in a single paragraph, do not provide any allegation to support a conclusion of fraud.

## II. DISCUSSION

In the consolidated Response, the Plaintiff presents what it curiously refers to as "well-pled facts that indisputably tie [the employees] to Mott's check-kiting scheme." Dkt. # 92 at 5.

The Plaintiff's "well-plea facts" are non-existent.

Within the Introduction to its Response, the Plaintiff lists the "indisputable" facts, in their entirety, as follows:

1) "[E]ach one had an intimate relationship with Mott and her businesses"; and

2) "[E]ach one received exorbitant sums of money." *Id*.

And that's it.

Through the remainder of the response, the Plaintiff repeats itself with minor degrees of variation, but for the most part, nothing more is added to the "indisputable" facts listed above.

3

The Response states "The Amended Complaint lays out [the defendants'] roles as close business and personal confidants of Mott." Dkt. # 6.

How did the Amended Complaint "lay out" the role of Ms. Bourne as a close business and personal confidant of Ms. Mott? The Plaintiff answers that question: "Specifically, Five Star alleges that Bourne, an office manager at one of Mott's restaurants." Dkt. # 92 at 6. Nothing more.[1]

From there, the Plaintiff somehow jumps to the argument that Ms. Bourne, and the other employee defendants, including a chef, "were uniquely positioned to recognize that Mott's businesses were not generating the level of revenue or incurring the level of expenses" consistent with the check reimbursements that the employees received.[2] *Id*.

But the Plaintiff is asking this Court to leap to conclusions based on mere speculation. Employment, alone, does not suggest a "close relationship" to an employer. And it certainly does not suggest intimate knowledge of a private employer's finances or revenue stream.

---

[1] The Response circles around this allegations, over and over again, claiming that because the defendants were employed by Ms. Mott, they had a "close relationship" (see. e.g. Dkt. # 92 at 15) which according to the Plaintiff, would automatically render them intimately familiar an accurate understanding of the revenue associated with Ms. Mott's businesses.

[2] It is not clear where the Plaintiff has established that the businesses were not generating the level of revenue or incurring the level of expenses consistent with the check reimbursements. It certainly does not appear to be established by the Amended Complaint. *See* Dkt. # 51.

Presenting an unsupported allegations regarding the businesses' revenue and expenses is problematic enough but attempting to claim that knowledge of the businesses' revenue is somehow automatically imparted on employees without any further explanation strains credulity and does nothing to establish the employees "knowledge of the scheme," as alleged by the Plaintiff.

Similarly, the Response claims that the Amended Complaint "lays out" the employee defendants as "mules, a common device deployed in criminal enterprises, including how Mott was able to extract funds from Five Star by obligating the Asset Holder Defendants to incur substantial sums on their own credit cards and then issuing kited checks to each as 'reimbursement.'" Dkt. 92 at 7.

But the Amended Complaint "lays out" no such thing. On approximately four occasions, it states the conclusory allegation that the employee defendants were "mules" with no supporting allegations other than the conclusion itself, made "upon information and belief" with no source to support that belief. *See e.g.* Dkt. # 51 at 31.

In many ways, the Response demonstrates just how emaciated the allegations against the individual defendants are by going through each defendant individually. The allegations against Ms. Bourne are reviewed in a single paragraph. Dkt. # 92 at 9. The paragraph essentially reiterated that Ms. Bourne was an office manager at one of Mr. Mott's businesses, and that Ms. Bourne received a large number of checks, amounting to over 3.7 million between late 2022 and early 2024. *Id*.

Nothing about that paragraph demonstrates fraud, knowing or otherwise. The Plaintiff's argument amounts to the position that an agreement to participate in check-kiting can be inferred "by accepting such unusually large individual and cumulative sums money over a short period of time." Dkt. # 92 at 10. But the Response, and likewise, the Amended Complaint does nothing to establish why any particular total can be characterized as "unusually large," when accounting for the cumulative size of Ms. Mott's businesses, or why accepting such sums of money to reimburse business expenses would support an inference of conspiracy.

In other words, the Response provides more of the same. Empty allegations against employees of Ms. Mott, including Ms. Bourne.

In that respect, the Plaintiff's Response fails to substantively address Ms. Bourne's motion to dismiss, including the Plaintiff's pleadings were insufficient to make allegations based "upon information and belief" and that the pleadings did not satisfy the heightened standard of Rule 9(b).[3]

---

[3] The Plaintiff seems to cite the information contained within the checks as evidence of particularity, but the mere existence of the checks falls woefully short of the requirements of Rule 9(b), particularly where the vast majority of the checks are identifiable as "reimbursement" which contradicts allegations of fraud.

### III. CONCLUSION

For all of the reasons set forth above, and for the reasons stated in her motion to dismiss, Ms. Bourne respectfully requests that this Court reject the arguments of the Plaintiff's Response and dismiss the Amended Complaint, and grant such other relief as deemed appropriate by this Court.

Dated: September 2, 2024

/s/ Mark A. Foti
Mark A. Foti