UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FIVE STAR BANK,

                                    Plaintiff,

        -vs-

KATHERINE MOTT-FORMICOLA,
ROBERT HARRIS, KRM EVENTS LLC,
KATHERINE'S ON MONROE LLC, THE
DIVINITY ESTATE AND CHAPEL LLC,
KNC ELEGANCE LLC d/b/a THE
WINTERGARDEN BY MONROES,
11 WEXFORD GLEN LLC, RCC MONROES
LLC, NAF REMODELING, LLC, MONROES
AT RIDGEMONT LLC, CRESCENT BEACH
AT THE LAKE LLC, MOTT MANAGEMENT
LLC, KRISTINA BOURNE, TAYLOR
PAGANO, TIMOTHY LAROCCA,

                                    Defendants.

_____

No. 24-cv-6153-FPG

# MEMORANDUM OF LAW
# IN OPPOSITION TO MOTION FOR ATTACHMENT

RESPECTFULLY SUBMITTED:

David Rothenberg, Esq.
Michael Rothenberg, Esq.
ROTHENBERG LAW
*Attorneys for Defendant Katherine Mott-*
  *Formicola and all Entity Defendants*
45 Exchange Boulevard, Suite 800
Rochester, New York 14614

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

I.     INTRODUCTION ................................................................................................ 5

II.    LEGAL STANDARD ........................................................................................... 6

III.   FACTUAL BACKGROUND ............................................................................... 7

IV.   ARGUMENT ...................................................................................................... 9

      A.     Plaintiff cannot demonstrate a likelihood of success on the merits. ........................9

            i.    *Plaintiff's claims are barred by its own conduct and knowledge.* ............ 10

            ii.    *Plaintiff's motion is not supported by competent evidence that refutes any of the evidence in the Mott Affidavit.* ...................................... 13

      B.     Plaintiff already elected the provisional remedy of a Receiver such that the Court should deny plaintiff's motion. ....................................................................16

      C.     The motion papers do not meet plaintiff's heavy burden of establishing a ground for attachment pursuant to C.P.L.R. § 6201 (3) .........................................17

V.    CONCLUSION. ................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Ames v. Clifford,*
   863 F. Supp. 175 (S.D.N.Y. 1994) ............................................................................ 19

*Apex Oil Co. v. Belcher Co. of New York, Inc.,*
   855 F.2d 997 (2d Cir. 1988) .................................................................................... 13

*Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.,*
   892 F. Supp. 478 (S.D.N.Y. 1995) .......................................................................... 7

*Brastex Corp. v. Allen Int'l, Inc.,*
   702 F.2d 326 (2d Cir. 1983) .................................................................................... 18

*Brezenoff v. Vasquez,*
   433 N.Y.S.2d 553 (Civ. Ct., N.Y. County 1980) ................................................... 20

*Capital Ventures Int'l v. Republic of Argentina,*
   443 F.3d 214 (2d Cir. 2006) .................................................................................... 7

*Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC,*
   No. 16CV3181MKBCLP, 2018 WL 1402239, at *6 (E.D.N.Y. Mar. 4, 2018) ...... 19

*Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.,*
   54 F. Supp. 3d 287 (E.D.N.Y. 2014) ............................................................ 7, 17, 19

*DLJ Mortg. Cap., Inc. v. Kontogiannis,*
   594 F. Supp. 2d 308 (E.D.N.Y. 2009 .................................................................. 6, 20

*Encore Credit Corp. v. LaMattina,* No. 05-CV-5442,
   2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006) ............................................ 18, 20

*Globaltex Grp. Ltd. v. Trends Sportswear Ltd.,*
   No. 09-CV-0235, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21, 2010) ................... 10

*In re Lehr Constr. Corp.,*
   551 B.R. 732 (S.D.N.Y. 2016) ................................................................................ 12

*In re Lehr Constr.,*
   666 F. App'x 66 (2d Cir. 2016) .............................................................................. 12

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
   306 F. Supp. 2d 482 (S.D.N.Y. 2004) ..................................................................... 9

*Kirschner v. KPMG LLP*,
    15 N.Y.3d 446 (2010) .......................................................................... 10, 12, 13

*Musket Corp. v. PDVSA Petroleo, S.A.*,
    512 F.Supp.2d 155 (S.D.N.Y. 2007) ............................................................. 10

*New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*,
    No. 07–CV–8008, 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008) ............................. 9, 10

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014) ................................................................... 10

*Rosenbach v. Diversified Group, Inc.*,
    85 A.D.3d 569 (1st Dept 2011) ................................................................ 10

*Sazerac Co. v. Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994) ............................................................. 13

*Serenity Alpha, LLC v. Northway Mining, LLC*,
    531 F. Supp. 3d 512 (N.D.N.Y. 2021) .......................................................... 20

*Signal Capital Corp. v. Frank*, 895 F.Supp. 62 (S.D.N.Y. 1995) ................................ 18

*Skyline Steel*, 2015 WL 5076695, at *1 ...................................................... 6, 15

*Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*,
    No. 06-CV-3915, 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008) ............................ 18

*Sussman Educ., Inc. v. Gorenstein*,
    175 A.D.3d 1188 (1st Dept. 2019) ............................................................. 15

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,
    5 Misc. 3d 285, 302, 783 N.Y.S.2d 758, 774 (Sup. Ct. N.Y. Co. 2004) ......................... 19

*Ta Chun Wang v. Chun Wong*,
    163 A.D.2d 300 (2d Dept. 1990) ............................................................... 10

*Wen v. CT & TC Corp.*,
    No. CV 16-4214, 2017 WL 59082, at *2 (E.D.N.Y. Jan. 5, 2017) ................................. 19

**Other Authorities**

C.P.L.R. § 6201 ........................................................................... *passim*

C.P.L.R. § 6212 .......................................................................... 5, 13, 14

Fed. R. Civ. P. 64 ............................................................................ 5

Defendant Katherine Mott ("Mott") and the Defendant Entities[1] submit this memorandum of law in opposition to Plaintiffs' motion for an order of attachment. ECF No. 93.

## I.    INTRODUCTION

The Court should deny plaintiff's motion for three main reasons: *First*, plaintiff cannot establish the second element required for attachment – namely, that it is likely it will succeed on the merits. As detailed below, owing to the knowledge and conduct of bank officials, which is imputed to the plaintiff, all of plaintiff's claims are barred by the doctrine of *in pari delicto*. At the very least, plaintiff is unable to meet this second element owing to sharp issues of disputed fact.

*Second*, plaintiff has elected the provisional remedy of receivership. Plaintiff already obtained a Receiver, who has been actively involved since April 2024. Although plaintiff appears to be unhappy with the Receiver's efforts to "right the ship" by liquidating assets and paying existing obligations, plaintiff's present request, which improperly seeks to attach *all* property of the defendants, would nullify the Receivership. Plaintiff should not be granted a second bite at the "provisional" apple now that it is apparently dissatisfied with the receivership it sought.

And, *third*, plaintiff cannot satisfy C.P.L.R. § 6201 (3), because the $7.5 million in cashier's checks upon which plaintiff has predicated the present motion were for reimbursement of legitimate business expenses or funds advanced to the businesses.

---

[1] The term "Defendant Entities" collectively refers to: The KRM Events LLC, Katherine's on Monroe LLC, The Divinity Estate and Chapel LLC, KNC Elegance LLC d/b/a The Wintergarden By Monroes, 11 Wexford Glen LLC, RCC Monroes LLC, NAF Remodeling, LLC, Monroes at Ridgemont LLC, Crescent Beach At the Lake LLC, and Mott Management LLC.

## II.    LEGAL STANDARD

Rule 64 of the Federal Rules of Civil Procedure provides that the provisional remedy of attachment is available "under the law of the state where the court is located . . . to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64*; see also DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) ("Federal Rule of Civil Procedure 64 permits federal litigants to seek an order of attachment in the manner provided by the law of the state in which the district court sits."). Here, plaintiff seeks attachment under New York law pursuant to C.P.L.R. §§ 6212(a) and 6201 (3), and must demonstrate the following four elements:

> (1) it has stated a claim for money judgment; (2) it has a probability of success on the merits; (3) the defendant, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts" [;] and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to plaintiff.

*DLJ Mortg.*, 594 F. Supp. 2d at 318–19 (quoting CPLR §§ 6201 (3), 6212(a)).

Because pre-judgment attachment is a "harsh and extraordinary remedy," *DLJ Mortg.*, 594 F. Supp. 2d 319, 323, plaintiff bears a "heavy burden" to establish a right to such a remedy, and thus "the four elements set forth in Section 6212(a) are strictly construed in favor of those against whom attachment is sought." *Skyline Steel*, 2015 WL 5076695, at *1-2. In addition, the elements must be demonstrated by "affidavit or written evidence," *id*., and not merely by reference to a party's pleadings. *See DLJ Mortg.*, 594 F. Supp. 2d at  321 (allegations supporting underlying claims "do not address the question . . . of whether [defendant] intends to dispose of his assets to defraud his creditors or thwart the enforcement of a future judgment in plaintiff's favor.").

Furthermore, pre-judgment attachment is subject to the discretion of the court, which "may deny attachment for lack of need even though the plaintiff has established a ground under Section

6201 and satisfied the requirements of Section 6212." *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 221 (2d Cir. 2006).

Moreover, it is "well established in New York" that "the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment." *Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 293-94 (E.D.N.Y. 2014) (quoting *Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995)).

### III.    FACTUAL BACKGROUND

In support of this opposition, Mott and the Defendant Entities rely on the Affidavit of Katherine Mott-Formicola, dated August 12, 2024, which is annexed hereto as Exhibit A (hereinafter the "Mott Affidavit"). According to Mott, she and the Defendant Entities, which she controls, had a banking relationship with plaintiff that lasted from November 2022 through February 2024. *See* Mott Affidavit ¶¶ 13, 20. In 2022, she opened approximately ten business accounts at plaintiff Five Star Bank ("plaintiff" or "FSB"), *id*. ¶ 14, and approximately seven business accounts at Kinecta Federal Credit Union ("Kinecta"). *Id*. ¶ 15.

Between November 2022 and February 2024, Mott developed a social relationship with Alan Ng ("Ng"), the branch manager of FSB's location where she deposited the majority of checks. *Id*. ¶ 20. Early in the banking relationship, Ng told Mott that his ex-wife was an employee of Evans Bank, where Mott had previously banked. *Id*. Ng had learned from his ex-wife that Mott's accounts at Evans Bank were closed, in sum and substance, due to suspicious activity. *Id*. Notwithstanding, in one of their early meetings, Ng told Mott that he knew about her suspicious activity at Evans Bank and instructed her never to deposit checks in excess of $999,999. *Id*. ¶ 21. And, when questions arose concerning activity in the bank accounts, Ng would often tell Mott that he would have to check with the "back office," "Zack," or "Marty" about the issues. *Id*. ¶ 22.

On two separate occasions, Ng showed Mott spreadsheets on his computer listing incoming and outgoing checks from the defendants' various bank accounts at FSB. *Id*. ¶ 23. Ng stated that the check activity on the spreadsheet was throwing red flags on the accounts, and he told Mott that "we," meaning Ng and Mott, needed to make sure they were keeping everyone safe. *Id*. Then, in April 2023, Ng told Mott that plaintiff's back-office was questioning the high-dollar, high-frequency check activity and again showed her a spreadsheet. *Id*. ¶ 24. A week later, Ng told Mott that it was "banking as usual" with regard to her situation. *Id*. As part of banking as usual, on many occasions, bank employees allowed Mott to enter the Brighton branch to conduct banking activity before it was open to the public, including to make deposits and obtain checks. *Id*. ¶ 25.

During the banking relationship, Ng and Mott had multiple conversations regarding Ng's personal financial situation and his plans to purchase a house. *Id.* ¶ 26. At some point, Ng asked to borrow money for the purpose of buying a house. *Id*. Soon after, Mott started providing Ng with yellow envelopes typically containing $3,000 to $5,000 in cash, on a weekly basis, until February 2024. *Id*. The cash was withdrawn from defendants' Kinecta accounts because Ng told Mott to only withdraw the cash from those accounts. *Id.* In total, Ng received approximately $200,000 in cash from Mott. *Id*. ¶ 27. Although Mott initially thought the cash payments to Ng would be treated as a loan, *id*., she now views the cash payments to Ng as an inducement to have him help her without interference from FSB compliance employees or FSB's back-office. *Id*. ¶ 28. In addition to the $200,000 in cash paid to Ng, Mott also paid a Rochester contractor for flooring materials for Ng's residence, a benefit of approximately $7,000. *Id*. ¶ 29.

Ng's conduct benefited both himself and the plaintiff. Specifically, on many occasions, Ng told Mott that her check deposits were making plaintiff's balance sheets look great. *Id*. ¶ 30. And

he also assured defendant Mott that any negative balance resulting from the collapse of banking activity could be turned into a loan from FSB. *Id*. ¶ 31.

Importantly, other employees of the plaintiff with whom Mott interacted also helped her continue banking at FSB. *Id*. ¶ 32. Specifically, while Ng was on vacation during the summer of 2023, Mott was advised by one of plaintiff's tellers that deposited checks were being held, and that as a result, there was a negative balance of $7 million. *Id*. After Mott questioned the teller, the teller called the "back office" and told Mott that it was because FSB had a new policy. *Id*. Mott thereafter called Ng's supervisor, Kurt Dambaugh, and asked him what was going on. *Id*. ¶ 33. The two met later that day, and Kurt Dambaugh told Mott, in sum and substance, that FSB was aware of how much money she had and assured her that checks would not bounce. *Id*. Dambaugh winked at Mott when he told her this. *Id*. He then told her that her accounts would be monitored to make sure all of her deposits were "pushed through." *Id*.

## IV.    ARGUMENT

### A.    Plaintiff cannot demonstrate a likelihood of success on the merits.

Owing to its own conduct and knowledge, plaintiff Five Star Bank cannot demonstrate a likelihood of success on the merits sufficient to sustain the drastic remedy of prejudgment attachment. To show a probability of success on the merits, the second element required under New York law to obtain attachment, the moving party must demonstrate by affidavit that it is more likely than not that it will succeed on its claims. *New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc.*, No. 07–CV–8008, 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008). While "all legitimate inferences should be drawn in favor of the party seeking attachment," *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004), the moving party nevertheless must make an evidentiary showing of "proof

stronger than that required to establish a prima facie case" in order to satisfy this requirement. *New York Dist. Council of Carpenters Pension Fund*, 2008 WL 2115225, at *1; *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007). As detailed below, plaintiff knew about and even benefited from the very conduct underlying its claims in this lawsuit, and, as a result, all of plaintiff's claims are barred by the doctrine of *in pari delicto*. Accordingly, plaintiff has not, nor can it meet its heavy burden of establishing a probability of success on the merits.

### i.    Plaintiff's claims are barred by its own conduct and knowledge.

"The doctrine of *in pari delicto* mandates that the courts will not intercede to resolve a dispute between two wrongdoers," *Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010), and thus "bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss." *Rosenbach v. Diversified Group, Inc.*, 85 A.D.3d 569, 570 (1st Dept 2011); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 160 (2d Cir. 2014) ("The doctrine of *in pari delicto*, a term meaning 'of equal fault,' reflects the principle that a plaintiff who has participated in wrongdoing equally with another person may not recover from that other person damages resulting from the wrongdoing.").[2]

In addition, the New York Court of Appeals has explained that the doctrine "serves important public policy purposes," including that "denying judicial relief to an admitted wrongdoer deters illegality," and avoiding "entangling courts in disputes between wrongdoers." *Kirschner*, 15 N.Y.3d at 464; *see also Ta Chun Wang v. Chun Wong*, 163 A.D.2d 300, 302 (2d Dept 1990)

---

[2] The doctrine is a defense against all of the claims in this action. *See Globaltex Grp. Ltd. v. Trends Sportswear Ltd.*, No. 09-CV-0235, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21, 2010) ("In pari delicto is applicable to claims of breach of contract, unjust enrichment, conversion, rescission, or damages in tort."); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163 (2d Cir. 2014) (RICO).

("the plaintiff's unclean hands in participating in a course of conduct of deception and deceit is an effective bar to all of the causes of action in the complaint . . . .").

As detailed above, the doctrine is particularly applicable in this case, where the evidence – despite being at the pre-answer phase of litigation – confirms that plaintiff knew about, encouraged, and even benefited from the very conduct underlying its claims in this lawsuit. As detailed in the Mott Affidavit, "several bank officials were fully aware of all of the activity in [her] many bank accounts. These bank officials, who knew all about [her] banking activity, included Alan Ng, Kurt Dambaugh, 'Zach,' 'Marty,' and unnamed employes and/or executives in the 'back office.'" Mott Affidavit ¶ 34. More specifically, the following knowledge and conduct is critical to understand the extent of imputation in this matter:

- At the beginning of the relationship, Alan Ng was specifically advised of defendants' suspicious conduct at Evans Bank, and instructed Mott never to deposit checks in excess of $999,999 (Mott Affidavit ¶¶ 20, 21);

- Whenever questions arose concerning activity in defendants' accounts, Ng would check with the "back office," "Zack," or "Marty" about the issues (*Id.* ¶ 22);

- Early in 2023, Alan Ng showed Mott a spreadsheet listed incoming and outgoing checks because the check activity was throwing red flags on the accounts; and Alan Ng told Mott that "we," meaning the two of them, needed to make sure they were keeping everyone safe (*Id.* ¶ 23);

- In April of 2023, Alan Ng showed Mott another spreadsheet owing to plaintiff's back office questioning the high-dollar, high-frequency check activity; a week later it was "banking as usual" (*Id.* ¶ 24);

- On many occasions, plaintiff's employees allowed Mott to enter the Brighton branch to conduct banking activity before it was open to the public (*Id.* ¶ 25);

- Mott paid Alan Ng approximately $200,000 in cash and $7,000 in goods and services as an inducement; the cash paid to Alan Ng was withdrawn from defendants' Kinecta accounts because Alan Ng instructed Mott to only withdraw the cash to pay him from the Kinecta accounts (*Id.* ¶¶ 26-29);

- On multiple occasions, Alan Ng told Mott, in sum and substance, that the check deposits were making plaintiff's balance sheets look great (*Id.* ¶ 30);

- On multiple occasions, Alan Ng told Mott that any negative balance resulting from the collapse of the banking activity could be turned into a loan from FSB (*Id.* ¶ 31); and

- Other employees of the plaintiff also appeared to help Mott continue banking with the plaintiff, including supervisor Kurt Dambaugh, who assured Mott that no checks would bounce and that her accounts would be monitored to make sure all her deposits were "pushed through" (*Id.* ¶¶ 32-33).

These facts are undisputed, and the knowledge and conduct of Alan Ng, Kurt Dambaugh, "Zack," "Marty," and others in the "back office," is imputed to plaintiff for purposes of determining the applicability of the *in pari delicto* defense. "Traditional agency principles play an important role in an in pari delicto analysis . . . namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their [principals]." *In re Lehr Constr. Corp.*, 551 B.R. 732, 738 (S.D.N.Y. 2016) (citing *Kirschner*, 15 N.Y.3d at 465). Acts of an agent are presumed to be imputed to its principal "even where the agent acts less than admirably, exhibits poor business judgment, *or commits fraud.*" *Id.* (emphasis added). "Like a natural person, a corporation must bear the consequences when it commits fraud." *Id.*; *see also In re Lehr Constr.*, 666 F. App'x 66, 68 (2d Cir. 2016) ("'[A]ll corporate acts—including fraudulent ones—are subject to the presumption of imputation.'") (quoting *Kirschner*, 15 N.Y.3d at 465).

Accordingly, plaintiff – through the knowledge and conduct of its agents – was well aware of, encouraged, and benefited from defendants' banking relationship with the plaintiff, such that plaintiff's claims are barred by the doctrine of *in pari delicto*. And, even if plaintiff attempts to characterize any of the conduct as fraudulent, plaintiff was a participant in and aware of that conduct. Indeed, notwithstanding plaintiff's "questions" and "red flags" concerning defendants' banking activities – not to mention its creation of spreadsheets shown to Mott – plaintiff ensured

"banking as usual," and its agents monitored defendants' accounts to make sure no checks bounced and that all deposits were "pushed through." Importantly, Alan Ng represented on multiple occasions that defendants' banking relationship was helping plaintiff's balance sheets "look great." Of course, in addition to acting on behalf of the bank, Alan Ng also accepted approximately $200,000 in cash payments out of the Kinecta accounts (pursuant to his own instructions). Based on these facts, plaintiff cannot establish a likelihood of success on the merits because its claims are barred. *See Kirschner*, 15 N.Y.3d at 464 ("[N]o court should be required to serve as paymaster of the wages of crime, or referee between thieves. Therefore, the law will not extend its aid to either of the parties or listen to their complaints against each other, but will leave them where their own acts have placed them.").

Plaintiff is also unable to establish a likelihood of success on the merits of its fraud claims, because plaintiff cannot establish the essential element of reliance in light of the knowledge and conduct imputed to it by its various agents. *See Sazerac Co. v. Falk*, 861 F. Supp. 253, 260 (S.D.N.Y. 1994) ("In order to state a claim in fraud, [plaintiff] 'must not only reasonably believe that the representation is true, but he must also be justified in taking action in reliance thereon.'"); *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 997, 1009 (2d Cir. 1988) (reversing a finding of fraud on reliance grounds because plaintiff did not believe defendant's misrepresentations).

### ii.    *Plaintiff's motion is not supported by competent evidence that refutes any of the evidence in the Mott Affidavit.*

In contrast to the undisputed sworn evidence in the Mott Affidavit, plaintiff offers no evidence from anyone with personal knowledge of, nor involvement in the parties' banking relationship between November 2022 to March 2024. There is no sworn statement from Alan Ng,

Kurt Dambaugh, "Zack," "Marty," any bank teller who worked at the Brighton branch where the bulk of deposits were made, nor any other individual in the "back office." Rather, plaintiff relies on: two sworn statements from employees who conducted an after-the-fact "transactional review" of bank records; copies of cashier's checks; "illustrative" bank statements; and, allegations in the Amended Complaint.[3] On this record, plaintiff's showing is insufficient to sustain its burden of establishing a likelihood of success on the merits, particularly in light of Mott's testimony.

More specifically, plaintiff relies on two sworn statements from individuals who participated – not in the actual banking relationship – but in the after-the-fact investigation based on a review of bank records. *First*, plaintiff relies on the Declaration of Michael Jozwiak, dated March 29, 2024, which was filed in support of plaintiff's motion for receiver. *See* ECF No. 93-11 at 2-3 (citing ECF No. 31). However, Mr. Jozwiak never states that he has any personal knowledge of the banking relationship. To the contrary, Mr. Jozwiak claims that he participated in "the investigation into this elaborate check-kiting scheme" and "conducted a detailed review and analysis of [defendants'] accounts and transaction history at Five Star . . . ." ECF No. 31 ¶ 3. Mr. Jozwiak's after-the-fact "transactional review" does not refute anything in the Mott Affidavit and, thus, does not help plaintiff establish a likelihood of success on the merits.

*Second*, plaintiff relies on the Affidavit of Lois Ellis, dated August 2, 2024, which was filed in support of the pending motion. *See* ECF No. 93-4. Like the other sworn statement on which plaintiff relies, however, Lois Ellis does not have any personal knowledge concerning conduct

---

[3] Plaintiff also relies on the Declaration of David Burch, Esq., dated August 12, 2024, which identifies the existence of a lawsuit seeking to foreclose a mechanic's lien against one of defendants' properties. *See* ECF Nos. 93-1, 93-2, 93-3. However, the existence of a third-party lawsuit does not concern plaintiff's banking relationship with the defendants, nor address what happened between November 2022 and February 2024. It offers no help with respect to establishing this second element under C.P.L.R. 6212(a).

occurring between November 2022 and March 2024. Rather, Lois Ellis claims to have participated in "the investigation into this elaborate check-kiting scheme" and "conducted a detailed review of [defendants'] accounts and transaction history at Five Star . . . ." ECF No. 93-4 ¶ 3. The remainder of the Ellis Affidavit attaches six "selected account statements" for "illustrative purposes," including monthly bank statements for March 2023, April 2023, May 2023, July 2023, August 2023, and September 2023. *See* ECF No. 93-4 to 93-10.

Plaintiff's motion also relies on the allegations in the Amended Complaint and the copies of cashier's checks annexed thereto. *See*, *e.g.*, ECF No. 93-11 (citing ECF No. 51 and attachments).[4] However, none of plaintiff's purported evidence contests Mott's testimony, which confirms that plaintiff was aware of, encouraged, and benefited from all of the banking activity at issue in the Amended Complaint. *See*, *e.g.*, *Skyline Steel*, 2015 WL 5076695, at *3 ("Skyline did file an attorney affidavit in support of its motion . . . , but the affidavit is limited to identifying PilePro's assets and steps PilePro has allegedly taken to relocate them; there is no affidavit on personal knowledge or other competent written evidence demonstrating a likelihood of success on the merits of any of the claims remaining in the case."). Notably, even if plaintiff had filed an affidavit of someone with personal knowledge, plaintiff would be unable to meet this second element owing to sharp issues of fact in the record. *See Sussman Educ., Inc. v. Gorenstein*, 175 A.D.3d 1188, 1189-90 (1st Dept. 2019) (finding that plaintiff had "fail[ed] to make a clear showing of a likelihood of success on the merits" because "the conflicting affidavits raised sharp issues of fact").

---

[4] Plaintiff also relies on the Court's analysis in its April 4, 2024, Decision and Order appointing a receiver. *See* ECF 93-11 at 3, 8, 9, 10, 13, and 15 (citing ECF No. 36). However, the Court's previous decision does not obviate plaintiff's obligation to establish all elements under C.P.L.R. 6212(a) "by affidavit or other written evidence." Nor, for that matter, was the Court able to consider in its analysis the evidence now presented in the Mott Affidavit.

In light of defendant Mott's sworn statement, and the lack of competent evidence in support of the motion, plaintiff is unable to establish "by affidavit and such other written evidence" that it has a probability of success on the merits. Rather, all of its claims are barred by the doctrine of *in pari delicto*.

**B.      Plaintiff already elected the provisional remedy of a Receiver such that the Court should deny plaintiff's motion.**

Second, the Court should deny the motion because plaintiff already sought and obtained the provisional remedy of a Receiver, who has been controlling and managing the Defendant Entities' assets since he was appointed by the Court in April 2024. ECF No. 36. Now, unhappy with the Receiver's efforts to "right the ship," which efforts have included selling certain assets and paying other creditors, plaintiff seeks a different provisional remedy, suggesting that attachment "is necessary to ensure that any judgment awarded in favor of Plaintiff is not worthless—an eventuality that becomes increasingly more likely as each day passes without the return of any of these wrongfully-obtained funds and the continued emergence of the Defendants' numerous creditors." ECF No. 93-11 at 8-9.

Six months after petitioning the Court for a Receiver, and after the Receiver has incurred in excess of $125,000[5] in fees and costs controlling and managing the Defendant Entities' assets (to be paid by the Defendant Entities), plaintiff is now trying to prevent the Receiver from doing the job for which he was appointed by the Court. In so doing, plaintiff seeks to gain priority of payment over other creditors, this despite its own bad conduct as detailed above, not to mention the lack of any judgment. However, the fact that the Receiver has liquidated certain assets and

---

[5] *See* ECF Nos. 64, 84, 85, 95, 96.

used proceeds to pay pre-existing debts owed to other creditors – including past-due payroll and sales tax obligations – is not a basis for attachment. *See Dafeng*, 54 F. Supp. 3d at 293-94.

Paradoxically, plaintiff relies on the Receiver's Monthly Activity Report of June 4, 2024, in support of its argument that any judgment will be worthless, relying on the Receiver's observations that the Defendant Entities "had not generated sufficient cash flow to meet current obligations" and that his job "consisted of 'daily financial triage.'" ECF No. 93-11 at 9 (citing ECF No. 61 at ¶¶ 10, 24). But plaintiff ignores that, in this same report, the Receiver addressed the fact that plaintiff refused to return to the Receiver at least $284,000 in funds generated by ongoing business operations *after* defendants' accounts were frozen. ECF No. 61 ¶¶ 13, 14. Plaintiff should be estopped from relying on cash flow issues to which it has contributed.

In sum, the fact that a Court-appointed Receiver controls and is managing all of the Defendant Entities' assets belies any basis for attachment, because attachment of defendants' property would merely hinder the Receiver's ability to do his job.

### C.    The motion papers do not meet plaintiff's heavy burden of establishing a ground for attachment pursuant to C.P.L.R. § 6201 (3)

As it concerns the third element required to obtain an attachment, plaintiff's motion is premised solely on the $7.5 million in cashier's checks that were received by the Asset Holder Defendants. *See, e.g.*, ECF No. 93-11 at 6 ("As such, there is presently no order that will ensure that the substantial and wrongfully-obtained funds dissipated through the Asset Holder Defendants . . . ."); and at 17 ("By using the Asset Holder Defendants as conduits for withdrawal and secretion or dissipation of the proceeds of the Corrupt Enterprise, the Defendants ensured that Plaintiff

would not be able to locate or recover these ill-gotten gains.").[6] However, plaintiff is unable to meet its heavy burden of establishing that the Asset Holder Defendants, "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, [have] assigned, disposed of, encumbered, or secreted property, or removed it from the state or [are] about to do any of these acts." C.P.L.R. § 6201 (3).

Under C.P.L.R. § 6201 (3), plaintiff must prove two elements: (1) that the defendant has assigned, disposed of, encumbered or secreted its property or removed it from the state, or is about to do any of these acts, and (2) that defendant has acted or will act with the intent to defraud his creditors or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor. *See Encore Credit Corp. v. LaMattina*, No. 05-CV-5442, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006); *see also* N.Y. C.P.L.R. § 6201 (3). Because "[f]raud is not lightly inferred," plaintiff's "moving papers must contain evidentiary facts as opposed to conclusions proving the fraud." *Id.*; *see also Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331 (2d Cir. 1983) ("under section 6201 (3) 'it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud. Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud.'") (citation omitted)). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc*., No. 06-CV-3915, 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008). Rather, "[i]t must appear that such fraudulent intent really exists in the defendant's mind." *Encore Credit Corp.*, 2006 WL 148909, at *3; *see also Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*,

---

[6] Plaintiff's motion does not identify any transfer or transaction for which it seeks attachment apart from the $7.5 million cashier's checks. *See Signal Capital Corp. v. Frank*, 895 F.Supp. 62, 64-65 (S.D.N.Y. 1995) (C.P.L.R. § 6201 (3) not satisfied where plaintiff "points to no actual or pending transfers or dispositions of assets that would frustrate a judgment in favor of [plaintiff] . . . but asks that the danger of this occurring be presumed from" past misconduct).

5 Misc. 3d 285, 302, 783 N.Y.S.2d 758, 774 (Sup. Ct. N.Y. Co. 2004) (rejecting argument based on contention "that there is 'every reason to believe' that defendants will send all assets overseas," and holding that "[s]uch vague and conclusory allegations, without evidentiary facts indicating a fraudulent concealment of assets, are insufficient for a prejudgment attachment.").

In addition, even where a movant has presented evidence of actual intent to defraud, "[t]he burden then shifts to the defendant to explain the actions or to rebut the plaintiff's allegations." *Dafeng*, 54 F. Supp. 3d at 295. Courts have recognized that "[a] writ of attachment is properly denied where defendants have proffered an arguable legitimate reason for transferring [assets]." *See, e.g., Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC*, No. 16CV3181MKBCLP, 2018 WL 1402239, at \*6 (E.D.N.Y. Mar. 4, 2018) (internal quotations omitted); *Ames v. Clifford,* 863 F. Supp. 175, 178-79 (S.D.N.Y. 1994) (observing that party "provided reasonable explanations" for all purported transfers at issue); *see also Wen v. CT & TC Corp.*, No. CV 16-4214, 2017 WL 59082, at \*2 (E.D.N.Y. Jan. 5, 2017) (denying motion for order of attachment where plaintiffs failed to provide evidence of defendants' intent to defraud in connection with sale of restaurant, and, to the contrary, defendant "put forth evidence of non-fraudulent intent that pre-date[d] the filing of the complaint" and "further provided unchallenged testimony that personal health considerations and business concerns motivated his decision to sell").

Here, defendant Mott and the Defendant Entities incorporate by reference the opposition papers filed by the Asset Holder Defendants, which, on information and belief, confirm that the cashier's checks paid to the Asset Holder Defendants were to reimburse the payment of legitimate business expenses or funds advanced to the businesses. Because plaintiff has offered no evidence to contest the Asset Holder Defendants' evidence, plaintiff has failed to meet its burden of

establishing any fraudulent intent on the part of the Asset Holder Defendants, who were the recipients of the checks upon which the motion for attachment is based. *See Serenity Alpha, LLC v. Northway Mining, LLC*, 531 F. Supp. 3d 512, 519-20 (N.D.N.Y. 2021) ("A review of the record establishes that plaintiffs have failed to make any sort of meaningful evidentiary showing that defendants have transferred money or assets in a conscious attempt to avoid judgment. Rather than support this request with specific evidence, plaintiffs have instead alleged a number of supposedly suspicious transfers.").

Apart from the two sworn statements and bank records discussed above, the bulk of plaintiff's argument is based on its allegations in the Amended Complaint, all of which is insufficient, because "[t]he alleged merits of the underlying action may not be used to mitigate the distinct and strict burden of proving the grounds for the prejudgment attachment." *Brezenoff v. Vasquez*, 433 N.Y.S.2d 553 (Civ. Ct., N.Y. County 1980); *see also DLJ Mortg.*, 594 F. Supp. 2d at 321 ("Whatever the merits of DLJ's assertions concerning Thomas Kontogiannis's leading role in the mortgage fraud scheme that forms the basis of its action—a question the Court does not now reach—those allegations do not address the question, equally pertinent to the present inquiry, of whether he intends to dispose of his assets to defraud his creditors or thwart the enforcement of a future judgment in plaintiff's favor."); *Encore Credit Corp.*, 2006 WL 148909, at *4 ("proof that a defendant committed the underlying unlawful act is not, by itself, sufficient to establish" the third element for attachment) (citation omitted). Accordingly, plaintiff has not established the first component of C.P.L.R. § 6201 (3), which requires that plaintiff establish by competent evidence that a defendant has assigned, disposed of, encumbered, or secreted property, or removed it from the state, or is about to do any of these acts.

**V.      CONCLUSION.**

Accordingly, defendant Mott and the Defendant Entities respectfully request that the Court

deny plaintiff's motion in all respects and grant such other relief as may be just and proper.


Dated: September 13, 2024
            Rochester, NY

<div style="margin-left: 50%;">

_s/ David Rothenberg_

David Rothenberg, Esq.
Michael Rothenberg, Esq.
ROTHENBERG LAW
_Attorneys for Defendant Katherine Mott-_
   _Formicola and all Entity Defendants_
45 Exchange Boulevard, Suite 800
Rochester, New York 14614
Tel:  (585) 232-1946
Fax:  (585) 232-4746
Email:  david@rothenberglawyers.com
Email:  michael@rothenberglawyers.com

</div>

To:    David G. Burch, Jr., Esq.
       Sarah A. O'Brien, Esq.
       Benjamin Zakarin, Esq.
       BARCLAY DAMON LLP
       *Attorneys for Plaintiff*
       125 East Jefferson Street
       Syracuse, New York 13202-2078


       Matthew R. Lembke, Esq.
       CERULLI MASSARE & LEMBKE
       *Attorney for Robert Harris*
       45 Exchange Blvd., Suite 925
       Rochester, NY 14614


       Mark A. Foti, Esq.
       THE FOTI LAW FIRM, PC
       *Attorneys for Defendant Kristina Bourne*
       16 W. Main St., Suite 100
       Rochester, NY  14614


       John F. Speranza, Esq.
       *Attorney for Defendant Taylor Pagano*
       28 East Main Street, Suite 1800
       Rochester, NY 14614


       Jeffrey F. Allen, Esq.
       BOND SCHOENECK & KING, PLLC
       *Attorneys for Defendant Taylor Pagano*
       350 Linden Oaks
       Rochester, NY 14625


       David C. Pilato , Esq.
       Michael T. DiPrima, Esq. (of counsel)
       PILATO LAW, PLLC
       *Attorneys for Defendant Timothy LaRocca*
       30 West Broad Street, Suite 100
       Rochester, NY 14614