**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FIVE STAR BANK,

*Plaintiff*,

v.

KRM EVENTS, LLC; KATHERINE'S ON
MONROE, LLC; THE DIVINITY ESTATE
AND CHAPEL, LLC; KNC ELEGANCE,
LLC; and KATHERINE MOTT,
INDIVIDUALLY AND AS MANAGER OF
KRM EVENTS, LLC; KATHERINE'S ON
MONROE, LLC; THE DIVINITY ESTATE
AND CHAPEL, LLC; KNC ELEGANCE,
LLC; KRISTINA BOURNE; TAYLOR
PAGANO; and TIMOTHY LAROCCA,

*Defendants*.

CASE NO. 6:24-cv-06153

CIVIL ACTION

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION FOR AN ORDER OF ATTACHMENT AS TO KATHERINE MOTT AND
THE ENTITY DEFENDANTS**

**BARCLAY DAMON LLP**

David G. Burch, Jr., Esq.
Sarah A. O'Brien, Esq.
Benjamin R. Zakarin, Esq.
125 East Jefferson Street
Syracuse, NY 13202
(315) 425-2700
dburch@barclaydamon.com
bzakarin@barclaydamon.com
*Counsel for Five Star Bank*

<u>TABLE OF CONTENTS</u>

**INTRODUCTION**.................................................................................................................... 1

**ARGUMENT** ........................................................................................................................... 2

    **A.**   **No Knowledge of Defendants' Fraud Can Be Imputed To Plaintiff** ........................ 2

       1.   The Adverse Interest Exception to *In Pari Delicto* Applies ........................................... 3

       2.   The Mott Affidavit Merely Confirms Mott's Fraud ...................................................... 5

    **B.**   **The Appointment of a Corporate Receiver Does Not Moot the Motion** ...................... 7

    **C.**   **Plaintiff Met its Burden Showing Intent to Defraud Under CPLR 6201(3)** ................ 7

       1.   Plaintiff Established Fraudulent Intent as to Mott and the Entity Defendants .............. 8

       2.   The Asset Holder Defendants' Oppositions Do Not Contradict Plaintiff ..................... 9

**CONCLUSION** ...................................................................................................................... 10

## INTRODUCTION

Confronted with grave accusations she unlawfully obtained nearly $20 million through a long-running bank fraud scheme using companies she admits to controlling, defendant Katherine Mott ("Mott") has not denied the substance of the charges against her.  Rather, in opposition to Plaintiff's motion to attach her assets and the assets of the various Entity Defendants (collectively with Mott, the "Mott Defendants") she used to perpetrate her scheme, Mott now insists that she cannot be held accountable for her acknowledged misconduct because she alleges her co-conspirators include a Five Star Bank employee who she alleges she bribed to interfere with the Bank's compliance and back-office operations.  Of course, Mott offers nothing but her own word to support those accusations and the Bank is not aware of any written communications, contemporaneous notes, videos, photographs, or anything else to support her statements.

Astonishingly, the Mott Defendants argue that because Mott claims, without substantiation, that she allegedly paid a Bank employee some $200,000 to help her swindle the Bank out of $20 million, Plaintiff cannot succeed on its claim for fraud based on the doctrine of *in pari delicto*. However, Defendants' arguments are based on a distorted and incomplete understanding of the *in pari delicto* doctrine and ignore that it ***does not apply*** in situations where an employee of an entity—but not the entity as a whole—was allegedly involved in the fraud under the "adverse interest exception" to the doctrine.   Because the doctrine of *in pari delicto* does not exonerate Mott or shelter her from liability for her fraudulent misconduct, the Mott Defendants' opposition papers, including Mott's sworn affidavit, amount to nothing more than additional evidence and admissions of Mott's extensive and knowing fraudulent misconduct.

To date, none of the funds that Mott wrongfully converted in the February to March timeframe referenced in our Amended Complaint have been re-paid, and an attachment is required to protect the Plaintiff's rights and interests.

1

## ARGUMENT

### A. No Knowledge of Defendants' Fraud Can Be Imputed To Plaintiff

The *in pari delicto* or "Unclean Hands" defense, mandates that courts not intercede to resolve a dispute between two wrongdoers and further provides that an agent's actions may be imputed to its principal under certain circumstances because an agent is presumed to disclose all material facts about the subject of his agency. *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (N.Y. 1985); see also *Caplash v. Nielsen*, 294 F. Supp. 3d 123, 134 (W.D.N.Y. 2018) (""[A]pplication of the doctrine requires that the plaintiff be 'an active, voluntary participant in the unlawful activity that is the subject of the suit.'""). As discussed below, there are important exceptions to this doctrine, including the "adverse interest exception" that is plainly applicable to these facts.

Defendant Mott's own damning admissions and allegations in her opposition affidavit make clear that she has no defense to the conduct the Bank alleges in its Amended Complaint. To the extent she actually conspired with any bank employee to continue her fraudulent banking activity at Five Star Bank, she is admitting her liability, not exonerating herself. Moreover, even if true, the alleged misconduct *cannot* be imputed to the Bank.

Ms. Mott has alleged, for the first time and without corroboration, that Alan Ng, a former Bank employee who served as a branch manager of three branches, was aware of her history of financial misconduct (ECF 106-1 at ¶ 20), that this former employee showed her evidence that her ongoing misconduct was raising suspicions at the bank (*Id.* at ¶¶ 23-24), and that Mott provided this employee with weekly cash payments totaling about $200,000 that she views as "an inducement to have ***him help me without interference from FSB compliance employees or FSB's back-office***." (*Id.* at ¶ 28) (emphasis added).  Mott further alleges that additional, unidentified

Bank employees "were fully aware" of her bank activity, despite not directly interacting with any of those employees or even fully identifying them. (*Id.* at ¶ 34).  As a result, the Mott Defendants outrageously and incorrectly contend that the Bank "knew about, encouraged, and even benefited from the very conduct underlying its claims in this lawsuit"—conduct that has directly caused a loss of $18.9 million to the Bank—and under the doctrine of *in pari delicto*, the Bank cannot demonstrate a likelihood of success on the merits as to its claim for fraud against them.  This is a gross distortion of the actual facts and the legal doctrine the Mott Defendants seek to apply.

1.  <u>The Adverse Interest Exception to *In Pari Delicto* Applies</u>

Even assuming the truth of Mott's allegations, the Defendants fail to address the clearly-applicable "adverse interest exception" to the *in pari delicto* doctrine. Under that exception, the presumption of an agent's disclosure to its principal is defeated when "an ***agent is engaged in a scheme to defraud his principal, either for his own benefit for that of a third party*** . . . because he cannot be presumed to have disclosed that which would expose and defeat his fraudulent purpose." *Benedict v. Arnoux*, 154 N.Y. 715, 279 (N.Y. 1898) (emphasis added).  Thus, where an agent has "totally abandoned his principal's interests and [is] acting entirely for his own or another's purposes," knowledge of that fraudulent scheme is ***not*** imputed to a principal as a matter of law.  *Center*, 66 N.Y.2d at 784; *see also RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*, 2022 U.S. Dist. LEXIS 4638, *5 (S.D.N.Y. Jan 7, 2022) (noting the adverse interest doctrine "precludes imputation of an agent's knowledge or actions to a principal when the agent's actions were wholly adverse to the principal.").  Accordingly, *in pari delicto* is simply inapplicable in cases where the fraud "is committed *against* a corporation rather than on its behalf."  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 466-67. (N.Y. 2010).

As alleged by Mott, this case fits directly within the "adverse interest exception" and any

3

purported knowledge or involvement in Mott's fraudulent scheme by an allegedly-complicit employee **cannot** be imputed to the Bank. Mott alleges she paid this former employee about $200,000.00 in cash "as an inducement to have him help me without interference from FSB compliance employees or FSB's back-office." ECF No. 106-1 at ¶ 28. The conduct she attributes to this former employee—including preparing a spreadsheet of flagged transactions and advising her how to avoid detection—was in furtherance of Mott's fraud against the Bank and thus against the Bank's interests. ECF 106 at 7. According to Mott's new allegations, Ng was acting on behalf, and in furtherance of, his own interests or Mott's interest, but certainly **not** on behalf of the Bank. Plainly, allegations that a Bank employee accepted $200,000 in under-the-table cash bribes in exchange for facilitating a massive, open-ended fraud constitutes an employee "'totally abandon[ing] his principal's interests and [] acting *entirely* for his own or another's purposes,' not the corporation's." *Kirschner*, 15 N.Y.3d at 468 (*quoting Center*, 66 N.Y.2d at 784-85).

The unsupported double hearsay Mott offers to suggest that the Bank "benefited" from this misconduct because her fraudulent transactions made its "balance sheets look great," is of no evidentiary value and should be rejected out of hand. Moreover, Mott's claim that Ng stated her fraudulent conduct was making FSB's "balance sheets look great" does not ring true in the face of an analysis of the Bank's actual financial position. As set forth in the relevant public 10-K filings[1], from 2022 through 2023, the Bank and its affiliates ("Company") reported growth in the balance of deposits totaling $283,488,000 (rising from $4,929,424,000 to $5,212,912,000), or a 5.75% year-over-year increase. Mott's balance on deposit grew approximately $4,400,000 over the same

---

[1] The Bank requests the Court take judicial notice of its publicly available 10-K filings, located at including its March 13, 2024 10-K, located at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/862831/000095017024030754/fisi-20231231.htm. *See, e.g., IKB Intl., S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 303 (noting official documents filed with the SEC are subject to judicial notice).

time period.  Excluding the Mott deposits, total deposits would still have grown $279,100,000, or 5.66%.  Moreover, Mott's fraudulent deposits showing on account at the end of the relationship in the approximate amount of $18,900,000.00 accounted for less than 0.36% of the Company's total amounts on deposit. To be sure, Five Star is a $6 billion financial institution that serves thousands of clients throughout the greater Western New York, Central New York, Finger Lakes and Southern Tier regions.[2]  Thus, it is clear that Mott had, at most, a *de minimis* impact on the Bank's balance sheets.

Finally, Mott's allegation that the Bank employee she allegedly bribed assured her that any "negative balance resulting from the collapse of banking activity could be turned into a loan from FSB," is contrary to the binding Deposit Account Agreement between the parties. *See* ECF 51-2, § G.  It is simply not credible that a bank employee would provide assurance contrary to the binding agreement or that Mott somehow relied on such a statement—which in her version of events came from an employee she bribed—and that the Bank should be foreclosed from recovery as a result.

Because it "conveniently ignor[es] the barrage of case-law declining imputation when the acts of fraud are made *against* the corporation," the Mott Defendants' *in pari delicto* argument does not withstand scrutiny and Mott's uncorroborated allegations fail to undermine Plaintiff's high probability of succeeding on the merits on its fraud claim against them. *RocketFuel Blockchain Co.*, 2022 U.S. Dist. LEXIS 4638 at *6. To the contrary, Mott's Affidavit concedes the merits of the serious claims lodged against her.

## 2. The Mott Affidavit Merely Confirms Mott's Fraud

---

[2] *See* 2023 Community Report for Five Star Bank, available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjYyfHr oeOIAxWXC3kGHUA0IdwQFnoECCQQAQ&url=https%3A%2F%2Fwww.five-starbank.com%2Fabout%2Fcommunity-report&usg=AOvVaw0VQec-2iXGbp48YxYBXEkG&opi=89978449.

The Mott Defendants suggest both that a lack of affidavit from anyone with "personal knowledge of . . . the parties' banking relationship," means that Plaintiff cannot dispute their newly-raised allegations and that the Mott Affidavit somehow establishes that Plaintiff "was aware of, encouraged, and benefited from all of the banking activity at issue in the Amended Complaint," thus vindicating them.  ECF No. 106 at 15.  This is simply wrong.

First, as set forth above, the fact that Mott now asserts she recruited an allegedly rogue Bank employee that completely abandoned the Bank's interests and acted solely for his and Mott's benefit to help perpetuate her fraud *does not result in that employee's knowledge being imputed to the Bank* under the "adverse interest exception" to the *in pari delicto* doctrine.

Second, Mott's argument that Plaintiff's lack of affidavit directly addressing Mott's banking relationship with Plaintiff defeats its allegations is similarly without merit.  The Bank's knowledge of the Defendants' fraudulent scheme is set forth in the Affidavit of the Bank's Chief Commercial Bank Officer, Kevin Quinn, who stated that Mott's "check-kiting scheme was just recently uncovered by FSB. . ." ECF No. 3-1 at ¶ 5. Plaintiff has satisfied the requirements of CPLR 6212(a), which requires proof "by affidavit *and such other written evidence as may be submitted*," because Plaintiff's submissions, including hundreds of pages in documentary evidence, establish each of the required elements of CPLR 6212 and 6201(3).  (emphasis added).

With regard to Mott's transactions with the Bank, nothing she alleges or submits changes the numerous instances of check-kiting identified in the Jozwiak Affidavit (ECF No. 31), nor does it change the fact that the Mott Defendants never had funds sufficient to cover the checks being written against their accounts at FSB.  (ECF No. 93-11 at 7).  These fraudulent transactions are also corroborated by the account statements submitted in connection with the Affidavit of Lois Ellis, including through the substantial difference in the accounts' "ledger" balance and "collected"

balance reflected therein.  *See* ECF No. 93-11 at 15-16; ECF No. 93-9 at 1.  Because Mott cannot impute wrongful conduct by an alleged rogue employee operating completely against his employer's interests, the only effect of Mott's affidavit is to more better elucidate the gravity and breadth of her own misconduct.

**B.  <u>The Appointment of a Corporate Receiver Does Not Moot the Motion</u>**

The Mott Defendants wrongly claim that appointment of a receiver under Fed. R. Civ. P. 66 forecloses attachment under Fed. R. Civ. P. 64.

Defendants baselessly and incorrectly contend that the Court's earlier appointment of a receiver over the Entity Defendants operates as an "election of remedies" that precludes Plaintiff from seeking the attachment of the Mott Defendants' assets.  Nothing in Fed. R. Civ. P. 64, which governs this motion, nor Fed. R. Civ. P. 66, which governs the appointment of receivers, limits a party from seeking relief under any other applicable Rule.  Nor do the Mott Defendants offer any argument or authority supporting their argument that by appointing a receiver, this Court is not permitted to further exercise its equitable jurisdiction over them.

Further, the Mott Defendants offer *no* defense whatsoever as to why Defendant Mott's assets should not be attached.  *See* ECF No. 106 at 16-17 (objecting only to attachment of the Entity Defendants' assets).  This may well be because the Order appointing the receiver only applies to the Entity Defendants, not to Mott individually. But, in any event, Defendant Mott's failure to oppose Plaintiff's arguments for attaching her assets means she has conceded this point. *See e.g., Arista Records, LLC v. Tkach,* 122 F. Supp. 3d 32, 38-39 (S.D.N.Y. 2015) (noting that where a party fails to oppose a particular argument, it is deemed waived).

**C.  <u>Plaintiff Met its Burden Showing Intent to Defraud Under CPLR 6201(3)</u>[3]**

---

[3] Pursuant to Fed. R. Civ. P. 64, New York state law governs this motion for orders of attachment.

Contrary to the Mott Defendants' arguments, Plaintiff has more than adequately met its burden for each element under CPLR 6201(3). As set forth below, their arguments ignore well-settled law and undisputed facts and, as a result, must be rejected.

1.   Plaintiff Established Fraudulent Intent as to Mott and the Entity Defendants

The Mott Defendants erroneously contend that Plaintiff relied "solely on the $7.5 million in cashier's checks. . ." to establish their intent to fraudulently dispose of or secret property and that Plaintiff has offered no facts to support its arguments. ECF No. 106 at 17. Rather, as Plaintiff argues, Mott, through the Entity Defendants, wrongfully obtained about $18.9 million from the Bank and subsequently secreted or disposed of those funds to avoid them being clawed back by the Bank, *including* $7.5 million dissipated using the Asset Holder Defendants as conduits. ECF No. 93-11 at 17. In other words, Mott's dissipation of the Bank's funds through means other than the Asset Holder Defendants was also encompassed in Plaintiff's scienter argument.

Although the Mott Defendants claim, without any basis in fact, that the $7.5 million in Bank funds Mott dissipated through the Asset Holder Defendants was for valid business purposes (a point Plaintiff strongly disputes), they fail to address any of Plaintiff's arguments that apply with equal force to the remaining $11.4 million wrongfully taken from the Bank. As demonstrated through the undisputed evidence and affidavits submitted in support of this motion and prior motions, there is no question that the Mott Defendants overdrew their account balances by a collective $18.9 million (*See* ECF 3-1 at ¶ 22) and that those wrongfully-obtained funds were withdrawn, transferred, or otherwise removed from Five Star Bank by Mott (*id.*) who undisputedly controlled the Entity Defendants and their FSB accounts (ECF No. 106-1 at ¶ 15). Even allowing for the implausible possibility that Mott was reimbursing the Asset Holder Defendants, she still did so using $7.5 million she fraudulently obtained, thus dissipating the proceeds of her scheme.

Moreover, Mott has not accounted for an additional $11.4 million in ill-gotten gains (which would have been clawed back by the Bank) that remain missing from the relevant FSB accounts with no explanation as to why or where the funds were transferred.

The Mott Defendants also failed to rebut any of the five "badges of fraud" Plaintiff contends are satisfied by the Mott Defendants' conduct. *See* ECF No. 93-11 at 22. In particular, the Mott Defendants have not disproven the "gross inadequacy of consideration" in connection with their surreptitious and illegal transfer of more than $18.9 million in funds they never actually held from Five Star Bank and into their possession or control. *Id.* The at-issue transfers of the Bank's funds were between closely-related parties that Mott either controlled and employed. *Id.* Additionally, it is undisputed that Mott, either individually or through the Entity Defendants, still controls some portion of the millions of dollars they wrongfully took from the Bank. *Id.* The chronology and unusualness of these transactions further supports a finding of fraudulent intent. *Id.* In fact, the mere act of "drawing of checks without funds to meet them, when unexplained, is a badge of fraud." *A. Sams & Sons Produce Co. v. Campese*, 14 A.D.2d 487, 487 (1961); *see also Societe Generale Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769 (finding intent to defraud under CPLR 6201(3) where defendant presented and re-presented check drawn on closed accounts and subsequently attempted to transfer assets out of creditors' reach).

> 2. The Asset Holder Defendants' Oppositions Do Not Contradict the Evidence of Mott's Fraudulent Intent

The Mott Defendants wrongly insist that the Asset Holders' own oppositions "confirm that the cashier's checks paid to the Asset Holder Defendants were to reimburse the payment of legitimate business expenses or funds advanced to the businesses." ECF 106 at 19. As a result, the Mott Defendants argue, Plaintiff cannot demonstrate Mott's fraudulent intent with respect to her check-kiting scheme.

This argument fails for at least two reasons.  First, each of the Asset Holder Defendants' oppositions lacks *any* supporting affidavit or factual corroboration that are capable of establishing "facts" contradicting Plaintiff's well-supported moving brief.  Second, the only "evidence" offered by any of the Defendants, an affidavit submitted by Timothy LaRocca, actually ***supports*** Plaintiff's allegations of atypical and improper financial activity. The February 2023 Discover Card statement attached to LaRocca's Opposition (ECF 104-2), which Mott contends shows the Asset Holder Defendants were fronting the Mott Defendants' ordinary business expenses, actually reveals eight suspicious and identical $8,900.00 charges on LaRocca's Discover Card by one of the Entity Defendants' businesses, the "Monroe's" restaurant, once a week and on consecutive days. ECF No. 104-2 at 4.  If LaRocca (and the other Asset Holder Defendants) were directly paying vendors on the Mott Defendants' behalf, this credit card statement would reflect various payments in different amounts made to identifiable and distinct recipients—not, as is the case here, identical and consecutive payments to a Mott Defendant.  In short, all the LaRocca opposition and the exhibits annexed thereto demonstrate is that Mott used LaRocca's credit card to generate false revenue for one of her businesses—not to pay vendors—which Mott subsequently repaid with stolen money.

## CONCLUSION

As set forth herein and at greater length in Plaintiff's underlying motion brief, Five Star Bank respectfully submits it is entitled to an Order of Attachment as against Defendant Katherine Mott and the Entity Defendants pursuant to Fed. R. Civ. P. 64, CPLR 6201(e) and CPLR 6212. Accordingly, Five Star Bank respectfully requests that this Court enter an Order attaching the assets of each of these Defendants and for such further relief as this Court may deem just and proper.

Respectfully submitted,

**BARCLAY DAMON LLP**

by: */s/ David G. Burch, Jr.*

    David G. Burch, Jr., Esq.
    Sarah A. O'Brien, Esq.
    Benjamin R. Zakarin, Esq.
    125 East Jefferson Street
    Syracuse, NY 13202
    (315) 425-2700
    dburch@barclaydamon.com
    bzakarin@barclaydamon.com
    *Counsel for Five Star Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 27, 2024, I served the foregoing document on all counsel of record via the Court's ECF system.

<u>*/s/ David G. Burch, Jr.*</u>
**David G. Burch, Jr.**

12