# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIVE STAR BANK,<br><br>                                  *Plaintiff*,<br>v.<br><br>KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC; and KATHERINE MOTT, INDIVIDUALLY AND AS MANAGER OF KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC; ROBERT HARRIS; KRISTINA BOURNE; TAYLOR PAGANO; and TIMOTHY LAROCCA,<br><br>                                  *Defendants*. | CASE NO. 6:24-cv-06153<br><br>CIVIL ACTION |

## PLAINTIFF'S OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER OF ATTACHMENT AS TO THE ASSET HOLDER DEFENDANTS

**BARCLAY DAMON LLP**

David G. Burch, Jr., Esq.
Sarah A. O'Brien, Esq.
Benjamin R. Zakarin, Esq.
125 East Jefferson Street
Syracuse, NY 13202
(315) 425-2700
dburch@barclaydamon.com
bzakarin@barclaydamon.com
*Counsel for Five Star Bank*

TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................... 1

**ARGUMENT** ...................................................................................................................... 2

    **A.   Plaintiff Has Met the Evidentiary Requirements for Attachment.** ............................ 2

    **B.   Plaintiff is Likely to Succeed on its Claim for Money Had and Received** ................. 3

        1.   Asset Holder Defendants Received Plaintiff's Money .................................. 3

        2.   A Clear Benefit Was Received ........................................................ 4

        3.   Equity and Good Conscience Require Restitution........................................... 5

    **C.   Plaintiff Demonstrated Defendants' Intent to Hinder or Delay** ................................. 5

        1.   Plaintiff Established Sufficient Badges of Fraud.............................................. 6

        2.   The LaRocca Submission Only Highlights Inconsistencies, Not Resolves Them ......... 7

    **D.   Plaintiff's Demand Exceeds All Known Counterclaims**................................................ 8

**CONCLUSION** .................................................................................................................... 8

**INTRODUCTION**

Faced with the unpleasant reality of having to acknowledge the *true* source of the millions of dollars they wrongfully funneled out of Five Star Bank from December 2022 through February 2024, the Asset Holder Defendants oppose Plaintiff's motion to attach their assets on narrow technical grounds. Yet, none of the Asset Holder Defendants' oppositions dispute Plaintiff's documentary evidence establishing the amounts of money they removed from Five Star Bank, the manner in which they removed those funds, or the accounts from which they removed those funds. Nor do they dispute that Defendant Katherine Mott ("Mott") and the Entity Defendants wrongfully gained access to those funds through a vast, long running check-kiting scheme. Nor, for that matter, do they dispute that Mott and the Entity Defendants were not entitled to possess or control the nearly $7.5 million in Five Star Bank's funds that the Asst Holder Defendants deposited into their respective bank accounts.

Rather, the Asset Holder Defendants offer an array of confused and misplaced legal arguments in an attempt to ignore the undisputed facts showing they were key players in the dissipation of millions of dollars of Mott's ill-gotten gains. What is more, those funds were deposited into their own bank accounts and have not been recovered or otherwise accounted for. Only a single Asset Holder Defendant submits any evidence to support their theories, and the scant, fragmentary evidence offered by that single Asset Holder Defendant actually underlines the falsity of the "innocent" explanation offered that they were paying their employers' "vendors" millions of dollars in a 16-month period with their personal credit cards. Rather, the credit card statements offered as alleged evidence that the Asset Holder was merely being reimbursed for legitimate business expenses on his personal credit cards, show repeated nearly $10,000 charges at one of the Entity Defendant's restaurants. How could reimbursement for "charges" at one of the other

1

Defendants be evidence of normal business expense practices?

Accordingly, because nothing the Asset Holder Defendants submitted rebuts Plaintiff's well-supported motion and because Plaintiff has met the requirements of CPLR 6201(3), CPLR 6212, and FRCP 64, Plaintiff respectfully submits that an order of attachment should issue as to the Asset Holder Defendants.

## ARGUMENT

### A. Plaintiff Has Met the Evidentiary Requirements for Attachment.

Contrary to Defendants' arguments (*see, e.g.,* ECF 108 at 8-10), Plaintiff has satisfied the requirements of CPLR 6212(a)[1], which requires proof "by affidavit *and such other written evidence as may be submitted*," because Plaintiff's submissions, including hundreds of pages in documentary evidence, establish each of the necessary elements under CPLR 6212 and CPLR 6201(3). (emphasis added). The Asset Holder Defendants have submitted no evidence to rebut the numerous instances of check-kiting identified in the Jozwiak Affidavit. (ECF No. 31) and corroborated by the account statements attached to the Affidavit of Lois Ellis. *See* ECF No. 93-11 at 15-16; ECF No. 93-9 at 1. Indeed, nothing in the Asset Holder Defendants' oppositions challenges the fact that they participated in the dissipation of more than $7.5 million in stolen funds by depositing those funds into external bank accounts inaccessible to Plaintiff. Moreover, the Asset Holder Defendants have not disputed that these funds were obtained for grossly inadequate consideration in collusion with a closely-related party and through transactions far outside the normal course of any business. (ECF No. 93-11 at 7). Finally, nothing submitted in opposition to Plaintiff's Motion rebuts the evidence that the Asset Holder Defendants deposited those funds into their personal bank accounts and that they cannot or will not account for any portion of their

---

[1] Pursuant to Fed. R. Civ. P. 64, New York state law governs this motion for an order of attachment.

2

plunder at present. *Id.*

### B. Plaintiff is Likely to Succeed on its Claim for Money Had and Received

Contrary to the nearly-identical arguments offered by each of the Asset Holder Defendants, Plaintiff satisfied the first two elements of CPLR 6212(a) because it has stated a claim for Money Had and Received—a claim for money damages[2]—and is likely to succeed on the merits of that claim against each of them. (ECF No. 104 at 7-9; ECF No. 105 at 4; ECF No. 107 at 3-5; ECF No. 108 at 12-14). In fact, none of the Asset Holder Defendants' respective oppositions even addresses Plaintiff's claim for Money Had and Received, let alone rebuts the substantial evidence that assure its success on the merits of this claim. (ECF No. 93-11 at 14-16).

A claim for Money Had and Received requires showing that: "(1) the defendant received money belonging to the plaintiff, (2) the defendant benefited from the receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money." *U.S. SBA As Receiver of Elk Assocs. Funding Corp. v. Ameritrans Holding, LLC*, 2024 U.S. Dist. LEXIS 29702, *8 (E.D.N.Y. Feb. 21, 2024). Critically, under New York law, "[i]t is ***immaterial*** [] whether the original ***possession*** of the money by the defendant ***was rightful or wrongful***." *Marini v. Adamo*, 995 F. Supp. 2d 155, 206 (E.D.N.Y. 2014) (*quoting Roberts v. Ely*, 113 N.Y. 128, 132 (1889)) (emphasis added).

#### 1. Asset Holder Defendants Received Plaintiff's Money

Plaintiff demonstrated that the Asset Holder Defendants received funds belonging to Plaintiff, including by showing the accounts from which the Asset Holder Defendants assisted in draining $7.5 million never held deposits sufficient to support those disbursements. (ECF No. 31 at ¶ 6). Moreover, Plaintiff has submitted documentary evidence demonstrating that the accounts

---

[2] *See, e.g., Parsa v. State*, 64 N.Y.2d 143, 149 (1984) (stating that a claim for money had and received "states a legal cause of action for money damages…"); *see also Eng v. State of New York*, 831 N.Y.S.2d 359 (Ct. Cl. 2006) (same).

used to divert the Plaintiff's assets to the Asset Holder Defendants were funded by artificial balances created generated by Mott's fraudulent activities. (ECF No. 93-11 at 15-16; ECF Nos. 93-5, 93-6, 93-7,93-8, 93-9, and 93-10).

For example, Plaintiff demonstrated that in August 2023, Mott diverted $811,854.57 to the Asset Holder Defendants from the KRM Events account ending in -0529. (ECF No. 93-11 at 15). That account had an average balance of *legitimately-deposited* funds of only $34,455.93, meaning the moneys diverted to the Asset Holder Defendants were actually funded by using the artificial account balance created by Mott's check kiting activity. (ECF No. 93-9 at 1; ECF No. 93-11 at 15). Plaintiff has likewise submitted cashier's checks and account statements from the Entity Defendant accounts that Katherine Mott controlled demonstrating the exact same conduct, *i.e.*, funneling millions in temporary, artificially-raised balances from these accounts to the Asset Holder Defendants. *See, e.g.* ECF No. 51-3, 51-4, 51-5, 51-6.

  2. <u>A Clear Benefit Was Received</u>

Second, the Asset Holder Defendants benefited from the payments made by Katherine Mott through the Entity Defendant accounts. Under New York law, a person benefits "where she receives money or property, but also where she otherwise receives a benefit." *Farina v. Bastianich*, 116 A.D.3d 546, 548 (App. Div. 1st Dept. 2014). Plaintiff demonstrated that each of the Asset Holder Defendants received between hundreds of thousands and millions of dollars, constituting a substantial benefit. And, as this Court previously held, "[a]s it currently stands, the location of the $18.9 million owed to Plaintiff is unknown." ECF No. 36 at 12. The Asset Holder Defendants' largely unsworn protestations do not rebut these documented facts.[3] Because the Asset Holder Defendants received a benefit in the form of substantial and gratuitous cash payments

---

[3] Notably, Defendant Harris did not even offer any reason for why he deposited $1,543,197.81 in checks that were purportedly funded by the Entity Defendants' accounts between December 2022 and November 2023.

cumulatively totaling over $7.5 million, Plaintiff has established the second element of its claim Money Had and Received.

### 3. Equity and Good Conscience Require Restitution

Third, equity and good conscience require that the Asset Holder Defendants return the more than $7.5 million of Plaintiff's funds they received. It is well-settled that "equity does not favor allowing defendant[s] to escape restitution" of wrongfully-obtained funds where the conduct to obtain those funds is "bordering on the larcenous." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chipetine*, 221 A.D.2d 284, 287 (App. Div. 1st Dept. 1995). Here, Plaintiff has alleged—and the Court has found it is likely to prevail demonstrating—that the funds obtained by Defendant Mott, including the $7.5 million diverted to the Asset Holder Defendants, were obtained fraudulently and thus by "larcenous" conduct. ECF No. 36 at 11. Courts also look to whether "the benefit remained with the defendant." *Id.* at 286. As the Court has noted, some $18.9 million—necessarily including the $7.5 million dissipated through the Asset Holder Defendants—remains unrecovered. ECF No. 36 at 12. Moreover, the Asset Holder Defendants offer no proof to demonstrate they no longer possess these ill-gotten gains and equity demands their return.

Accordingly, Plaintiff has satisfied the first two requirements of CPLR 6212(a) because it has both stated a claim for money damages as to the Asset Holder Defendants for Money Had and Received and it is likely to prevail on the merits of this claim against each of them.

### C. **Plaintiff Demonstrated Defendants' Intent to Hinder or Delay**

Plaintiff also satisfied the third requirement of CPLR 6212(a) because grounds for attachment under CPLR 6201(3) exist here. The Asset Holder Defendants' insistence they have not been implicated in any transfers designed to hinder or delay Plaintiff's enforcement of an ultimate judgment misses the mark. As Plaintiff demonstrated in its moving brief with unrebutted

documentary evidence, the Asset Holder Defendants actively diverted millions of dollars in wrongfully-obtained funds from the Entity Defendants into their personal accounts. To date, none of those funds—last seen being deposited into the Asset Holder Defendants' accounts—have been recovered.

        1. <u>Plaintiff Established Sufficient Badges of Fraud</u>

Plaintiff has sufficiently shown "intent to defraud," which requires demonstrating "an actual intent to hinder and delay," through the existence of various "badges of fraud." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003). Importantly, "lack of fair consideration gives rise to a rebuttable presumption of fraudulent intent." *United States v. Carlin*, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996); *see also Cadle v. Newhouse*, 2002 U.S. Dist. LEXIS 15173, *15 (S.D.N.Y. Aug. 15, 2002). Here, Plaintiff has shown—and no competent evidence or testimony has rebutted—that these transfers involved a gross inadequacy of consideration at all levels of these fraudulent transfers, creating the rebuttable presumption of fraudulent intent. (ECF No. 93-11 at 18).[4]

Further, all of the participants in the transactions were closely related, being either directly employed by Mott and the Entity Defendants, or, as with Harris, married to her. Contrary to their unsupported claims, the transfer of millions of dollars to three restaurant employees over a little over a one-year period to "reimburse" them for unsubstantiated vendor expenses or "credit card advances" is not the ordinary course of a legitimate business.[5] Nor, for that matter, is repayment

---

[4] Defendant Harris's argument that the fact he was receiving cashier's checks means they were *per se* issued for sufficient consideration is legally incorrect—especially when obtained by fraud. *See Turbine Fed. Credit Union v. Amsterdam Fed. S&L Ass'n*, 224 A.D.2d 753, 754 (App. Div. 3d Dept. 1996). Moreover, since each of the cashier's checks from FSB bore the remitter entity's name, Harris' claim he did not know the source of funds (ECF No. 107 at 9) is not plausible.

[5] Defendants' insistence a report by the Receiver vindicates them grossly overstates the matter. In his first report, the Receiver merely referred to "*what I understand to have been*" a practice of having vendor payments covered by individual credit cards—a belief that remains unsubstantiated and, in all likelihood, supplied by Defendants themselves. ECF No. 61 at ¶ 10. Moreover, as noted in the Receiver's First Application for Compensation, the vendor

of a company's purported debts from the accounts of numerous other entities with which the Asset Holder Defendants had no association.[6] Finally, the unusualness of this pattern of transactions, including their overlap, frequency, and amount, support a finding of intent to defraud (*see, e.g.* ECF No. 51-3 at 78-85, eight checks during the business week of March 20-24 to Bourne totaling $172,485.98; ECF No. 51-4 at 30-34, five checks during the business week of February 20-24 totaling $71,569).

### 2. The LaRocca Submission Only Highlights Inconsistencies, Not Resolves Them

The only sworn statement and documentary evidence, a one-month sample of one credit card and bank statement provided by Defendant LaRocca and apparently intended to demonstrate his transactions with Katherine Mott and the Entity Defendants were proper and ordinary, only serves to highlight the inconsistency between his explanation and reality. LaRocca contends he was "loaning" money to Defendant Mott by allowing she and one of the Entity Defendants to charge his Discover card for $17,800 per week in February 2023, generating about $71,200 in false receipts for Monroe's that month. These funds were available to, and used by, Defendant Mott. (ECF No. 104 at 5-6).

If these phony charges were actually "loan" transactions, they simply make no sense. For example, there is no reasonable explanation for why Defendant Mott would "repay" LaRocca with a check for $17,800 on February 24, 2023 when she was required to "borrow" another $8,900 on both February 25, 2023 and February 26, 2023.[7] Thus, at most, Defendant LaRocca has demonstrated that he knowingly misused his personal credit card and ran tens of thousands of

---

expense the Receiver advanced was a mere $1,860.00—not the tens to hundreds of thousands of dollars per month claimed by the Asset Holder Defendants. ECF No. 61 at 5.

[6] *See, e.g.*, ECF No. 78-1 at 8 (highlighting six different payors on checks LaRocca deposited).

[7] Similarly inexplicable is the purported "repayment" by cashier's check to LaRocca, dated February 16, 2023 despite another two "loan" transactions for $8,900 each mere days later on February 18, 2023 and February 19, 2023.

7

dollars in phony purchases through one of the Entity Defendants and permitted Mott and her companies to access money they did not legitimately earn, all in furtherance of the broader financial fraud being perpetrated against Plaintiff. Nothing LaRocca has submitted rebuts the fact that the funds he deposited were obtained through the Defendants' ongoing fraudulent scheme and were not lawfully obtained or held by any of the Entity Defendants. In short, all Defendant LaRocca has done is raise additional questions about the scope and nature of his conduct beyond his active participation in the dissipation of the Plaintiff's funds into his personal bank account.

### D. Plaintiff's Demand Exceeds All Known Counterclaims

Finally, as previously noted, none of the Asset Holder Defendants have filed (or even suggested an intent to pursue) any counterclaims. Accordingly, Plaintiff's multi-million dollar demand far exceeds all known counterclaims and, accordingly, the final requirement of CPLR 6212(a) is satisfied.

### CONCLUSION

As set forth above and at greater length in Plaintiff's underlying motion brief, Plaintiff has demonstrated, through affidavits and undisputed documentary evidence, that it has satisfied the requirements of CPLR 6201(3) and CPLR 6212 (as applied under Fed. R. Civ. P. 64) and an order of attachment is both permissible and appropriate here.. Accordingly, Plaintiff respectfully requests that this Court enter an Order attaching the assets of each of the Asset Holder Defendants and affording such further relief as this Court may deem just and proper.

Dated: September 27, 2024

                                                Respectfully submitted,

                                                **BARCLAY DAMON LLP**

                                    by: */s/ David G. Burch, Jr.*

                                        David G. Burch, Jr., Esq.
                                        Sarah A. O'Brien, Esq.
                                        Benjamin R. Zakarin, Esq.
                                        125 East Jefferson Street
                                        Syracuse, NY 13202
                                        (315) 425-2700
                                        dburch@barclaydamon.com
                                        bzakarin@barclaydamon.com
                                        *Counsel for Five Star Bank*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 27, 2024, I served the foregoing document on all counsel of record via the Court's ECF system.

*/s/ David G. Burch, Jr.*
**David G. Burch, Jr.**