UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FIVE STAR BANK,

          *Plaintiff*,

v.

KATHERINE MOTT; ROBERT HARRIS; KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC D/B/A THE WINTERGARDEN BY MONROES; 11 WEXFORD GLEN, LLC; RCC MONROES LLC; NAF REMODELING LLC; MONROES AT RIDGEMONT LLC CRESCENT BEACH AT THE LAKE LLC; MOTT MANAGEMENT LLC; KRISTINA BOURNE; TAYLOR PAGANO; TIMOTHY LAROCCA,

          *Defendants*.

CASE NO. 6:24-CV-06153-FPG

**FIFTH MONTHLY ACTIVITY REPORT OF MARK R. KERCHER, CPA, RECEIVER**

Pursuant to the Order appointing Receiver dated April 8, 2024 (Docket No. 39)[1] (the "Receiver Appointment Order"), I was appointed Receiver for the Defendant Entities by the United States District Court for the Western District of New York in the above-captioned action ("Lawsuit").

For my fifth Court-ordered activity report, which covers the period September 1, 2024, through September 30, 2024, I hereby submit the following:

### I. APPOINTMENT OF RECEIVER AND BACKGROUND

1. Effective April 8, 2024, I was appointed Receiver by this Court to, among other things, take immediate control of the financial affairs—including all cash, assets, books, and records—of the Defendant Entities.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Receiver Appointment Order.

2.      Among my enumerated powers and duties, I was authorized to make payments and disbursements in the ordinary course of business as needed and proper for the continued operations of the Defendant Entities' businesses.

## II.     RECEIVER'S ACTIVITIES

### A.     Financial Management and Control

3.      During September, the day-to-day activity of managing the financial situation of the Defendant Entities continued, largely focused on making cash projections, determining vendor priorities, and authorizing payments based on cash availability.

4.      During September, operating cash flow in the restaurant venues and special events continued to permit the Defendant Entities to meet payrolls without reducing workforce and to keep all critical food and beverage vendor payments current, thereby assuring no disruption in supply. Additionally, all lease obligations, insurances, and payroll were kept current during September. As reported to the Court and the Parties in previous activity reports, the Defendant Entities have not been able to make the quarterly sales tax payment, and that amount remains in arrears. Additionally, Federal income tax withholding late payment penalties were recently assessed from the period prior to my appointment and remain unpaid as well. The Defendant Entities were able to accommodate all events previously booked for which customers had paid advance deposits. Measures were taken to reduce payroll costs in September, which resulted in a 20% reduction in payroll. Additional such measures will be taken in the future.

### B.     Protect and Preserve Entity Defendant Assets and Future Revenue Streams

5.      Since the inception of this Receivership, my efforts have largely been directed towards preservation of future revenue streams by taking actions, including sale of non-business assets, to generate cash. The cash generated has enabled the businesses to continue to operate and

to pay down payroll and sales tax delinquencies. This cash also was critical to ensure that the Defendant Entities could meet their obligations to hold near-term future wedding and other events, for which good-faith deposits had been paid. In the absence of these cash-generation efforts, the individuals who had paid the deposits would have neither an event venue nor any recourse for the loss of same. I also believed the cash generated by the asset sales would help the Defendant Entities "right the ship." As I have stated in each of my prior activity reports, the Defendant Entities at the inception of the Receivership were bereft of cash in significant measure due to the actions taken by Community Bank to freeze funds on deposit that had been generated subsequent to commencement of this lawsuit and forwarding those funds to the Plaintiff. To my thinking, the asset sales were a necessary attempt to fill the hole created by Community Bank's action.

6. During the months that followed, and as noted in my activity reports, it appeared the ship, though not fully righted, was at least afloat. Unfortunately, it now appears that because of the Defendant Entities' structural and systemic operational deficiencies, additional non-business and even business assets must be sold. The Court has charged me with the responsibility to "make payments and disbursements in the ordinary course of business, as needed and proper in the continued operations of the Defendant Entities' businesses." In my professional opinion, fulfilling that obligation necessitates that additional assets be liquidated because the businesses are not structurally capable of meeting these ordinary-course obligations, and the added cost of Receivership only exacerbates the deficiency. Thus, as previewed in last month's activity report, I intend to oversee the Company Defendants' disposition of the Crescent Beach property, a lakeside bar/restaurant acquired by the Defendant Entity 11 Wexford Glen, LLC, as well as other non-business properties. Additionally, discussions are underway to sell the business assets (Katherines at Monroe, and Divinity Estate and Chapel). The sales contemplate the buyer purchasing assets

(equipment, tableware, and furniture) and assuming liabilities ($2M in an SBA loan at Katherines on Monroe and customer event deposits at the event venue). As currently proposed, the buyer would assume the responsibility for hosting all scheduled events at the venues. The purchase price for Katherines on Monroe is based on an independent appraisal.

7. I believe it also is important to point out to the Court and Parties that, in my view, there exists an internal tension in the Court's directive that I "protect and preserve assets and future revenue streams." Future revenue preservation can only occur if profitable business operations continue. But the businesses have continued to operate from the inception of the Receivership to the present only because non-business assets were sold and thus not preserved. As a practical matter, the liquidation value of the Defendant Entities' assets, both non-business and business, will likely generate sufficient cash to pay priority obligations and allow the Companies to operate for a finite period, but the liquidation will leave very little, if any, funds available to Plaintiff and other potential claimants.

8. On a related note, because my authority as Receiver extends, according to the Receiver Appointment Order, "to all of the Entity Defendants' … assets of any nature and wherever located," I recently undertook to assist one of the Defendant Entities, Monroe's at Ridgemont, LLC ("Monroe's"), with collection of delinquent accounts of Ridgemont Country Club ("Ridgemont") members. Those delinquencies arose from the continuing failure of certain Ridgemont members to pay for food and beverages they had purchased from Monroe's prior to termination of Monroe's Food and Service Agreement with Ridgemont, effective August 15, 2024. I had attempted to work with Ridgemont to collect these member food and beverage receivables but was advised by Ridgemont earlier this month that it would not assist with Monroe's collection efforts. It is my intention to collect the approximately $36,000.00 from the members by the time I file my November

report. If I am unsuccessful, I will notify the Court of this additional complicating factor affecting the viability of the Defendant Entities.

9. Attached to this report as Exhibit A is an unaudited financial presentation prepared from Defendant Entities' books, records, and other documentation. The financial presentation reflects sources and uses of cash for the period April 8, 2024 through September 30, 2024.

## CONCLUSION

10. I continue to receive full cooperation from management of the Defendant Entities and from Five Star Bank, in its capacity as banking institution for the Defendant Entities, for which I am appreciative. This said, I believe it is critical for the Court and all Parties to understand my view that, while continued sale of business and non-business assets will allow me to continue discharging my obligation to "make payments and disbursements, in the ordinary course of business, as may be needed and proper for the continued operation of the Defendant Entities' businesses" for a finite period, because of the Companies' structural deficiencies, these measures will not succeed in "righting the ship"; at best, they will simply temporarily forestall the inevitable depletion of the Defendant Entities' assets. Should the Court have any questions or concerns in response to this report, I am happy to offer a supplement or to appear before the Court.

Dated: October 23, 2024                                    Respectfully Submitted,

_____
Mark R. Kercher, CPA, Receiver