UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FIVE STAR BANK,

                *Plaintiff*,

v.

KATHERINE MOTT; ROBERT HARRIS; KRM EVENTS, LLC; KATHERINE'S ON MONROE, LLC; THE DIVINITY ESTATE AND CHAPEL, LLC; KNC ELEGANCE, LLC D/B/A THE WINTERGARDEN BY MONROES; 11 WEXFORD GLEN, LLC; RCC MONROES LLC; NAF REMODELING LLC; MONROES AT RIDGEMONT LLC CRESCENT BEACH AT THE LAKE LLC; MOTT MANAGEMENT LLC; KRISTINA BOURNE; TAYLOR PAGANO; TIMOTHY LAROCCA,

                *Defendants.*

CASE NO. 6:24-CV-06153-FPG

**SIXTH MONTHLY ACTIVITY REPORT OF MARK R. KERCHER, CPA, RECEIVER**

---

Pursuant to the Order appointing Receiver dated April 8, 2024 (Docket No. 39)[1] (the "Receiver Appointment Order"), I was appointed Receiver for the Defendant Entities by the United States District Court for the Western District of New York in the above-captioned action ("Lawsuit").

For my sixth Court-ordered activity report, which covers the period October 1, 2024, through October 31, 2024, I hereby submit the following:

    **I.**      **APPOINTMENT OF RECEIVER AND BACKGROUND**

    1.      Effective April 8, 2024, I was appointed Receiver by this Court to, among other things, take immediate control of the financial affairs, including all cash, assets, books, and records of the Defendant Entities.

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Receiver Appointment Order.

2. Among my enumerated powers and duties, I was authorized to make payments and disbursements in the ordinary course of business as needed and proper for the continued operations of the Defendant Entities' businesses.

II.     **RECEIVER'S ACTIVITIES**

A.      Financial Management and Control

3. During October, the day-to-day activity of managing the financial situation of the Defendant Entities continued, largely focused on weekly, even daily, cash projections, determination of vendor priorities and authorizing payments based on cash availability.

4. During October, operating cash flow in the restaurant venues and special events was adequate to permit the Defendant Entities to meet payrolls with limited workforce reduction and to keep all critical food and beverage vendor payments current, thereby assuring no disruption in supply. Lease obligations, insurances, and payroll were kept current during October.

5. In late October, the third quarter payment under the food and beverage concession agreement with Buckingham Properties ("the F&B Agreement") at the Wintergarden was presented for payment. The concessionaire, KNC Elegance, and the other Defendant Entities did not have sufficient funds to make this payment approximating $200K. (Plans to address this obligation and continuation of events at Wintergarden are addressed below.)

6. As reported to the Court and the Parties in previous activity reports, the Defendant Entities are delinquent on quarterly sales tax payments. Additionally, Federal and State payroll taxes were not paid for a single weekly pay period due to shortage of funds.

B.      Protect and Preserve Entity Defendant Assets and Future Revenue Streams

7. As discussed in my Fifth Monthly Activity Report, the Entity Defendants' financial situation has deteriorated since the date of my appointment, and numerous obligations remain

unpaid because there is no money to pay them. In October, the financial challenges worsened because of the continuing structural financial issues. It was for these reasons that I previously discussed the option of pursuing cash-generating opportunities, including the sale of the businesses themselves.

8. For a variety of reasons, a sale of the Crescent Beach property is not currently under consideration.

9. The management team and I are considering the following asset-liquidation plan:

A. **Katherine's on Monroe**, **LLC**—An appraisal was obtained this summer from an independent appraiser, which valued the business as a going concern, net of debt service relating to an existing SBA loan to be assumed. The restaurant operates in leased property and the tangible assets consist of restaurant equipment, furniture, and tableware. It is my opinion that the highest value would be obtained by way of a sale as a going concern. Discussions are underway with a third-party buyer for a sale at the appraised value. Proceeds of the sale would be under my control and disbursed only towards satisfaction of the priority obligations previously discussed.

B. **KNC Elegance LLC d/b/a The Wintergarden by Monroe's**—Unlike with Katherine's on Monroe, the Entity Defendants do not have an independent appraisal for this business, but a valuation was prepared and thoroughly reviewed based on a discounted cash flow calculation similar to the appraiser's valuation for Katherine's on Monroe. Under the terms being discussed with a third-party buyer, the buyer would assume an existing SBA loan, along with the obligation for future events and the third quarter concession fees owing to the landlord. It is anticipated that net proceeds, under my control, would be available to

fund priority obligations, including contractually obligated event refunds. The deal under consideration also contemplates that current employees engaged in event hosting would continue as employees of the buyer.

      C.     **The Divinity Estate and Chapel, LLC** ("Divinity")—An appraisal was not prepared for Divinity and a discounted cash flow valuation model indicated little if any value. The business includes leased space for all Defendant Entity back-office operations and the resultant lease expense is not sustainable by Divinity alone. Discussions are taking place with a potential buyer, which would generate modest cash proceeds at best, but would include assumption of the obligation for future events.

      D.     **Other Real Property**—Other real estate of the Defendant Entities may be sold at market value to third parties, and the proceeds would be under my control for satisfaction of the priority obligations previously discussed.

In summary, this asset-liquidation plan is being undertaken to (a) enable the priority and normal course creditors to be paid in full, (b) allow events scheduled with customer deposits to be held without interruption, and (c) lead to an orderly wind-down of the Defendant Entities. I fully understand and appreciate that this is not entirely consistent with the Plaintiff's stated desire to protect assets for the potential of a future recoveyr. But, as I have made clear repeatedly in my Activity Reports and separately in conversations with counsel for the Parties, as well as with the Entity Defendants' management team, the businesses are simply not sustainable under the present structure. The only other option in my view would be to "go dark" and let the current and potential claimants litigate what would almost certainly be a very minimal recovery for anyone.

10. In my Fifth Monthly Activity Report, I discussed my efforts to collect unpaid Ridgemont Country Club ("RCC") member food and beverage charges following the termination of the RCC food and beverage contract with Monroe's at Ridgemont, LLC. I am disappointed to report that these collection efforts have not been successful. I issued a letter to the members with outstanding balances in which I strongly encouraged payment, or, if the members disputed certain charges, a request to contact the company to negotiate a resolution. There was some controversy over balances that included a pro-rata member minimum, and I indicated to management that they should not pursue those balances further. I understand that the owner of RCC has encouraged the members to pay their obligations. However, there remain approximately 100 members with unpaid balances from undisputed food and beverage charges. These balances aggregate approximately $30,000.00, and I have authorized Monroe's at Ridgemont to pursue these balances through whatever legal means are available.

11. Attached to this report as Exhibit A is an unaudited financial presentation prepared from Defendant Entities' books, records, and other documentation. The financial presentation reflects sources and uses of cash for the period April 8, 2024, through October 31, 2024.

## CONCLUSION

12. I continue to receive full cooperation from management of the Defendant Entities and from Five Star Bank, in its capacity as banking institution for the Defendant Entities, for which I am appreciative. This said, I believe it is critical for the Court and all Parties to understand my strong belief that, while continued sale of business and non-business assets will allow me to continue discharging my obligation to "make payments and disbursements, in the ordinary course of business, as may be needed and proper for the continued operation of the Defendant Entities' businesses," because of the Companies' structural deficiencies, these measures will not succeed in

"righting the ship," but rather will only temporarily forestall the inevitable depletion of Entity Defendant assets. Should the Court have any questions or concerns in response to this report, I am happy to offer a supplement or to appear before the Court.

Dated: November 26, 2024

Respectfully Submitted,

_____
Mark R. Kercher, CPA, Receiver