UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FIVE STAR BANK,

                                  Plaintiff,

v.                                                  Case # 24-CV-6153-FPG

                                                       ORDER

KATHERINE MOTT-FORMICOLA, et al.,

                                  Defendants.

Before the Court are two motions. First, Plaintiff Five Star Bank has moved for limited non-party discovery. ECF Nos. 149, 154. Second, non-party Vistas at Strong LLC ("Vistas") moves for leave to add the Receiver as a party defendant in its state-court action. ECF No. 169. The Court addresses these matters below.

**I.  Discovery**

On January 29, 2025, the Court received a letter from Plaintiff. ECF No. 144. Plaintiff requested a conference to, among other things, assess the extent to which the Receiver had "undertaken an accounting" and "trace[d] the Bank's assets." *Id.* at 2. The Court held a conference the next day. ECF No. 149. At the conference, Plaintiff's counsel requested that the Receiver take more steps to trace the money that had been the subject of the check-kiting scheme. *See* ECF No. 150 at 9. Plaintiff maintained that the Receiver was vested with this obligation and/or authority under the Court's appointment order. *See* ECF No. 144 at 2. Plaintiff's counsel indicated that Plaintiff would be willing to cover the costs associating with any forensic accounting; it simply needed the Receiver to conduct the discovery. *See* ECF No. 150 at 9, 12. Although the Court was

1

inclined to permit such limited discovery, it directed the parties to meet and confer on the matter before issuing a formal ruling. *See* ECF No. 148.

Plaintiff has submitted proposed orders. *See* ECF Nos. 154-1, 154-2. Those orders seek a variety of records from financial institutions related not only to the Entity Defendants (over which the Receiver has control), but also the individual defendants in this action. Plaintiff's requests are opposed. Having reviewed the materials, the Court denies Plaintiff's requests in their entirety.

By way of background, when the Receiver was first appointed, it was in the context of a fast-developing, uncertain situation precipitated by a massive check-kiting scheme. "[T]he location of the $18.9 million owed to Plaintiff [was] unknown," and the Court theorized that a "receiver [for Mott's businesses] could trace those funds to identify where those funds are being held"—that is, assuming the funds "remain[ed] within the businesses, but [were] being held in an account not at [Five Star Bank]." ECF No. 36 at 12. Furthermore, a receiver could ensure that "future revenue streams" were available to Plaintiff as "a means of recovery." *Id.* Considering the circumstances as they then existed, the Court concluded it was appropriate to appoint a receiver "over the financial affairs of [the] Entity Defendants." *Id.* at 18. The Court authorized the receiver to "perform an accounting of the Entity Defendants' finances and assets," "protect and preserve the Entity Defendants' assets and future revenue streams," and, as is relevant here, "take any and all actions the Receiver, in his sole discretion, deems appropriate in order to ascertain the amount and location of the Entity Defendants' assets." ECF No. 39 at 3-4.

As a result of the Court's appointment of a receiver, the Court declined to permit expedited discovery in May 2024. ECF No. 47. It noted that, with respect to the missing money, the Receiver was vested with the authority to trace and "protect Plaintiff's interest in the $18 million" to the extent it was in "the accounts of the various Entity Defendants." *Id.* at 2. Moreover, given the

early stage of the case, Plaintiff had not met its factual burden to support the reasonableness of its requests. *Id.*

The Court pauses to note that, to the extent Plaintiff accuses the Receiver of noncompliance with the Court's "directive[s]," ECF No. 144 at 2, the Court does not find that accusation meritorious. *See also* ECF No. 154 at 2 (suggesting that the Receiver failed to comply with "a fundamental aspect of the Court's prior ruling"); ECF No. 165 at 1 (describing the Receiver's "acknowledged failure and apparent inability to pursue discovery"); *see also id.* at 2 (asserting that the "forensic audit and tracing . . . should have been performed by the Receiver"). To be sure, the Receiver was granted permission to "ascertain the amount and location of the Entity Defendants' assets," ECF No. 39 at 3-4, but that power was to be exercised at the Receiver's "*sole discretion*" based on the financial situation he uncovered. *Id.* at 3 (emphasis added). The tracing of the lost money arguably fell within the Receiver's broad remit to take control of the Entity Defendants' financial affairs, "maintain the status quo," prevent "further fraud," and stop the "dissipation of assets by Defendant Mott." ECF No. 53 at 2. Yet, faced with a precarious financial situation, the Receiver was required to navigate a series of difficult decisions to determine the appropriate course to take. Early on, the Receiver disclosed to the Court and all parties that a historical investigation into the Entity Defendants' accounts would be better taken up by a forensic accountant. ECF No. 61 at 8. Plaintiff has not demonstrated that the Receiver's discretionary choice was inappropriate, given the entities' poor finances and the Court's direction that the Receiver's focus should be more heavily weighted towards maintaining the status quo. *See* ECF No. 53 at 2 (noting that the receivership was intended to "prevent further fraud and dissipation of assets by Defendant Mott, not to reach back into the past").

3

The situation has evolved since May 2024. Mott-Formicola—the overt actor in the scheme—has pleaded guilty to her involvement. *See* 24-CR-6161, ECF No. 3 at 3-5. Mott-Formicola has agreed to the imposition of restitution in the amount of $18 million to Plaintiff, *id.* at 9, and has agreed to forfeit real property and $1.85 million in money, *id.* at 14. Meanwhile, the Receiver has managed the wind-down of the Entity-Defendants' business activities. *See* ECF No. 124 at 4. Most recently, the Receiver indicates that all of the businesses have been sold, with the "only remaining substantial Entity Defendants assets being the heavily encumbered Crescent Beach and the disputed residential property on Clover Street." ECF No. 166 at 5. Furthermore, this litigation has been stayed due to the criminal proceedings/investigations. *See* ECF No. 140.

In light of present circumstances, the scope of Plaintiff's requested discovery (ECF Nos. 154-1, 154-2) does not appear to be calibrated to assist the Receiver with *his* duties. Rather, the requests appear to be primarily aimed at assisting Plaintiff with the recovery of its money and the prosecution of this litigation. *See, e.g.*, ECF No. 165 at 3. Certainly, the Court does not fault "Plaintiff's desire to timely conduct a forensic accounting of the entity defendants' finances . . . given the nature of the wrong suffered." ECF No. 148. Nevertheless, the reasons justifying the stay apply with equal force to Plaintiff's request for pre-answer discovery. *See* ECF No. 140. The Court reaffirms its prior order that a stay is appropriate, even while it acknowledges the gravity of the harm that Plaintiff has suffered. Accordingly, Plaintiff's discovery requests (ECF No. 154) are DENIED. Discovery will be taken up in the ordinary course once the stay is dissolved and the pending dispositive motions are resolved.

## II.    Motion to File Lawsuit

Vistas states that it is the landlord of certain premises that Divinity Estate and Chapel, LLC leased until February 11, 2025. ECF No. 169 at 1. Vistas has brought suit against Mott-Formicola and Divinity based on the alleged breach of the lease agreement. In addition, Vistas alleges that certain equipment and other property belonging to Vistas was wrongfully removed from the premises. *See id.* at 2. Vistas now seeks to amend the complaint to include the Receiver as a defendant, on the theory that the Receiver is, at least technically, the person "in possession" of Divinity's personal property. *See id.* Vistas emphasizes that it alleges no wrongdoing on the part of the Receiver, but it takes the position that the Receiver is a necessary party for its replevin claim. *See* ECF No. 172 at 1.

Vistas' request for leave to include the Receiver (in his official capacity) as a party defendant for its replevin claim is GRANTED. However, prior to amending the complaint to add the Receiver, counsel for Vistas is directed to meet and confer with the Receiver's counsel to determine whether there is any mutually agreeable solution that would obviate the need for the Receiver's involvement in the state-court action. If that conference does not bear fruit, Vistas is granted leave to add the Receiver as a party defendant, except that Vistas is hereby ordered to promptly dismiss the Receiver from the action upon the dissolution of the Receivership.

## III.    Receivership

In the status report dated April 3, 2025, the Receiver writes, "[i]f the Court so desires, I will continue forward in as Receiver, but because company cash is all but depleted, I would ask that the Court consider, perhaps with the assistance of counsel for Five Star Bank, who sought my appointment in the first place, whether there is continued value in my appointment." ECF No. 166 at 5. The Court notifies the parties that it does not intend to take any action *sua sponte* based on

the Receiver's report but the Court will consider the dissolution of the receivership on a properly filed motion.

       IT IS SO ORDERED.

Dated: April 29, 2025
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York