UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FIVE STAR BANK,

Plaintiff,

v.

KATHERINE MOTT, *et al.*,

Defendants.

Case # 24-CV-6153-FPG

DECISION AND ORDER

**INTRODUCTION**

Plaintiff Five Star Bank brings this action against Katherine Mott ("Mott") and several related entities and individuals, alleging that Defendants engaged in a "fraudulent check-kiting scheme" that allowed Mott to "artificially inflate the balance" of her bank accounts and "create an artificial source of funding." ECF No. 51 ¶ 2. Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6). ECF Nos. 69, 74, 75, 78, 80. Additionally, Plaintiff moves for an order of attachment as to each Defendant. ECF No. 93. For the reasons that follow, Defendants' motions to dismiss (ECF Nos. 69, 74, 75, 78, 80) are GRANTED IN PART AND DENIED IN PART, and Plaintiff's motion for an order of attachment as to each Defendant (ECF No. 93) is DENIED WITHOUT PREJUDICE.

**LEGAL STANDARD**

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the

plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, the Court need not "accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quotation omitted).

**BACKGROUND**

On March 11, 2024, Plaintiff brought the instant action in this Court. ECF No. 1. On May 8, 2024, Plaintiff amended its complaint. ECF No. 51. In its Amended Complaint, Plaintiff names fifteen Defendants. The individual Defendants are Mott, Robert Harris ("Harris"), Kristina Bourne ("Bourne"), Taylor Pagano ("Pagano"), and Timothy Larocca ("Larocca"). *Id.* The other Defendants are Limited Liability Companies managed, operated, and/or controlled by Mott and/or Harris, namely KRM Events, LLC; Katherine's on Monroe, LLC; The Divinity Estate and Chapel, LLC; KNC Elegance, LLC; 11 Wexford Glen, LLC; RCC Monroes LLC; NAF Remodeling LLC; Monroes at Ridgemont LLC; Crescent Beach at the Lake LLC; and Mott Management LLC (collectively the "Defendant Entities"). *Id.*

The following facts are taken from the Amended Complaint, unless otherwise noted. A check-kiting scheme "typically works as follows":

> The check kiter opens an account at Bank A with a nominal deposit. He then writes a check on that account for a large sum, such as $50,000. The check kiter then opens an account at Bank B and deposits the $50,000 check from Bank A in that account. At the time of deposit, the check is not supported by sufficient funds in the account at Bank A. However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B. During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A. At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection.
>
> By repeating this scheme, or some variation of it, the check kiter can use the $50,000 credit originally given by Bank B as an interest-free loan for an extended period of time. In effect, the check kiter can take advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks.

*Williams v. United States*, 458 U.S. 279, 281 n.1 (1982) (internal quotation marks omitted). In this case, Five Star Bank alleges that Mott, as well as the other individual defendants, engaged in a variation of such a scheme.

Five Star Bank is a state-chartered bank that operates in Central and Western New York. ECF No. 51 ¶ 5. From late 2022 through 2024, Mott opened "30 business and personal accounts" with Five Star Bank. *Id.* ¶ 28. The Amended Complaint sets forth the details:

- On November 29, 2022, Defendant Mott opened seven checking accounts, all "business" accounts on behalf of KRM Events LLC (accounts ending in -0529 and -0545), KNC Elegance LLC DBA The Wintergarden By Monroe's (account ending in -0588), Katherine's on Monroe LLC (account ending in -0596), The Divinity Estate and Chapel LLC (account ending in -0618), NAF Remodeling LLC (account ending in -0634) and 11 Wexford Glen LLC (account ending in -0642). [Defendant Robert Harris was an additional authorized signatory on the KRM Events LLC account ending in -0529.]

- On February 10, 2023, Defendant Mott opened one personal checking account.

- On February 14, 2023, Defendant Mott opened one personal CD.

- On February 24, 2024, Defendant Mott opened three business CDs, all with an opening deposit of $200,000.

- On April 18, 2023, Defendant Mott opened one business account on behalf of Monroes at Ridgemont LLC.

- On August 1, 2023, Defendant Mott's father, Roger Mott, opened one personal CD and named Defendant Mott as a beneficiary on the account.

- On August 22, 2023, Defendant Mott opened one personal money market account with her son, Nicholas Formicola as beneficiary, and Defendant Robert Harris opened one money market account with Defendant Mott as the beneficiary.

- On August 23, 2023, Defendant Mott's father, Roger Mott, opened one personal money market account with Defendant Mott as beneficiary.

- On September 6, 2023, Defendant Mott opened two business money market accounts for NAF Remodeling LLC and 11 Wexford Glen LLC.

- On September 7, 2023, Defendant Mott opened three business money market accounts—two for KRM Events LLC and one for The Divinity Estate and Chapel LLC.

- On October 3, 2023, Defendant Mott opened two business accounts, one demand deposit account and one money market account, for RCC Monroes LLC and Monroes at Ridgemont LLC, respectively.

- On October 26, 2023[,] Defendant Mott opened one business money market account for KNC Elegance LLC d/b/a The Wintergarden By Monroes.

- On October 27, 2023, Defendant Mott opened one business money market account for Katherine's on Monroe LLC.

- On November 16, 2023, Defendant Mott opened two business accounts, one demand deposit account and one money market account, for Crescent Beach at Lake LLC.

- On January 11, 2024, Defendant Mott opened two business accounts, one demand deposit account and one money market account for Mott Management LLC.

*Id.* ¶ 28(a)-(o).

Beginning shortly after she opened her first account at Five Star Bank, on December 9, 2022, Mott began "kiting checks" between Five Star Bank and other financial institutions. ECF No. 51 ¶ 29. Mott rapidly wrote and deposited checks between her Five Star Bank accounts and those she and the Defendant Entities held at Kinecta Financial Credit Union. *Id.* ¶ 32. This practice occurred "nearly on a weekly basis from December 2022 through February 2024." *Id.* ¶ 38. Plaintiffs also allege that Mott engaged in a practice of check-kiting with other financial institutions: in late 2022, Mott's accounts at Evans Bank and Lyons National Bank were closed due to suspected check-kiting activity. *Id.* ¶¶ 34–35. Mott also had previously had her bank accounts closed at Tompkins Community Bank due to her "inappropriate transaction history." *Id.* ¶ 37. Additionally, Canandaigua Bank and Trust closed accounts affiliated with Mott and the Entity Defendants in 2022. *Id.* ¶ 36.

Mott's scheme with respect to Five Star Bank reached a "crescendo" in February 2024. *Id.* ¶ 44. From February 22, 2024, to March 5, 2024, Mott deposited approximately 68 checks—in an aggregate amount exceeding $62 million—into "the various accounts held in the name of the Entity Defendants held at Five Star." *Id.* ¶ 45. The Amended Complaint details the specific steps that Mott took during that period and includes copies of the checks. *See id.* ¶¶ 46–52; ECF No. 51-1. These machinations allowed Mott to withdraw more than $20.9 million from her Five Star Bank accounts during this period, "despite knowing the checks she previously deposited with Five Star would [] be dishonored for insufficient funds in the originating accounts and because the accounts at Kinecta FCU had been closed." ECF No. 51 ¶ 53. From March 6, 2024 to March 8, 2024, once they learned of the negative balances, representatives with Five Star Bank had "multiple daily calls" with Mott, imploring her to take steps to "bring the negative balances to zero" as required by the account agreements. *Id.* ¶¶ 54–55. In response, Mott maintained that there was a "book keeping error" and that she would cover the negative balances, indicating that she would make a "$16 million dollar payment from Wells Fargo." *Id.* ¶ 55–56. This was a fraudulent misrepresentation, in Five Star Bank's view, since Mott "did not have sufficient funds to make such a payment." *Id.* ¶ 56. Ultimately, Mott failed to restore the money owed, and Five Star Bank filed this action. ECF No. 1. Five Star Bank alleges that it has suffered losses "of at least $18.9 million" due to this portion of the scheme. ECF No. 51 ¶ 60.

The Amended Complaint also describes the involvement of the other individual Defendants, who were all employed by or somehow involved with the businesses that were owned and operated by Mott and the Defendant Entities. During this period, Bourne was an office manager at Monroes Restaurant; Pagano was an event coordinator at The Wintergarden by Monroes and Monroes Restaurant; Harris is married to Mott and is a partial owner of Defendant Entities; and Larocca was an executive chef at The Wintergarden by Monroes. *See id.* ¶¶ 89–92.

Five Star Bank alleges that Harris, Pagano, Bourne, and Larocca participated in Mott's criminal enterprise by "knowingly receiving the proceeds of the check-kiting scheme and diverting, disposing, concealing the funds and serving as mules to move the illegal proceeds." *Id.* ¶ 88.

In its Amended Complaint, Plaintiff brings two claims under federal law (1) a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. § 1964(c) against Mott, Harris, and the Defendant Entities; and (2) a claim for conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) against all Defendants. ECF No. 51. Plaintiff also brings state law claims for (1) fraud against Mott, Harris, and the Defendant Entities; (2) breach of contract against Mott and the Defendant Entities; (3) unjust enrichment against Mott and the Defendant Entities; (4) conversion against Mott and the Defendant Entities; (5) collection on debt against Mott and the Defendant Entities; (6) indemnification against Mott and the Defendant Entities; (7) aiding and abetting fraud against Harris, Bourne, Pagano, and Larocca; and (8) money had and money received against Harris, Bourne, Pagano, and Larocca. *Id.*

## DISCUSSION

Currently before the Court are five motions to dismiss brought by the Defendants and a motion for an order of attachment brought by Plaintiff. The Court will address the motions to dismiss first and then the motion for an order of attachment.

### I. Motions to Dismiss

All of the Defendants have brought motions to dismiss the claims against them. ECF Nos. 69, 74, 75, 78, 80. Because their arguments are substantially similar, the Court will address them together.

#### a. RICO (18 U.S.C. § 1962(c))

Plaintiff's RICO claim is brought only against Defendants Mott, Harris, and the Defendant Entities. Mott, Harris, and the Defendant Entities argue that the RICO claim against them must be

dismissed because Plaintiff has not adequately established that Defendants engaged in a pattern of racketeering activity. ECF No. 69-2 at 11; ECF No. 75-2 at 18. To establish a civil RICO violation under 18 U.S.C. § 1964(c), a plaintiff must plead: (1) a violation of 18 U.S.C. § 1962(c); (2) an injury to plaintiff's business or property; and (3) that defendant's violation caused the injury. *Alphas Co. of N.Y. Inc. v. Hunts Point Terminal Produce Coop., Inc.*, No. 14-CV-00145, 2017 WL 1929506, at *3 (S.D.N.Y. May 9, 2017) (citation omitted). To state a violation of § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *4 K & D Corp. v. Concierge Auctions*, LLC, 2 F. Supp. 3d 525, 535 (S.D.N.Y. 2014) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). In this case, the Court agrees that Plaintiff has failed to adequately plead a pattern of racketeering activity, and therefore, has failed to state a claim.

Pleading a "pattern" of racketeering activity requires "at least two predicate acts, [a showing] that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997)) (internal quotation marks and alterations omitted). A "predicate act" is "any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)[ ]," *id.* at 535, which include acts of wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341). A plaintiff demonstrates "continuing criminal activity" by establishing either "closed-ended continuity" or "open-ended continuity." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

***i. Closed-Ended Continuity***

Mott, Harris, and the Defendant Entities argue that Plaintiff has failed to sufficiently plead close-ended continuity because Plaintiff has failed to allege facts demonstrating a predicate act spanning more than two years. ECF No. 69-2 at 13; ECF No. 75-2 at 16. "To satisfy closed-ended

continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). "[C]losed-ended continuity is primarily a temporal concept." *Id.* at 608 (quoting *Spool*, 520 F.3d at 184) (internal quotation marks omitted). "Although there is not a bright line for what constitutes a 'substantial period of time' . . . the Second Circuit has 'never held a period of less than two years to constitute a substantial period of time.'" *Id.* (quoting *Spool*, 520 F.3d at 184).

The Court agrees with Mott, Harris, and the Defendant Entities that Plaintiff's allegations related to Mott's conduct at Five Star Bank are insufficient to allege close-ended continuity. In its Amended Complaint, Plaintiff alleges that Mott engaged in a pattern of check-kiting at Five Star Bank beginning in November 2022 and ending in March 2024, a period of approximately sixteen months. *See* ECF No. 51 ¶¶ 38–57. Because the alleged scheme only lasted approximately sixteen months and involved discrete acts against a single victim, Plaintiff Five Star Bank, the Court concludes that these allegations alone cannot be the basis for pleading closed-ended continuity. *See One World, LLC v. Onoufriadis*, No. 21-374-CV, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021) (holding that a scheme lasting at most fifteen months involving a discrete number of predicate acts and a single victim was insufficient to allege closed-ended continuity); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) ("[C]ourts have held that where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established.").

Nevertheless, Plaintiff argues that it has sufficiently alleged close-ended continuity because the Amended Complaint includes allegations that Mott engaged in check-kiting and other financial misconduct at other financial institutions prior to engaging in similar conduct at Five Star Bank. ECF No. 91 at 8–9. Additionally, Plaintiff argues that it has alleged a "broad, complex, and

multi-faceted scheme" that involved a substantial number of participants and victims, which weighs in favor of finding closed-ended continuity. *Id.* at 13. In response, Mott, Harris, and the Defendant Entities argue that Plaintiff has failed to provide factual allegations sufficient to support its argument that Mott engaged in check-kiting and other financial misconduct at other financial institutions, especially given the heightened pleading standards required under Fed. R. Civ. P. 9(b). ECF No. 100 at 1–3; ECF No. 101 at 2.

The Court agrees with Mott, Harris, and the Defendant Entities that Plaintiff's factual allegations are insufficient to support its argument that it has sufficiently pleaded closed-ended continuity. While it is true that predicate acts can be related for purposes of closed-ended continuity even if the predicate acts are committed against different victims, *Wells Fargo Century, Inc. v. Hanakis,* No. 04CV1381, 2005 WL 1523788, at *4 (E.D.N.Y. June 28, 2005), and that the Court must consider the number and variety of the predicate acts, the number of participants, the number of victims, and the presence of separate schemes in deciding whether close-ended continuity exists, *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.,* 667 F. Supp. 3d 83, 135 (S.D.N.Y. 2023), a plaintiff must sufficiently plead factual allegations that demonstrate that a defendant committed predicate acts against different victims and that such predicate acts involved a substantial number of participants and victims to adequately plead closed-ended continuity, *see Iqbal*, 556 U.S. at 678. Additionally, Fed. R. Civ. P. 9(b) governs the pleading requirements for RICO claims where the predicate illegal act is fraud. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172–73 (2d Cir. 1999). Under Rule 9(b), allegations of fraud must be made with particularity and must "specify the statements [plaintiffs] claim [ ] were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Id.* (quotations omitted).

Plaintiff argues that it has pleaded closed-ended continuity by alleging that Mott was engaged in a "continued. . . pattern and practice of kiting checks" that "she had begun previously at her prior banking institutions" and then continued at Five Star Bank by "'rapidly moving funds' between Five Star and other financial institutions." *Id.* at ¶ 29. Specifically, Plaintiff alleges that (1) "Evans Bank closed accounts affiliated with Defendant Mott and the Entity Defendants in late 2022 for check-kiting and check fraud activity in 2022"; (2) "Lyons National Bank closed accounts affiliated with Defendant Mott and the Entity Defendants in late 2022 due to suspected check-kiting"; (3) "Canandaigua Bank and Trust also closed accounts affiliated with Defendant Mott and the Entity Defendants in 2022"; and (4) "[u]pon information and belief, Tompkins Community Bank also involuntarily closed accounts affiliated with Defendant Mott in 2019 due to inappropriate transaction history." ECF No. 51 ¶ 34–37. Based on these allegations, Plaintiff asks the Court to infer that Mott engaged in illegal conduct at these financial institutions, that Defendants were engaged in the check-kiting scheme as early as 2019, and that the scheme was a well-established practice by the time Mott began check-kiting at Five Star Bank in 2022. ECF No. 91 at 11–12. The Court declines to do so.

In this case, Plaintiff has plausibly alleged that Mott's accounts at other financial institutions were closed due to suspected check-kiting and/or fraud and/or inappropriate transaction history, but the Court cannot conclude that Mott actually engaged in fraudulent activity at these financial institutions simply based on such allegations. Instead, to support its argument that Defendants' scheme began at other financial institutions, Plaintiff would need to make factual allegations explaining what fraudulent activities took place at the other financial institutions. In its Amended Complaint, Plaintiff has failed to do so. To the extent that Plaintiff argues that the Court must infer that Mott actually engaged in check-kiting or other fraudulent activity based on its allegations that the other financial institutions closed her accounts, the Court "cannot invent factual

allegations that [a plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). To the extent that Plaintiff merely alleges that Mott engaged in a "pattern and practice" of check-kiting at other financial institutions, ECF No. 51 ¶ 29, the Court need not "accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Faber* 648 F.3d at 104. As such, the Court concludes that Plaintiff has failed to adequately allege closed-ended continuity because it has provided no factual allegations that support its contention that Plaintiff was involved in a "broad, complex, and multi-faceted scheme." ECF No. 91 at 13; *see Grimes v. Fremont Gen. Corp.,* 785 F. Supp. 2d 269, 301 (S.D.N.Y.2011) ("Although [the] [p]laintiffs assert that the enterprise operated for over two years, and that the illegal activities persisted from in or before 2005 until mid–2006, they provide no basis for that belief, or any facts regarding when the enterprise began, or other specific predicate acts of mail and wire fraud." (citations omitted)).

***ii. Open-Ended Continuity***

Next, Mott, Harris, and the Defendant Entities argue that Plaintiff has failed to state a RICO claim because an inherently terminable scheme cannot support open-ended continuity. ECF No. 69-2 at 15; ECF No. 75-2 at 16. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit*, 187 F.3d at 243). "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful." *Spool*, 520 F.3d at 185 (citing *Cofacrèdit*, 187 F.3d at 242–43); *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

"When 'the enterprise primarily conducts a legitimate business,' however, no presumption of a continued threat arises." *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit*, 187 F.3d at 243). "In such cases, 'there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves

implies a threat of continued criminal activity.'" *Id.* Moreover, "an 'inherently terminable' scheme does not imply a threat of continued racketeering activity." *Cofacrèdit*, 187 F.3d at 244; *see also GICC Capital Corp.*, 67 F.3d 463, 466 (2d Cir. 1995) ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot.").

Plaintiff argues that it has alleged that Mott's illegal activity was part of the regular way that she conducted business and as such, there is no "obvious ending point" to her scheme. ECF No. 91 at 20. Consequently, Plaintiff argues that it has sufficiently alleged close-ended continuity. The Court disagrees because in this case, the alleged scheme was inherently terminable. "An 'inherently terminable' scheme, *i.e.*, one that has (or must) come to a definite conclusion, 'does not imply a threat of continued racketeering activity'" and therefore cannot establish open-ended continuity. *Albunio v. Int'l Safety Group, Inc.*, No. 15-CV-152, 2016 WL 1267795, at *6 (S.D.N.Y. Mar. 30, 2016) (quoting *Cofacrèdit*, 187 F.3d at 244). Here, Plaintiff alleges that once it became aware of the scheme in March 2024, it took steps to restrict Mott's ability to write further checks. ECF No. 51 ¶ 61. Thus, the scheme was inherently terminable, as it came to a definite end in 2024. As such, the scheme cannot be the basis for establishing closed-ended continuity. To the extent that Plaintiff alleges that Defendants would have continued the scheme had Plaintiff not taken steps to stop them and commenced this lawsuit, *see* ECF No. 91 at 21, such allegations are in insufficient to establish open-ended continuity, *see Bayside Wellness Physical Therapy P.C.*, 2025 WL 458224, at *6 ("Speculative allegations as to how long a fraud would continue do not establish open-ended continuity."); *One World, LLC*, 2021 WL 4452070, at *3 (finding "purely speculative" argument that "nature of the enterprise's course of dealing implies that it would have continued" fraudulent scheme); *GICC Cap. Corp*, 67 F.3d at 466 (rejecting as "entirely speculative" argument that defendant would have continued scheme had plaintiff not commenced litigation).

In sum, in order to plead its RICO claim, Plaintiff must adequately allege a pattern of racketeering activity either by establishing closed-ended or open-ended continuity. *See Spool,* 520 F.3d at 183. In this case, Plaintiff has not sufficiently established either closed-ended or open-ended continuity. Therefore, the Court concludes that Plaintiff has failed to state a RICO claim as to Mott, Harris, and the Defendant Entities, and the claim is dismissed.

**b. Conspiracy to Violate RICO (18 U.S.C. § 1962(d))**

Plaintiff's claim for conspiracy to violate RICO under 18 U.S.C. § 1962(d) is brought against all Defendants. ECF No. 51. Each Defendant has moved to dismiss the claim. ECF No. 69-2 at 18; ECF No. 74-1 at 6; ECF No. 75-2 at 18; ECF No. 78-1 at 6; ECF No. 80-2 at 15. The Court agrees with Defendants that the claim must be dismissed.

To state a claim under 18 U.S.C. § 1962(d), one must first sufficiently plead a substantive RICO claim under 18 U.S.C. §§ 1962(a), 1962(b), or 1962(c). *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 658 (S.D.N.Y. 1996). In other words, there can be no RICO conspiracy without a substantive RICO violation because if the "prior claims do not state a cause of action for substantive violations of RICO," then a RICO conspiracy claim "does not set forth a conspiracy to commit such violations." *Discon v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996), *rev'd on other grounds*, 525 U.S. 128 (1998). In this case, as the Court explained above, Plaintiff has failed to sufficiently plead its substantive RICO claim under 18 U.S.C. § 1962(c). Thus, Plaintiff's claim for conspiracy to violate RICO must be dismissed.

**c. Request for Limited Discovery Related to RICO Claims**

Plaintiff requests that in the event the Court dismisses the RICO claims due to a failure to sufficiently allege financial misconduct at other financial institutions, that Plaintiff be able to serve limited discovery to obtain additional details related to Mott's conduct at the other financial institutions named in the Amended Complaint. ECF No. 91 at 14.

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "Courts in this circuit have weighed requests for expedited discovery of this nature by applying a variety of reasonableness-based tests which examine and compare the need for expedited discovery, the privacy expectations of the defendants, the breadth of the discovery sought in terms of inconvenience to the third party to be subpoenaed, the potential injury to the plaintiffs if such discovery is denied, the plaintiffs' interests in pursuing cognizable claims, and the interests of justice." *Catlin v. Glob.*, No. 14-CV-6324, 2014 WL 3955220, at *2 (W.D.N.Y. Aug. 13, 2014) (citing *North Atl. Operating Co., Inc. v. Evergreen Distributors*, LLC, 293 F.R.D. 363, 367 (E.D.N.Y. 2013)). The burden rests with the party seeking the discovery to prove that the requests are reasonable under the circumstances. *See North Atl. Operating Co., Inc.*, 293 F.R.D. at 367.

Here, Plaintiff argues that it could plausibly allege closed-ended continuity if it were able to substantiate its claims related to Mott's previous pattern of check-kiting at other financial institutions. ECF No. 91 at 11. However, it argues that it is unable to substantiate these claims without discovery because that information is not within its control. *See id.* The Court concludes that, under these circumstances, it is reasonable to allow Plaintiff to serve limited discovery on the four financial institutions where Plaintiff alleges that Defendants began their scheme. The Court cautions Plaintiff that it will only permit very limited discovery so as to allow Plaintiff to attempt to substantiate its claims that Mott's alleged check-kiting scheme began at these other institutions. Therefore, Plaintiff may submit to the Court proposed subpoenas as to Evans Bank, Lyons National Bank, Canandaigua Bank and Trust, and Tompkins Community Bank, which the Court will then review. Once the Court has reviewed the subpoenas to ensure that they are within the

scope of the limited discovery the Court is inclined to allow at this time, the Court will grant Plaintiff leave to serve the subpoenas and grant Plaintiff leave to amend its complaint.

**d. State Law Claims**

All of the Defendants argue that in light of the dismissal of the federal law claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. ECF No. 69-2 at 20; ECF No. 74-1 at 7; ECF No. 75-2 at 22; ECF No. 78-1 at 1; ECF No. 80-2 at 8. Because the Court is allowing Plaintiff to engage in limited discovery and granting Plaintiff leave to amend its complaint as to the federal claims, it would be premature for the Court to decide whether it should exercise supplemental jurisdiction over the state law claims in the event that Plaintiff's federal claims are dismissed. As such, as to the state law claims, Defendants' motions to dismiss are denied without prejudice. Defendants are free to renew these motions in the event Plaintiff fails to state a federal claim in any amended complaint or if after completing limited discovery, Plaintiff declines to file an amended complaint.

## II. Plaintiff's Motion for Attachment

Plaintiff's motion for an order of attachment is brought pursuant to its claims under New York State law as well as its federal law claims. ECF No. 93-11 at 12. Because the Court has dismissed Plaintiff's federal law claims, its motion for attachment may only be considered as to Plaintiff's remaining state law claims. However, as the Court explained above, it would be premature for the Court to decide whether it should exercise supplemental jurisdiction over the state law claims at this time. Consequently, it would also be premature for the Court decide whether Plaintiff is entitled to an order of attachment as to its state law claims. Therefore, Plaintiff's motion for an order of attachment, ECF No. 93, is denied without prejudice to renewal at the appropriate time.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 69, 74, 75, 78, 80) are GRANTED IN PART insofar as Plaintiff's RICO claim pursuant to 18 U.S.C. § 1962(c) and conspiracy to violate RICO claim pursuant to 18 U.S.C. § 1962(d) are DISMISSED. Defendants' motions are otherwise DENIED WITHOUT PREJUDICE to renewal at the appropriate time. Plaintiff is granted leave to pursue limited discovery in accordance with the instructions contained in this Decision and Order. Plaintiff's motion for an order of attachment as to each Defendant (ECF No. 93) is DENIED WITHOUT PREJUDICE to renewal at the appropriate time. The Clerk of Court is directed to lift the stay in this action.

IT IS SO ORDERED.

Dated: August 17, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York